UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ROBERT MURPHY,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 18-1478 (JDB)

---

**MEMORANDUM OPINION**

Robert Murphy alleges that his former employer, the District of Columbia Department of Corrections, failed to accommodate his disabilities, interfered with his right to medical leave, and then fired him in retaliation either for requesting such leave or for his perceived participation in a Title VII proceeding. Murphy brings claims against the District under five statutes: the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–213; the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–54; the D.C. Family Medical Leave Act ("DCFMLA"), D.C. Code §§ 32-501 to -517; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; and the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 to -1404.04. Pending before the Court is [12] the District's motion to dismiss several of these claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court will grant the motion in part and deny it in part.

## BACKGROUND

I. FACTS[1]

The District of Columbia Department of Corrections ("DOC") is an agency tasked with operating the D.C. municipal jail system. In 2015, Murphy was a Lieutenant at the DOC, where he had worked for twenty-five years. Am. Compl. [ECF No. 10] ¶ 7. At the time, he suffered from stage five kidney failure, hypertension, and diabetes. Id. ¶ 8. On April 2, 2015, Murphy and his doctor sent the DOC an application for medical leave under the FMLA, id. ¶ 10, which provides that an "eligible employee" suffering from a "serious health condition that makes the employee unable to perform the functions of [his] position" is "entitled to a total of 12 workweeks of leave during any 12-month period," 29 U.S.C. § 2612(a)(1)(D). The DOC never responded to Murphy's April FMLA application, even after he and his wife "inquired on several occasions as to [its] status." Am. Compl. ¶¶ 11–13.

On June 18, 2015, Murphy was hospitalized for a heart attack. Id. ¶ 14. He informed the DOC and reapplied for medical leave. Id. ¶ 15. Murphy never received a response to his second FMLA request, which he filed on June 22, 2015. Id. ¶ 16.

On the same day, June 22, Murphy's wife "testified in a deposition as a key witness . . . in a well-known [Title VII] sexual-harassment lawsuit" against the DOC. Id. ¶ 17. The lawsuit was "focused on the improper conduct of [Murphy's] immediate supervisor, Major Joseph Pettiford." Id. ¶18.[2] Pettiford knew that Murphy supported his wife's decision to participate in the lawsuit.

---

[1] The facts are drawn from the plaintiff's amended complaint and assumed to be true for the purposes of the motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[2] Murphy's amended complaint does not specify whether the lawsuit arose under Title VII, but that fact is on the public record. See Brokenborough v. District of Columbia, 236 F. Supp. 3d 41, 47 (D.D.C. 2017) (identifying the lawsuit against Pettiford as a Title VII proceeding); see also Covad Commc'ns Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005) (taking "judicial notice of facts on the public record," including facts in published opinions, when deciding a motion to dismiss).

Id. ¶ 19. Indeed, based on Murphy's "clear support of his wife's participation," Pettiford perceived Murphy himself as "a participant in the [sexual harassment suit]." Id.

Two days later, on June 24, 2015, Murphy received an advance notice of his termination. Id. ¶ 20. Murphy alleges that Pettiford, through the DOC, fired him in retaliation for "requesting FMLA leave," for his "wife's testimony . . . in the sexual harassment lawsuit," and because Pettiford "perceived [Murphy] as . . . participa[ting] in the" suit alleging that Pettiford engaged in improper conduct. Id. ¶ 19.

## II. Procedural History

On August 13, 2015, Murphy filed a "Charge of Discrimination" with the Equal Opportunity Employment Commission ("EEOC") and the D.C. Office of Human Rights ("OHR"), alleging interference with his medical leave rights as well as termination in retaliation against his wife's testimony in the lawsuit. Charge of Discrimination ("EEOC Charge"), Ex. to Def.'s Mot. to Dismiss the Am. Compl. in Part [ECF No. 12-1] at 1–2. Murphy received his EEOC "Right to Sue" letter on March 27, 2018.[3] Am. Compl. ¶ 22.

Murphy alleges various violations of five statutes. Count I alleges that the DOC violated the ADA in two ways: first, by refusing to accommodate Murphy's disability by granting his medical leave requests, and second, by terminating him in retaliation for invoking his right to medical leave. Am. Compl. ¶¶ 23–28. Counts II and III allege that the same conduct—denial of his leave requests and retaliation for filing those requests—violated the FMLA and DCFMLA, respectively. Id. ¶¶ 29–36. Count IV alleges that the DOC violated Title VII by terminating Murphy in retaliation for his wife's testimony against Pettiford, id. ¶¶ 37–41, and Count V alleges

---

[3] Under federal regulation, when the EEOC "has found reasonable cause to believe that [T]itle VII[ or] the ADA has been violated . . . [but] has decided not to bring a civil action against the respondent, it will issue a notice of right to sue on the charge." 29 C.F.R. § 1601.28(b)(1).

3

that the same conduct violated the DCHRA, id. ¶¶ 42–46. Murphy seeks, among other things, $500,000 in actual damages. Id. at 8.

The District has moved to dismiss Murphy's ADA and DCHRA claims in part, and to dismiss his FMLA, DCFMLA, and Title VII claims in full. The motion is fully briefed and ripe for resolution.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that "pleads facts that are merely consistent with a defendant's liability" falls short of showing plausible entitlement to relief. Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting Iqbal, 556 U.S. at 678). The Court must take all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). However, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" do not satisfy the pleading standard. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted). The Court need not accept legal conclusions or inferences drawn by the plaintiff which are unsupported by facts alleged in the complaint. Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015).

## ANALYSIS

The District moves to dismiss Murphy's claims under the ADA, FMLA, DCFMLA, Title VII, and the DCHRA. The Court considers each set of claims in turn.

### I. ADA Claims

Under the ADA, employers are required to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," 42 U.S.C. § 12112(b)(5)(A), and are prohibited from retaliating against any individual for opposing "any act or practice made unlawful" by the ADA, 42 U.S.C. § 12203(a).

In Count I, Murphy alleges three ADA violations. First, he alleges that the DOC failed reasonably to accommodate his disability when it did not respond to his April 2, 2015, FMLA request. Am. Compl. ¶¶ 10, 25. Second, he alleges that the DOC failed to accommodate his disability when it did not respond to his June 22, 2015, FMLA request. Id. ¶¶ 15, 25. Third, he alleges that the DOC violated the ADA when it fired him in retaliation for filing those requests. Id. ¶ 25. The District moves to dismiss only the second and third claims—i.e., the June 22 failure-to-accommodate claim and the retaliation claim—but not the April 2 failure-to-accommodate claim. See Mem. of P. & A. Supp. Def.'s Mot. to Dismiss the Am. Compl. in Part ("Def.'s Mot.") [ECF No. 12] at 4–6.

#### A. The June 22 Failure-to-Accommodate Claim

The Court first considers the June 22 failure-to-accommodate claim. "To state a claim for failure to accommodate, [Murphy] must allege facts sufficient to show that (1) he had a disability within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of this position with reasonable accommodation; and (4) his employer refused to make such accommodation." Floyd v. Lee, 968 F. Supp. 2d 308, 326 (D.D.C. 2013) (quoting Hodges v. District of Columbia, 959 F. Supp. 2d 148, 153–54 (D.D.C. 2013)).

The District argues that Murphy has failed adequately to allege element four, refusal to make an accommodation, because the DOC never refused the June 22 request. See Def.'s Mot. at

5

4–5. Instead, the District contends, it had insufficient time to act on the request because Murphy was terminated just two days later, on June 24. See id.; see also Am. Compl. ¶¶ 15, 20. While an unreasonable delay might under some circumstances amount to a refusal to accommodate, the District continues, a two-day delay here is not unreasonable. Def.'s Mot. at 4–5. Murphy responds only that the District inappropriately seeks to impose a summary judgment standard, and that his allegation that the District refused the June 22 request suffices to make out a claim at this stage. Mem. of P. & A. Supp. Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") [ECF No. 14] at 3–4.

The Court agrees with the District. Murphy has not alleged that the DOC refused to accommodate his June 22 request, but rather that it did not respond before his termination. Am. Compl. ¶¶ 15–16. As the District points out, while "an employer's 'unreasonable delay'" in responding "may constitute the denial of an accommodation," Marks v. Wash. Wholesale Liquor Co. LLC, 253 F. Supp. 3d 312, 324 (D.D.C. 2017), a two-day delay is not, as a matter of law, unreasonable. See, e.g., id. at 325 (holding 17-day delay not unreasonable as a matter of law); Kintz v. United Parcel Serv., Inc., 766 F. Supp. 2d 1245, 1257 (M.D. Ala. 2011) (same for 15-day delay); Ungerleider v. Fleet Mortg. Grp. of Fleet Bank, 329 F. Supp. 2d 343, 355 (D. Conn. 2004) ("[F]ailure to immediately provide [plaintiff] with the specific accommodation that she sought does not constitute a refusal to provide a reasonable accommodation . . . ."). Moreover, the "accommodation" Murphy allegedly requested was for medical leave under the FMLA, Am. Compl. ¶ 25, and employers are entitled to a period of at least five business days before responding to an FMLA request. See 29 C.F.R. § 825.300(b)(1) ("When an employee requests FMLA leave . . . the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances.").

Hence, Murphy's June 22 failure-to-accommodate claim will be dismissed for failure to state a claim.

**B. The ADA Retaliation Claim**

Next, the Court considers Murphy's claim alleging the DOC terminated him for requesting an accommodation under the ADA. "Before bringing suit in federal court, ADA plaintiffs . . . must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it." Marshall v. Fed. Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997) (citing Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)); see also Elzeneiny v. District of Columbia, 195 F. Supp. 3d 207, 225 (D.D.C. 2016). "A vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace." Marshall, 130 F.3d at 1098. While "every detail of the eventual complaint need not be presaged in the EEOC filing, . . . the substance of an ADA claim . . . must fall within the scope of the 'administrative investigation that can reasonably be expected to follow the charge of discrimination.'" Id. (citation omitted).

The District argues that Murphy failed to meet the exhaustion requirement here because he "did not allege retaliation based on his request for an accommodation in his EEOC charge." Def.'s Mot. at 5–6. Murphy responds that he did, in fact, raise "retaliation" in his EEOC/OHR charge. Pl.'s Opp'n at 5.

Murphy failed to exhaust his ADA retaliation claim. The EEOC/OHR charge does, as Murphy points out, generally allege "unlawful discriminatory acts in violation of [the] Americans with Disabilities Act of 1990." EEOC Charge at 1. But read in context, that language refers only to the DOC's alleged failure to "respond to [Murphy's] request for [medical leave]." Id. The only "retaliation" Murphy alleges in the EEOC charge is retaliation for his wife's involvement in the

7

sexual harassment lawsuit, not retaliation for submitting a request for an accommodation. See id. at 1 ("I contend the Respondent's decision to terminate my employment was retaliation for my domestic partner/fiancé's [sic] testimony."). The EEOC/OHR charge therefore does not support a reasonable expectation that the ADA retaliation claim would fall within the EEOC's investigation, and Murphy has not exhausted his administrative remedies as to this claim. Hence, the ADA retaliation claim will be dismissed.

## II. FMLA Claims

"Under the FMLA, a plaintiff may state: (1) an interference claim . . . alleging that [his] employer has restrained, denied, or interfered with [his] substantive rights under the Act and/or (2) a retaliation claim . . . alleging that [his] employer has taken adverse action against [him] because [he] took leave or engaged in activity protected by the Act, such as by filing a complaint." Alford v. Providence Hosp., 945 F. Supp. 2d 98, 104 (D.D.C. 2013), aff'd, 561 F. App'x 13 (D.C. Cir. 2014). Just as with his ADA claims, Murphy alleges three FMLA violations in Count II—that the DOC (1) interfered with his FMLA rights by failing to respond to his April request, (2) interfered with his rights by failing to respond to his June request, and (3) fired him in retaliation for filing those requests, a protected activity. Am. Compl. ¶¶ 10, 15, 30. The District argues that all three claims are untimely filed. Def.'s Mot. at 7–9.

The statute of limitations for FMLA claims is three years if the alleged violations were willful, and two years otherwise. 29 U.S.C. § 2617(c)(1)–(2). This case was filed on June 22, 2018. That date is three years to the day after the last alleged incident of failure to accommodate, and three years less two days after the last alleged incident of retaliation. Am. Compl. ¶¶ 15, 20. Murphy's FMLA claims are therefore timely only if he has adequately pled willful violations of the statute.

A violation of the FMLA is willful if the employer "kn[ew] its conduct to be wrong or ha[d] shown reckless disregard for the matter in light of the statute." Cooper v. Henderson, 174 F. Supp. 3d 193, 205 (D.D.C. 2016). To adequately plead a willful violation, "allegations of knowledge and intentionality are sufficient." Hodge v. United Airlines, 666 F. Supp. 2d 14, 23 (D.D.C. 2009); see id. ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." (quoting Federal Rule of Civil Procedure 9(b))); see also Ramsey v. Advance Stores Co., Inc., No. 15-4854-RDR, 2015 WL 3948119, at *6 (D. Kan. June 29, 2015) (Because "the statute of limitations is an affirmative defense which a plaintiff is not required to negate in a complaint," courts should dismiss FMLA claims only if it is "clear that the three-year statute of limitations for willful FMLA violations is inapplicable." (emphasis added)).

In this case, Murphy has adequately pled the willfulness of the April 2 interference claim and of the retaliation claim. The complaint alleges that "the [DOC was] well aware of its obligations under the [FMLA] and willfully and intentionally refused said obligations." Am. Compl. ¶ 13. It further alleges that, after Murphy and his doctor filed his April 2 leave request, he and his wife inquired as to the status of the request "on several occasions," but the DOC never responded to these inquires. Id. ¶¶ 12–13. Indeed, Murphy alleges that the DOC "continued to intentionally ignore" the April request until Murphy was fired, id. ¶ 16, a measure that Pettiford "proposed . . . as a result of [Murphy having] request[ed] FMLA leave," id. ¶ 19. The allegations that the DOC ignored multiple inquiries about Murphy's April request from multiple persons over the course of several months, and that the DOC then decided intentionally to terminate Murphy in retaliation, suffice to allege willful disregard of the FMLA. Hence, Murphy is entitled to a three-year limitations period as to the April interference and retaliation claims, and they are timely filed.

However, Murphy has not adequately pled that the DOC willfully denied his June 22 FMLA request. As discussed above, the DOC was permitted to take at least five business days to respond to this request, and Murphy was terminated within two days of the request. See 29 C.F.R. § 825.300(b)(1). Unlike with the April request, then, there is no allegation that the DOC ignored inquiries about the request for months. The facts as alleged therefore do not support a claim that the DOC's failure to respond to the June 22 request constituted willful interference. Murphy is therefore entitled only to a two-year limitations period on his June 22 interference claim. Because that period had run long before this case was filed, the June 22 claim is time-barred.[4]

### III. DCFMLA Claims

The DCFMLA is the District of Columbia's analog to the FMLA.[5] It prohibits, as relevant here, interference with an employee's medical leave rights, D.C. Code § 32-507(a), retaliation against an employee for opposing a practice made unlawful by the DCFMLA, D.C. Code § 32-507(b)(1), and retaliation for participating in a proceeding or charge against the employer under the statute, D.C. Code § 32-507(b)(2)–(3). In Count III, paralleling his FMLA and ADA claims, Murphy alleges that the DOC unlawfully denied his April and June requests for leave and fired him in retaliation for submitting those requests. Am. Compl. ¶ 34. The District again contends that Murphy's three DCFMLA claims are time-barred. Def.'s Mot. at 9. The Court considers each claim in turn.

---

[4] Because the FMLA does not require plaintiffs to exhaust administrative remedies before filing suit, the statute's limitations period is not tolled while administrative remedies are pursued. Ndzerre v. Wash. Metro. Area Transit Auth., 174 F. Supp. 3d 58, 63 (D.D.C. 2016).

[5] "Courts interpret the FMLA and DCFMLA similarly." Alford, 945 F. Supp. 2d at 105 n.7. This Court therefore "applies the case law arising from suits involving the FMLA to [Murphy's] claims under the DCFMLA." Id.; see also Badwal v. Bd. of Trs. of Univ. of D.C., 139 F. Supp. 3d 295, 317–18 (D.D.C. 2015) (applying same pleading standard to FMLA and DCFMLA interference claims).

### A. The April 2 Interference Claim

The April DCFMLA claim is timely. Claims under the DCFMLA are subject to a one-year limitations period. D.C. Code § 32-510(b). Unlike the FMLA, that period is tolled while the claim is pending before the OHR, provided that the claim is submitted to the OHR within one year of the underlying incident. D.C. Mun. Regs. tit. 4, § 1610.3 (2019) (timely OHR complaint "shall toll the deadline by which an employee may file a civil action" under the DCFMLA "during all times that the employee has a complaint pending") (citations omitted); D.C. Code § 32–509(a) (stating that OHR complaint must be filed within one year of alleged violation); Perez v. District of Columbia, 305 F. Supp. 3d 51, 58–59 (D.D.C. 2018).

Here, Murphy timely filed an EEOC/OHR charge just a few months after the alleged DCFMLA violation occurred. See Am. Compl. ¶ 10 (alleging a violation of his DCFMLA rights in April 2015); EEOC Charge at 1–2 (EEOC/OHR charge filed in August 2015). He then filed this action within a few months of receiving his "Right to Sue" letter from the EEOC.[6] See Am. Compl. ¶ 22 (right to sue letter received in March 2018); Compl. [ECF No. 1] at 8 (initiating instant suit in June 2018). Murphy's April 2 interference claim was therefore filed well within the one-year time limit and will not be dismissed as untimely.

### B. The June 22 Interference Claim

Murphy's June DCFMLA interference claim is timely for the same reasons the April claim is. However, unlike the April claim, it fails to state a claim under Rule 12(b)(6). To state an

---

[6] The "Right to Sue" letter was issued by the EEOC, not by the OHR. Am. Compl. ¶ 22. Nevertheless, because Murphy's original charge was automatically cross-filed with both agencies pursuant to a worksharing agreement, see Miller v. Gray, 52 F. Supp. 3d 62, 68 (D.D.C. 2014); EEOC Charge at 1, the Court finds the limitations period tolled until the EEOC issued the right to sue letter. See Ibrahim v. Unisys Corp., 582 F. Supp. 2d 41, 45 (D.D.C. 2008) ("[T]he timely filing of a charge with the EEOC, which in turn cross-files with the DCOHR pursuant to the worksharing agreement, tolls the statute of limitations . . . until the EEOC relinquishes jurisdiction over the matter." (citing Esteños v. PAHO/WHO Fed. Credit Union, 952 A.2d 878, 885 (D.C. 2008))); see also Perez, 305 F. Supp. 3d at 55, 58–59 (implicitly holding the same).

11

interference claim "a plaintiff must allege facts sufficient to show, among other things, that . . . his employer denied or otherwise interfered with his right to take leave." Thomas v. District of Columbia, 227 F. Supp. 3d 88, 110–11 (D.D.C. 2016) (quoting Hodges, 959 F. Supp. 2d at 155). Here, as already explained in discussing the June 22 failure-to-accommodate claim, the DOC never denied Murphy's June request for leave. And Murphy alleged no additional facts to establish that the DOC interfered with his rights as to that request. While it is possible that an unreasonable delay in responding to a leave request violates the DCFMLA, that theory fails as to the June claim for the same reason it failed in the ADA discussion above: as a matter of law, a two-day delay cannot constitute an unreasonable delay or constructive interference. Hence, the Court will dismiss the June DCFMLA claim pursuant to Rule 12(b)(6).

### C. The Retaliation Claim

Murphy's DCFMLA retaliation claim is time-barred. The alleged retaliation occurred nearly three years before this suit was filed—well beyond the one-year limit. Compl. at 8; Am. Compl. ¶¶ 20, 34. Unlike the timely interference claims, the limitations period is not tolled as to the retaliation claim because, for the reasons already discussed in the ADA retaliation section, Murphy failed adequately to raise this claim in his EEOC/OHR charge. See EEOC Charge at 1 (alleging "retaliation" only with respect to Murphy's wife's involvement in the sexual harassment lawsuit). Because the DCFMLA retaliation claim was never "pending" before OHR, the limitations period was not tolled. This claim will therefore be dismissed as untimely.

### IV. TITLE VII CLAIMS

In Count IV, Murphy alleges that the DOC violated Title VII by firing him in response to his wife's testimony in a proceeding alleging sexual harassment by his boss, Major Pettiford. Am. Compl. ¶ 38. "Retaliation claims under Title VII are governed by the familiar burden-shifting

framework of McDonnell Douglas Corp. v. Green, [411 U.S. 792 (1973)]." Durant v. D.C. Gov't, 875 F.3d 685, 696 (D.C. Cir. 2017). Under that framework, the plaintiff must first establish a "prima facie case" of Title VII retaliation, after which "the burden shifts to the employer to provide a legitimate, nonretaliatory reason for its action." Id. at 697.

Title VII forbids employers from retaliating against "employees" who have "opposed any . . . unlawful employment practice" or who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to that unlawful practice. 42 U.S.C. § 2000e–3(a). Murphy is the relevant "employee" for purposes of his claim. To make out a prima facie retaliation claim under Title VII, then, Murphy must allege "(1) that [he] engaged in statutorily protected activity; (2) that [he] suffered a materially adverse action by [his] employer; and (3) that a causal link connects the two." See Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Cong., Inc. v. Billington, 737 F.3d 767, 772 (D.C. Cir. 2013).

The District attacks only the first element, arguing that Murphy has failed to allege that he participated in any statutorily protected activity. See Def.'s Mot. at 9–12. Although Murphy's wife may have participated in a statutorily protected activity by offering testimony, the District contends, there is no allegation that Murphy himself participated in any such activity. See id. In response, Murphy advances a "perception theory" of retaliation. Am. Compl. ¶¶ 19, 38; Pl.'s Opp'n at 9. Under that theory, which at least one court in this district has adopted, "the employee" need not "actually assert[] participation in a protected activity" if he sufficiently alleges that "the employer believed that [he] was engaged in protected activity." Johnson v. Napolitano, 686 F. Supp. 2d 32, 36 (D.D.C. 2010) (alteration omitted and emphasis added).[7] Murphy accordingly

---

[7] The District attempts to distinguish Johnson, pointing out that there the plaintiff and her husband were both employees of the same employer. Reply to Pl.'s Opp'n ("Def.'s Reply") [ECF No. 16] at 4. But that distinction is

13

argues that he has stated a claim because he has sufficiently alleged that Pettiford perceived him to be a participant in the Title VII proceeding against him.[8]

The Court finds, as an initial matter, that a perception theory of Title VII retaliation is valid. As the Third Circuit has persuasively held in construing nearly identical language,[9] the perception theory comports with the relevant statutory language prohibiting an employer from "discriminat[ing] against . . . [an] employee[] . . . because he has [engaged in a protected activity]." 42 U.S.C. § 2000e-3(a) (emphases added); see Fogleman, 283 F.3d at 571. "'Discrimination' [here] refers to the practice of making a decision based on a certain criterion, and therefore focuses on the decisionmaker's subjective intent." Fogleman, 283 F.3d at 571. And "the word 'because,' specifies the criterion that the employer is prohibited from using as a basis for decisionmaking," id.—i.e., that the employee has "testified, assisted, or participated in any manner in an

---

irrelevant. Under the perception theory, what matters is whether the DOC terminated Murphy because of its belief that Murphy engaged in protected activity—a belief that is entirely independent of whether his wife was employed by DOC. See Johnson, 686 F. Supp. 2d at 35 (explaining that a perception theory of retaliation "focuses on the employer's subjective reasons for taking adverse action against an employee," making it irrelevant whether "the reasons behind the employer's discriminatory animus are actually correct as a factual matter" (alteration and citation omitted)); see also Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 571 (3d Cir. 2002) (holding that plaintiff states a retaliation claim under the perception theory "if [he] can show, as he claims, that adverse action was taken against him because [his employer] thought he was assisting his father [with a lawsuit against his employer] and thereby engaging in protected activity").

[8] In addition to arguing over the perception theory, the parties appear to dispute whether a so-called "third-party retaliation" theory applies in this case. See Pl.'s Opp'n at 8–9; Def.'s Reply at 1. Under that theory, an employee can state a Title VII retaliation claim when the employer retaliates against the employee for engaging in protected activity by punishing a different employee with whom the original employee has a close relationship—for instance, a fiancé or spouse. See Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 173–74 (2011); De Medina v. Reinhardt, 444 F. Supp. 573, 580 (D.D.C. 1978). The third-party retaliation theory does not apply here, however, because Murphy's wife is not a DOC employee, and Murphy cannot state a retaliation claim premised exclusively on a non-employee's participation in protected activity. See Billington, 737 F.3d at 772 ("Retaliation by an employer is unlawful only if that retaliation occurred because of actions by 'employees or applicants for employment.'" (quoting 42 U.S.C. § 2000e-3(a)) (emphasis added)); Schmidt v. Town of Cheverly, Md., 212 F. Supp. 3d 573, 579 (D. Md. 2016) ("Although a retaliation claim may lie in the case of 'third-party retaliation,' the cases that have allowed such claims involved [circumstances] where both the person filing the discrimination complaint and the person adversely affected were employees or former employees of the same company.").

[9] In Fogleman v. Mercy Hospital, the Third Circuit was construing the ADA's requirement that employers not "discriminate against any individual because such individual has [engaged in protected activity]." 283 F.3d 561, 571 (3d Cir. 2002) (quoting 42 U.S.C. § 12203(a)).

14

investigation, proceeding, or hearing under [the statute]," 42 U.S.C. § 2000e–3(a). The statute therefore "focuses on the employer's subjective reasons for taking adverse action against an employee" irrespective of whether "the reasons behind the employer's discriminatory animus are actually correct as a factual matter." Johnson, 686 F. Supp. 2d at 35 (quoting Fogleman, 283 F.3d at 571). Put differently, what matters for purposes of a retaliation claim is whether the employer punishes the employee based on its <u>belief</u> that the employee is engaging in protected activity. For these and other reasons, most courts to reach the question have permitted Title VII retaliation claims under a perception theory, and this Court will as well. See, e.g., Moore v. City of Philadelphia, 461 F.3d 331, 344 (3d Cir. 2006) (reversing summary judgment for defendant on employee's Title VII retaliation claim because employer "<u>perceived</u> that the plaintiffs had engaged in protected conduct" (emphasis added)); Kurtz v. Caesars Entertainment, Inc., 266 Fed. Appx. 676, 677 (9th Cir. 2008) (affirming summary judgment for defendant on employee's Title VII retaliation claim because "[t]here was no retaliation on the basis of protected activity <u>or any perception of protected activity</u>" (emphasis added)); Grosso v. City Univ. of N.Y., No. 03 Civ. 2619NRB, 2005 WL 627644, at *2–3 (S.D.N.Y. March 16, 2005) (holding that "plaintiff states a valid claim for retaliatory discrimination [under Title VII] . . . to the extent that [defendants'] behavior was motivated by <u>their belief</u> that plaintiff" "had engaged in protected activity" (emphasis added)); Puidokas v. Rite-Aid of Pa., Inc., No. 3:09cv2147, 2010 WL 1903590, at *3 (M.D. Pa. May 10, 2010) ("[A] defendant violates the anti-retaliation provision of Title VII if, believing that the plaintiff is engaged in a protected activity, it intentionally retaliates against the plaintiff <u>because of its belief</u>." (emphasis added)).

Applied here, the question is therefore whether Murphy adequately has alleged that the DOC terminated him because it perceived him to have engaged in protected activity. The Court

15

finds that he has. Participating in or assisting with a Title VII proceeding "in any manner" is a protected activity. 42 U.S.C. § 2000e-3(a). Here, Murphy has alleged that his wife "testified in a deposition as a key witness against the [DOC] in a well-known [Title VII] lawsuit . . . focused on the improper conduct of [his] immediate supervisor," Major Pettiford. Am. Compl. ¶¶ 17–18. He has further alleged that he "clear[ly] support[ed] . . . his wife's participation" in that suit, that Pettiford "knew that [he] supported" his wife's participation, and that "Major Pettiford [therefore] perceived [him] as a participant in the [proceeding]." Id. ¶¶ 18–19. Finally, Murphy alleges that— just two days after his wife testified—Pettiford proposed his termination for his role "as a participant in the [Title VII] claims." Id. ¶¶ 17, 19, 20, 38.

Accepting the foregoing allegations as true, and drawing all inferences in plaintiff's favor, Murphy has stated a prima facie retaliation claim under the perception theory.[10] Murphy's noticeable support of his wife's key testimony in a Title VII proceeding against his supervisor, combined with that same supervisor's decision to terminate him two days later, distinguishes this case from one where merely conclusory, untethered allegations of perceived participation are asserted. Moreover, the District has offered no persuasive reason to doubt Murphy's allegation that Pettiford perceived him as a participant in the proceeding against him. Hence, the Court will not dismiss Count IV.

## V. VIOLATIONS OF THE DCHRA

The DCHRA is an anti-discrimination statute that, among other things, prohibits employers from retaliating against employees for exercising rights protected under the statute. D.C. Code § 2-1402.61(a). "[R]etaliation claims under the DCHRA are analyzed using the same legal

---

[10] The District does not dispute that Murphy has adequately alleged the other elements of a prima facie retaliation claim—namely, that Murphy suffered a materially adverse action by his employer, and that a causal link connects that adverse action to the statutorily protected activity.

16

framework as federal retaliation claims [under Title VII]." Cole v. Boeing Co., 75 F. Supp. 3d 70, 83 (D.D.C. 2014) (citing Howard Univ. v. Green, 652 A.2d 41, 45 (D.C. 1994)); see also Carter-Obayuwana v. Howard Univ., 764 A.2d 779, 790 (D.C. 2001).

In Count V, just as in the Title VII claim, Murphy alleges that his termination in response to his perceived participation in the harassment suit was unlawful retaliation. See Am. Compl. ¶ 43. The District characterizes Murphy as having alleged both a "third-party reprisal [theory] based on his wife's testimony" and a perception theory "based on [Murphy's] own protected activity in 'support[ing]' his wife's participation in the lawsuit." Def.'s Mot. at 12.

For the same reasons explained in the context of the Title VII discussion, the Court rejects any contention that Murphy has stated a DCHRA claim under a third-party retaliation theory,[11] but finds that he has stated a claim under the perception theory. Hence, the Court will not dismiss Count V.

## CONCLUSION

For the foregoing reasons, the Court will grant the District's partial motion to dismiss as to Count I, grant in part and deny in part the motion as to Counts II and III, and deny the motion as to Counts IV and V.

A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 15, 2019

---

[11] The Court does not accept, however, the District's argument for why this theory is inapplicable. The District contends that, under Millstein v. Henske, courts do not recognize a third-party reprisal theory for DCHRA retaliation claims. 722 A.2d 850 (D.C. 1999). This contention is inaccurate. The Millstein court rejected a third-party reprisal theory because the relationship between the plaintiff and the employee who had performed protected activity was a "bare relationship of co-employees": there was no reason to think that adverse action against the plaintiff could constitute retaliation against someone to whom she bore a purely professional relationship. See id. at 854–55. That case is inapposite here, wherein the relevant relationship is between a husband and wife.