# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT MURPHY,** | |
| **Plaintiff,** | |
| **v.** | **1:18-cv-1478 (JDB)** |
| **THE DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The District of Columbia (the District) respectfully moves for summary judgment under

Fed. R. Civ. P. 56.  The grounds for this motion are set forth in the accompanying memorandum

of points and authorities.  A statement of undisputed material facts, exhibits, and proposed order

are also attached.

Date:   September 24, 2021

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Aaron J. Finkhousen*
AARON J. FINKHOUSEN [1010044]
Assistant Attorney General
400 6th Street, NW
Washington, D.C.  20001
(202) 724-7334
(202) 730-0493 (fax)
aaron.finkhousen@dc.gov

*Counsel for Defendant District of Columbia*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT MURPHY, | |
| Plaintiff, | |
| v. | 1:18-cv-1478 (JDB) |
| THE DISTRICT OF COLUMBIA, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**THE DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The District of Columbia (the District) moves for summary judgment because (1) the District terminated Plaintiff's employment for a legitimate, nondiscriminatory reason, and Plaintiff's retaliation claims under Title VII, the Family and Medical Leave Act (FMLA), and the D.C. Human Rights Act (DCHA) cannot survive; (2) Plaintiff retaliation claims under Title VII and the DCHRA fail because no protected activity occurred before Plaintiff's supervisor recommended Plaintiff's termination; (3) the DCHRA claim is barred by Plaintiff's election of remedies; and (4) Plaintiff's failure to accommodate claim under the Americans with Disabilities Act (ADA) and interference claims under the FMLA and the D.C. Family and Medical Leave Act (DCFMLA) falter because Plaintiff failed to provide the required medical documentation supporting his April 2, 2015 FMLA request until after his termination.

On June 11, 2015, Angela Walker, a corrections officer at the D.C. Jail, had a dispute with her supervisor.  Walker believed that her supervisor had instructed her to violate Jail policy on two separate occasions.  She contacted Plaintiff Robert Murphy, a lieutenant and her supervisor's boss, seeking help.  But when Plaintiff arrived, he berated Walker, instructing her to

ignore the D.C. Department of Corrections' (DOC) policy and accept disrespectful behavior from her supervisor and colleagues.  Not only that, he harassed her, inquiring about her sexual preferences using crass terms.

Walker reported the matter to a sergeant, who escalated the report of inappropriate conduct to Joseph Pettiford, Plaintiff's supervisor.  After hearing Walker's report, Pettiford prepared a written recommendation to terminate Plaintiff's employment.

Plaintiff now sues the District, alleging that his termination was unlawful retaliation and that the District violated his rights by not accepting his request for FMLA leave, made a few months before his termination.  As shown below, the undisputed facts establish that Plaintiff was terminated for a legitimate nondiscriminatory reason—his inappropriate comments to Walker—and his request for leave was not acted upon by the agency because he did not provide the required medical documentation supporting the request until after his termination.  Moreover, Plaintiff's Title VII and DCHRA retaliation claims also fail because no protected activity preceded Pettiford's request to fire Plaintiff and the DCHRA claim is barred.

## FACTS

Plaintiff Robert Murphy was employed as a Lieutenant in the D.C. Department of Corrections.  SOF ¶ 1.

I.   **Plaintiff's April 2015 Request for FMLA Leave**

In April 2015, Plaintiff went to his doctor after having a heart attack.  SOF ¶ 2.  On April 2, 2015, Plaintiff's fiancée, Ja'net Sheen, submitted a request for extended leave under the FMLA to the Department of Corrections (DOC) on his behalf.  SOF ¶ 3.  Plaintiff's doctor did not submit the necessary medical certification supporting Plaintiff's FMLA request until July 1, 2015, when he faxed it to DOC.  SOF ¶ 4.  Plaintiff was aware that he needed to submit the

physician's portion of the FMLA leave request for the request to be processed.  SOF ¶ 5.

Plaintiff returned to work after the April 2015 consultation.  SOF ¶ 6.

## II.   <u>Events Preceding Plaintiff's Termination</u>

On May 12, 2015, Plaintiff received a letter of counseling from his supervisor, Major

Joseph Pettiford, because he used the terms "bitches and motherfuckers" when speaking with

inmates.  SOF ¶ 7.  Although Plaintiff claims he did not direct the terms at any particular

individual, he nonetheless admits to using the language.  SOF ¶ 8.

On June 11, 2015, corrections officer Angela Walker submitted an internal complaint

about Plaintiff's conduct toward her.  SOF ¶ 9.  Walker reported that during her shift on June 11,

2015, her supervisor, Sergeant Bernard Bryan, ordered her to perform two tasks in a manner

contrary to her post orders and training.  SOF ¶ 10.  Walker reported the violations to Plaintiff,

the zone lieutenant and Sergeant Bryan's supervisor.  SOF ¶ 11.  Plaintiff then met with Walker

to discuss her concerns.  SOF ¶ 12.   Walker reported that during their conversation, Plaintiff told

her "Fuck the Deputy Warden" and made other disparaging remarks about the Deputy Warden.

SOF ¶ 13.  Walker also reported that Plaintiff told her that "cussing and disrespect was the norm"

among officers at the D.C. Jail.  SOF ¶ 14.  According to Walker, Plaintiff then began to ask her

personal questions.  SOF ¶ 15.  Walker reported that Plaintiff asked her, "[A]re you a dom or a

femme?"  SOF ¶ 16.  Plaintiff admits that he asked Walker whether she was "a dom or a

femme."  SOF ¶ 17.  After the conversation, Walker reported Plaintiff's inappropriate conduct up

the chain of command and completed a written report.  SOF ¶ 18.

## III.   <u>Plaintiff's Termination</u>

On June 11, 2015, Pettiford, Plaintiff's supervisor, submitted a written request for

Plaintiff's termination.  SOF ¶ 19.  His request to terminate Plaintiff was based on Walker's

report of Plaintiff's inappropriate conduct toward her, which he noted violated DOC's "'zero

tolerance policy' toward sexual harassment."  SOF ¶ 20.  Pettiford also noted that Plaintiff's

instruction to Walker to accept disrespectful behavior by corrections officers "demonstrated that

he will not serve as a 'change agent.'"  SOF ¶ 21.  Pettiford also noted Plaintiff's May 12, 2015

letter of counseling, which Pettiford believed "illustrates [Plaintiff's] unwillingness to change

this behavior and support the team's efforts in becoming a benchmark corrections agency."  SOF

¶ 22.

On June 18, 2015, the D.C. Department of Human Resources approved the request to

terminate Plaintiff's employment.  SOF ¶ 23.  On June 19, 2015, DOC issued Plaintiff's letter of

termination signed by DOC Director Thomas Faust.  SOF ¶ 24.  Because Plaintiff was out on

sick leave, DOC employees served him with the termination letter at his home, on June 24, 2015.

SOF ¶ 25.

## IV.     Sheen's Deposition Testimony in Litigation Against Pettiford

Sheen was deposed in a sexual harassment lawsuit filed against Pettiford.  SOF ¶ 26.

Sheen's deposition took place on August 20, 2015.  SOF ¶ 27.

## V.     Plaintiff's Administrative Proceedings Before the D.C. Office of Human Rights (OHR)

Plaintiff brought his District of Columbia Human Rights Act (DCHRA) claims before

OHR.  SOF ¶ 28.  On September 12, 2016, OHR issued a probable cause determination.  SOF ¶

29.  Among the issues addressed were whether the District terminated Plaintiff in violation of the

DCHRA.  SOF ¶ 30.

## PROCEDURAL HISTORY

The Amended Complaint raises five counts:  (1) the District violated the Americans with

Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA), by refusing Plaintiff's attempts to request

4

necessary medical leave and terminating Plaintiff; (2) the District violated the Family Medical

Leave Act of 1993, 29 U.S.C. § 2601 et seq. (FMLA), by failing to grant Plaintiff's requests for

leave and by terminating Plaintiff; (3) the District violated the District of Columbia Family

Medical Leave Act, D.C. Code § 32-501, et seq. (DCFMLA), by failing to grant Plaintiff's

requests for leave and by terminating Plaintiff; (4) the District violated Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Title VII), by terminating Plaintiff because of his

wife's protected activity; and (5)  the District violated the D.C. Human Rights Act of 1977, D.C.

Code § 2-1401.01, et seq. (DCHRA), by terminating Plaintiff because of his wife's protected

activity.  Am. Compl. ¶¶ 23-46.

On the District's motion to dismiss, the Court dismissed several of these claims.

Specifically, the Court dismissed all claims related to the June 22, 2015 request for

accommodations and for leave.  July 15, 2019 Mem. Op. [18] at 5-7 (dismissing the June 22,

2015 ADA failure to accommodate claim); *id.* at 10 (June 22, 2015 FMLA claim); *id* at 11-12

(June 22, 2015 DCFMLA claim).  The Court also dismissed the retaliatory termination claims

Plaintiff brought under the DCFMLA and the ADA.  *Id.* at 7-8 (dismissing the ADA retaliatory

termination claim); *id.* at 12 (DCFMLA).  Thus, the Court's July 15, 2019 Order leaves claims

related to two events:  Plaintiff's April 2, 2015 request for leave and Plaintiff's June 24, 2015

termination.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), courts will grant summary judgment if "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  When considering a motion for summary judgment, the court must

view the evidence in the light most favorable to the nonmoving party.  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  The court must also draw "all justifiable inferences" in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The nonmoving party cannot rely on "mere allegations or denials," *Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting *Anderson*, 477 U.S. at 248), and "conclusory allegations unsupported by factual data will not create a triable issue of fact."  *Pub. Citizen Health Research Group v. FDA*, 185 U.S. 898, 908 (D.C. Cir. 1999).  Instead, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  If the court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the moving party is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In other words, by pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* at 322.

## ARGUMENT

The Court should grant summary judgment in the District's favor on all of Plaintiff's remaining claims and dismiss the Amended Complaint with prejudice because (1) Plaintiff's retaliation claims under Title VII, the DCHRA, and the FMLA fail because he was terminated for a legitimate, nondiscriminatory reason; (2) Plaintiff retaliation claims under Title VII and the DCHRA fail because no protected activity occurred before Pettiford recommended Plaintiff's termination; (3) the DCHRA claim is barred by Plaintiff's election of remedies; and (4)

Plaintiff's failure to accommodate claim under the ADA and interference claims under the FMLA and the DCFMLA fail because Plaintiff failed to provide the required medical documentation supporting his April 2, 2015 FMLA request until after his termination.

**I.        Plaintiff's Retaliation Claims Under Title VII, the DCHRA, and the FMLA Fail.**

Plaintiff's claims alleging that his termination was retaliatory in violation of Title VII, the DCHRA, and the FMLA fail on several grounds. *First*, the District terminated Plaintiff because it reasonably believed that he had made inappropriate comments to a subordinate employee, and thus had a legitimate, non-retaliatory reason for Plaintiff's dismissal. *Second*, Plaintiff's Title VII and DCHRA retaliation claims also fail because the undisputed record establishes that Sheen did not testify at deposition against Pettiford until two months after Pettiford requested Plaintiff's termination. *Lastly*, Plaintiff's DCHRA claim is barred by his election of remedies because OHR issued a probable cause determination.

**A.        Standard of Review Under Title VII, the DCHRA, and the FMLA**

Title VII forbids an employer from taking "a materially adverse action against" an employee because that employee "engage[s] in protected activity." *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007). A materially adverse action "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe R. Co. v. White*, 548 U.S. 53, 57 (2006).

"A plaintiff claiming unlawful retaliation must prove her case under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Broderick v. Donaldson*, 437 F.3d 1226, 1231 (D.C. Cir. 2006) (citing *Smith v. District of Columbia,* 430 F.3d 450, 455 (D.C. Cir. 2005)). Under this framework:

> First, the plaintiff has the burden of proving by the preponderance of the evidence
> a prima facie case of discrimination. Second, if the plaintiff succeeds in proving
> the prima facie case, the burden shifts to the defendant to articulate some legitimate,

> nondiscriminatory reason for the [adverse employment action].  Third, should the defendant carry this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)) (internal quotation marks omitted).  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Burdine*, 450 U.S. at 253 (citations omitted).

If an employer offers a legitimate non-discriminatory reason for an adverse action, "then the court 'need not'—and *should not*—decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*."  *Taylor v. Solis,* 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting *Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 494 (D.C. Cir. 2008)).  A court must proceed instead to the question of discrimination or retaliation *vel non.  See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (once a legitimate, nondiscriminatory reason is proffered, the presumption raised by establishing a *prima facie* case is rebutted and "drops from the case"); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000) (same).

Whether a defendant's proffered reason is fair or reasonable is immaterial.  The "'issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reason it offers.'"  *Bennett v. District of Columbia*, 6 F. Supp. 3d 67, 77 (D.D.C. 2013) (citing *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)); *see also Simpson v. Leavitt*, 557 F. Supp. 2d 118, 130 (D.D.C. 2008) (stating that it is not the "'Court's job to decide if defendant's proffered reasons were wise, fair, or correct, but rather, whether defendant honestly believed those reasons and acted in good faith upon those beliefs"); *Nwachuku v. Jackson*, 605 F. Supp. 2d 285, 290 (D.D.C. 2009), *aff'd,* 368 F. App'x 152 (D.C. Cir. 2010) (same).

"[R]etaliation claims under the DCHRA are analyzed using the same legal framework as federal retaliation claims [under Title VII]." Jul. 15, 2019 Mem. Op. at 16-17, ECF No. 18 (quoting *Cole v. Boeing Co.*, 75 F. Supp. 3d 70, 83 (D.D.C. 2014)) (citing *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994)).  Likewise, retaliation claims under the FMLA are analyzed under the Title VII standard.  *See Gleklen v. Democratic Congressional Campaign Committee, Inc.*, 199 F.3d 1365, 1367 (D.C. Cir. 2000).

### B.     The District Terminated Plaintiff for a Legitimate Nondiscriminatory Reason.

Here, the record amply establishes that the District terminated Plaintiff's employment for a legitimate nondiscriminatory reason—because he made inappropriate remarks to Walker.  SOF ¶ 18.  In fact, Plaintiff concedes that he asked Walker whether she was "a dom or femme."  *Id.* ¶ 15.  In addition, Plaintiff instructed Walker to tolerate rude, disrespectful behavior from her supervisor and colleagues rather than repudiate Sergeant Bryan's behavior.  *Id.* ¶ 18; Ex. 1 at 2. What is more, Plaintiff had been counseled just one month earlier, on May 12, 2015, because he used the terms "bitches and motherfuckers" when speaking with inmates.  SOF ¶ 5.  And he does not dispute that he used the language in front of inmates.  *Id.* ¶ 6.

As Pettiford stated in his request for termination, Plaintiff was terminated because his actions were "unacceptable and counterproductive to the agency's Culture-Change Initiative," "he will not serve as a 'change agent,'" and violated the agency's "'zero tolerance policy' towards sexual harassment."  Ex. 1 at 2; SOF ¶¶ 18-20.  Therefore, the undisputed facts establish that the District terminated Plaintiff's employment for a legitimate nondiscriminatory reason. Nor could any reasonable jury find the District's reason to be pretextual.  Indeed, Plaintiff admits to making the inappropriate remarks on May 12 and June 11, 2015.  Therefore, the Court should

grant summary judgment on Plaintiff's retaliation claims under Title VII, the DCHRA, and the FMLA.

C.    **Plaintiff's Title VII and DCHRA Claims Also Fail Because Sheen's Deposition Testimony Against Pettiford Did Not Occur Until *After* Pettiford Made the Determination to Terminate Plaintiff's Employment.**

Plaintiff brings his Title VII and DCHRA retaliation claims under the "perception theory," arguing that his termination was retaliation against him for Sheen's testimony against Pettiford. *See* Am. Compl. Counts IV & V. But Sheen's deposition testimony against Pettiford in the sexual harassment lawsuit filed against him occurred on August 20, 2015, two months *after* Pettiford requested Plaintiff's termination. "It is axiomatic that a plaintiff engage in statutorily protected activity *before* an employer can retaliate against her for engaging in statutorily protected activity." *Durkin v. City of Chicago*, 341 F.3d 606, 614–15 (7th Cir. 2003) (emphasis added). Thus, Sheen's testimony in August 2015 could not have caused Pettiford to recommend Plaintiff's termination in June 2015. The District is therefore entitled to summary judgment on Counts IV and V of the Amended Complaint.

D.    **Plaintiff's DCHRA Claim Is Barred Because He Elected an Administrative Remedy.**

Plaintiff's DCHRA claim also fails because by proceeding before the Office of Human Rights to a probable cause determination, Plaintiff elected an administrative remedy. A plaintiff may choose an administrative remedy under the DCHRA or to bring a civil action but cannot choose both. D.C. Code § 2-1403.16. This election of remedies becomes irreversible when the Office of Human of Rights issues a probable cause determination. *Id.*; *Anderson v. U.S. Safe Deposit Co.*, 552 A.2d 859, 860-61 (D.C. 1989); *Brown v. Capitol Hill Club*, 425 A.2d 1309, 1312 (D.C. 1981). Thus, a plaintiff who has received a probable cause determination, regardless of whether the determination was in his favor, cannot later bring a DCHRA claim in court.

*Anderson*, 552 A.2d at 860; *Brown*, 425 A.2d at 1312.  Here, Plaintiff received a probable cause

determination on his DCHRA claims.  Ex. 10 at 2 (finding probable cause that the District

terminated Plaintiff while he was on leave but finding no probable cause that the termination was

because of his disability).  As a result, he is barred from bringing any DCHRA claim in court

because he elected an administrative remedy.

II.    **Plaintiff's ADA Claim for Failure to Accommodate and His Interference Claims Under the FMLA and DCFMLA Arising from His April 2, 2015 Request for Leave Fail Because He Did Not Timely Submit the Required Medical Certification.**

The record establishes that Plaintiff's physician did not submit the required medical

certification to support Plaintiff's April 2, 2015 request for FMLA leave until July 1, 2015, after

Plaintiff's employment had been terminated.  Therefore, no reasonable jury could find that the

District failed to provide Plaintiff with a reasonable accommodation or interfered with his rights

under the FMLA and DCFMLA.

To prevail on a failure to accommodate claim under the ADA, a plaintiff must show that

(1) he had a disability within the meaning of the ADA; (2) his employer had notice of his

disability; (3) he could perform the essential functions of his job with reasonable

accommodation; and (4) his employer refused to make such accommodation.  *Floyd v. Lee*, 968

F. Supp. 2d 308, 326 (D.D.C. 2013).  To prevail on an "interference" claim under the FMLA or

DCFMLA, a plaintiff must show that "her employer interfered with, restrain[ed], or denied the

exercise of or the attempt to exercise, any right provided by the FMLA and that she was

prejudiced thereby."  *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 164 (D.C. Cir. 2015) (citing

*McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 6 (D.C. Cir. 2010)).  But an

employer may "require an employee to submit certification to substantiate that the leave is due to

the serious health condition of the employee."  29 C.F.R. § 825.100; *see also* D.C. Code § 32-

11

504 (a) ("An employer may require that a request for . . . medical leave . . . be supported by a certification issued by the health care provider of the employee or family member.").

Plaintiff's ADA failure-to-accommodate claim and interference claims under the FMLA and the DCFMLA fail because he did not provide the required medical documentation supporting his request for leave until after he received the notice of his termination.  Although Plaintiff submitted his leave request on April 2, 2015, his doctor did not submit the required medical certification supporting Plaintiff's request until July 1, 2015.  SOF ¶¶ 3-4; *see* 29 C.F.R. § 825.100; D.C. Code § 32-504 (a).  And Plaintiff was aware that he needed to submit the physician's portion of the FMLA leave request for the request to be processed.  SOF ¶ 5.

"'An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied.'"  *Waggel v. George Washington Univ.*, No. 16-cv-1412 (CKK), 2018 WL 5886653, at *3 (D.D.C. Nov. 9, 2018) (quoting *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999)).  But here, the District did not deny Plaintiff a reasonable accommodation; rather, he failed to timely comply with the procedures to seek FMLA leave.  For the same reason, the District cannot be said to have interfered with Plaintiff's FMLA rights when he failed to comply with the procedures required.  Thus, the Court should enter summary judgment in the District's favor on Plaintiff's ADA, FMLA, and DCFMLA claims regarding the April 2, 2015 request for leave.

## CONCLUSION

For these reasons, the Court should grant summary judgment in the District's favor.

Date:   September 24, 2021                    Respectfully submitted,

                                             KARL A. RACINE
                                             Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Aaron J. Finkhousen*
AARON J. FINKHOUSEN [1010044]
Assistant Attorney General
400 6th Street, NW
Washington, D.C.  20001
(202) 724-7334
(202) 730-0493 (fax)
aaron.finkhousen@dc.gov

*Counsel for Defendant District of Columbia*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT MURPHY,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**THE DISTRICT OF COLUMBIA,**<br><br>    **Defendant.** | **1:18-cv-1478 (JDB)** |

### <u>ORDER</u>

Upon consideration of Defendant's Motion for Summary Judgment, any opposition and reply, and the entire record, it is this _____ day of _____ 202__, hereby

  **ORDERED** that Defendant's Motion is **GRANTED**; and it is further

  **ORDERED** that **JUDGMENT** is granted in Defendant's favor; and it is further

  **ORDERED** that the Amended Complaint is **DISMISSED WITH PREJUDICE**.

  **SO ORDERED**.

        _____
        JOHN D. BATES
        United States District Judge