Government of the District of Columbia
Mayor Muriel E. Bowser

Office of Human Rights
DISTRICT OF COLUMBIA

One Judiciary Square
441 4th Street NW, Suite 570N
Washington, DC 20001
202.727.4559 *tel*
202.727.9589 *fax*
ohr.dc.gov

# LETTER OF DETERMINATION

***PROBABLE CAUSE – DCFMLA Interference (termination); Retaliation (termination)***
***NO PROBABLE CAUSE – Disability Discrimination, DCFMLA Retaliation, DCFMLA Interference (denial of DCFMLA request)***

**Via Electronic Mail**

Robert Murphy
c/o Zachary Molloie, Esquire
Temple Law Offices
1101 15th Street, NW, Suite 203
Washington, DC 20005
zacharyprescottmolloie@gmail.com
***Complainant***

District of Columbia Government
Department of Corrections
Tecora Martin, EEO Officer
2000 14th Street, NW, 7th Floor
Washington, DC 20009
Tecora.Martin2@dc.gov
***Respondent***

**RE:** ***Robert Murphy v. District of Columbia Government- DOC***
**Docket No.: 15-889-DC(CN)**
**EEOC No.: 10C-2015-00807**

Dear Parties:

The District of Columbia Office of Human Rights (OHR) has completed the investigation of the above referenced complaint. Robert Murphy is referred to as **"COMPLAINANT."** The District of Columbia Government, Department of Corrections (DOC), the employer for whom Complainant worked, is referred to as **"RESPONDENT."**

## ISSUES PRESENTED[1]

Whether Respondent, a D.C. Government agency, interfered with Complainant's rights under DCFMLA, and discriminated against him on the basis of his disabilities (stage four kidney

[1] *See* Amended Charge of Discrimination dated August 18, 2016 (OHR File at § II).

failure, diabetes, and hypertension), by failing to respond to his April 2, 2015 request for DCFMLA leave.

Whether Respondent, a D.C. Government agency, interfered with Complainant's rights under DCFMLA, and discriminated against him on the basis of his disabilities (stage four kidney failure, diabetes, and hypertension), by failing to respond to his June 22, 2015 request for DCFMLA leave.

Whether Respondent, a D.C. Government agency, interfered with Complainant's rights under DCFMLA, and discriminated against him on the basis of his disabilities (stage four kidney failure, diabetes, and hypertension) by terminating his employment on June 24, 2015.

Whether Respondent retaliated against Complainant based on his protected activity of requesting DCFMLA leave on April 2, 2015 and June 22, 2015, when Respondent terminated Complainant on June 24, 2015.

Whether Respondent retaliated against Complainant based on his spouse's protected activity (participating in a lawsuit against Respondent on June 22, 2015), when Respondent terminated Complainant on June 24, 2015.

**SUMMARY OF FINDINGS**

OHR finds no probable cause to believe that Respondent interfered with Complainant's rights under DCFMLA by failing to respond to Complainant's April 2, 2015 DCFMLA request, because the record does not indicate that Complainant was entitled to DCFMLA leave on this date.

OHR finds no probable cause to believe that Respondent interfered with Complainant's rights under DCFMLA by failing to respond to his June 22, 2015 DCFMLA request because the record indicates that Respondent's ADA coordinator informed Complainant that he was covered by DCFMLA following his June 18, 2015 hospitalization, and stated that she would have formally processed his DCFMLA request on July 1, 2015 when Complainant submitted his medical certification form to her, had Complainant not been terminated. Moreover, Complainant used his accrued sick leave and did not lose any compensation and/or benefits and thus, was not harmed by Respondent's inability to immediately approve Complainant's leave request.

OHR does find probable cause to believe that Respondent interfered with Complainant's right to DCFMLA leave by terminating Complainant while he was out on DCFMLA protected leave.

OHR finds no probable cause to believe that Respondent failed to respond to Complainant's DCFMLA requests or terminated him on the basis of his disabilities. The record indicates that Complainant was not entitled to DCFMLA leave on April 2, 2015 and that Respondent did respond to Complainant's June 22, 2015 request for DCFMLA leave. Further, the record does not indicate that Complainant was terminated on the basis of his disability. Rather, the record

indicates that Complainant's termination may have been in retaliation for his Wife's protected activity (participating in a lawsuit against Respondent on June 22, 2015).

OHR finds no probable cause to believe that Respondent retaliated against Complainant based on his protected activity of requesting DCFMLA leave because there is no nexus between the request for leave and Complainant's termination.

OHR finds probable cause to believe that Respondent retaliated against Complainant for his spouse's protected activity by terminating him on June 24, 2016 because there a close temporal proximity between Complainant's Wife's protected activity (on June 23, 2015) and Complainant's termination (on June 24, 2015), and the person whose behavior Complainant's Wife was testifying about, was the person who recommended Complainant's termination.

## JURISDICTION

In cases where D.C. government is the employer, OHR has jurisdiction over allegations of discrimination under the D.C. Human Rights Act (DCHRA) brought to the attention of an EEO Counselor within 180 days of the discriminatory act and that are filed with OHR within 15 days of the issuance of an Exit Letter by the EEO Counselor. *See* D.C. Code § 2-1403.04; 4 DCMR §§ 105-106.[2] Here, the complaint indicates that the alleged discriminatory conduct occurred between April 2015 and June 2015. Complainant first contacted a counselor regarding those allegations on July 1, 2015. The exit letter was issued on July 13, 2015, and Complainant filed his initial written complaint with OHR the same day, within the 15-day filing period. Accordingly, OHR has jurisdiction over Complainant's DCHRA claims.

The District of Columbia Family & Medical Leave Act, D.C. Code §§ 32-501, *et seq.*, applies to every District of Columbia Government Agency. *See* 4 DCMR § 1601.6. That Respondent is a covered employer is not in dispute. To be eligible for leave, Complainant must, at the relevant time, work for Respondent in the District of Columbia, have been employed for at least one year without a break in service during the preceding seven years, and have worked for Respondent for at least one thousand hours during the preceding twelve-month period. *See* §§ 1603.1-.2. That Complainant was eligible for DCFMLA benefits at the relevant time, is also not in dispute.

OHR has jurisdiction over allegations of discrimination brought under the DCFMLA and filed with OHR within one year of the occurrence of an alleged discriminatory act that occurred in the District of Columbia. *See* 4 DCMR § 1610.3. Here, the alleged discriminatory acts occurred while Complainant was employed by Respondent at 2000 14th Street, NW, Washington, DC 20009. The complaint indicates that the alleged discriminatory conduct between April of 2015

---

[2] Pursuant to 4 DCMR § 105.1, a government employee or applicant must consult an EEO Counselor within 180 days of the alleged discriminatory practice (except in cases of sexual harassment). The EEO Counselor is also obligated to issue an Exit Letter to Complainant on the date of the EEO Counselor's final interview in the investigation, informing Complainant of his or her right to file a formal complaint with OHR within 15 days of the letter. *Id.* at § 105.5. OHR has jurisdiction over claims filed with the organization within 15 days of the issuance of the Exit Letter by the EEO Counselor. *See Id.* at §§105.6 - 105.8, 106.1.

and June 25, 2015.[3] Complainant filed his complaint on July 13, 2015, within the statutory period.[4] Accordingly, OHR has jurisdiction over Complainant's DCFMLA related claims.

## SUMMARY OF INVESTIGATION

OHR's investigation included a review of: (1) Complainant's Charge of Discrimination; (2) Respondent's Position Statement; (3) Respondent's Responses to OHR's Requests for Information; (4) Complainant's Rebuttal and Interview; and (5) Witnesses' Interviews.

### Complainant's Allegations[5]

Complainant was hired by Respondent as a Correctional Officer on March 26, 1990 and was subsequently promoted to the position of Lieutenant.

Complainant has stage 5 kidney failure, hypertension, and diabetes.

Complainant states that he made Respondent aware of his diagnosed disabilities in January 2015. On April 2, 2015,[6] Complainant states that he and his doctor submitted a DCFMLA application to Respondent. Respondent failed to respond with an approval or denial of his application. Complainant's spouse inquired on several occasions on Complainant's behalf to Respondent regarding the status of Complainant's DCFMLA application. Complainant states that Respondent failed to respond to these inquiries.

Complainant states that he called Respondent on June 18, 2015 to advise that he would not report to work because of his illness. Complainant was hospitalized that day, and released into the care of his primary physician on June 19, 2015. On June 22, 2015, Complainant faxed a letter to Respondent informing Respondent of Complainant's condition and again requested DCFMLA leave. Complainant alleged that Respondent continued to ignore his requests for DCFMLA. Complainant believes that Respondent interfered with his entitlement to DCFMLA and discriminated against him based on his disability by failing to respond to his requests.

On June 24, 2015, Complainant received an advanced notice of his termination. The termination notice came just two days after his wife's affidavit was read at deposition during a sexual harassment lawsuit against Respondent.[7] The lawsuit was filed against Respondent, but primarily focused on the actions of the Major, who was in Complainant's chain of command prior to his termination. Complainant believes that he was terminated in retaliation for his wife's testimony in the sexual harassment lawsuit against Respondent. Complainant also claims that his

---

[3] *See* Charge of Discrimination dated August 18, 2016 (OHR File at § II).

[4] *See* Initial Written Complaint dated (OHR File at § II).

[5] *See* Charge of Discrimination dated August 18, 2016 (OHR File at § II).

[6] The record indicates that Complainant completed and submitted a DCFMLA application on April 2, 2015 (*See* Outgoing Correspondence, OHR File § III).

[7] The record indicates that Complainant's wife is not a party to the lawsuit but is a key witness in the lawsuit against Respondent. Complainant's wife is a former employee of Respondent.

termination amounts to DCFMLA interference and retaliation because Respondent had failed to respond to his DCFMLA request prior to his termination.

**Respondent's Position**[8]

Respondent denies discriminating against Complainant or retaliating against him for his protected activity. Respondent explains that Complainant was hired by Respondent as a Correctional Officer in March of 1990. Respondent asserts that Complainant received several promotions during his tenure.

Respondent states that Complainant did not make Respondent aware of his disability diagnosis in January 2015. Respondent asserted that on April 2, 2015, Complainant provided an incomplete DCFMLA application to Respondent's Americans with Disabilities Act Coordinator ("ADA Coordinator"). Respondent received a doctor's note from Complainant on June 22, 2015, which excused Complainant from work until July 6, 2015. In this note, Complainant did not disclose his disability.

On July 1, 2015, Complainant provided Respondent's ADA Coordinator with a copy of the medical certification section of the DCFMLA request form, which described the medical facts of Complainant's condition and the probable duration of Complainant's disability.

Due to HIPPA concerns, Respondent will not communicate with third-parties regarding Complainant's medical information unless the communication is with Complainant's healthcare provider. At the time of application, the person attempting to communicate with Respondent regarding Complainant's medical information was his fiancé, and thus, Respondent was unable to discuss the situation with her.

Respondent agrees that Complainant was hospitalized on June 18, 2015 and contacted Respondent's ADA Coordinator that he would not be coming into work. On June 19, 2015, Respondent's Director issued an advance notice of termination. On July 1, 2015, Respondent received Complainant's medical certification, seven days after he received the advanced notice of his termination. Since Complainant was terminated, the status of his DCFMLA application was moot.

Further, Complainant was terminated for his unprofessional behavior and unwillingness to comply with Respondent's mission and vision of enhancing a respectful workplace. On May 8, 2015, Complainant was observed referring to inmates as "bitches and motherfuckers." As a result, on May 12, 2015, the Complainant's supervisor ("the Major") issued Complainant a letter of counseling for inappropriate behavior. On June 11, 2015, a subordinate female officer ("the Officer"), sought assistance from Complainant when a sergeant yelled and spoke to her in a demeaning manner. Rather than offering support to the Officer, Complainant told her that the supervisory officer's tone was "normal." Complainant advised the Officer to adapt to the environment because that was how things were done. Complainant then asked the Officer about her sexual orientation and inquired to whether she was a "fem" or "dom." After the Officer filed

[8] *See* Position Statement dated March 17, 16 (OHR File at § V).

a report about this incident, the Major recommended Complainant's termination on June 11, 2015. The Warden and Deputy Warden concurred with the Major's recommendation and the Director authorized Complainant's termination based on Complainant's failure to conform to proper workplace etiquette standards. In accordance to Respondent's protocol, if an employee is off duty at the time of termination, staff from Respondent's Office of Investigative Services will provide service of the notice of termination to the employee at his residence. Since Complainant was on sick leave, he was served at his home.

The Director had no knowledge of Complainant's relationship or his fiancé's testimony in the sexual harassment lawsuit against Respondent. Respondent terminated Complainant effective July 10, 2015 for legitimate, non-discriminatory reasons.

**Complainant's Rebuttal**[9]

Complainant asserts that prior to April of 2015, he discussed his Stage 4 kidney failure with the Major.[10] Complainant explained to the Major that his doctor instructed him to request FMLA leave in order to properly recover. The Major instructed Complainant to meet with Respondent's ADA Coordinator. Complainant met with the ADA Coordinator, who instructed him to complete the DCFMLA packet. Complainant turned in a completed application shortly thereafter in April 2015. The packet included a section that Complainant's doctor faxed to the ADA Coordinator.[11] The ADA Coordinator refused to accept his application because Respondent would only accept an original copy of the forms. Complainant's doctor was not allowed to fax this portion of the application.

While the doctor's note provided by Complainant's physician did not disclose his disability, Complainant asserted that his doctor already provided Respondent with this information. On July 1, 2015, Complainant's wife provided Respondent with a hard copy version of the completed DCFMLA application. At this point, Complainant was recovering in the hospital and could not provide the documentation without his wife's assistance.

Complainant alleges that the disciplinary reasons used to support his termination serve as pretext for Respondent's discrimination. Complainant argues that most officers used profanity. Complainant also asserts the Officer approached Complainant about a sexual orientation complaint. Complainant states that he followed up by questioning the Officer about the incident. Based on Respondent's training, Complainant was instructed to ask questions regarding how the employee identified to determine how to move forward. Complainant states that he was never reprimanded for this incident.

According to the termination letter, Complainant was terminated for non-disciplinary reasons. The Major's recommendation to terminate Complainant's employment was retaliatory in nature; his wife's widely publicized involvement in a sexual harassment lawsuit against Respondent and

---

[9] *See* Letter/Rebuttal dated June 3, 2016 (OHR File at § IV).

[10] The record indicates that Captain A was Complainant's immediate supervisor, while the Major was Captain A's supervisor. Thus, the Major was in Complainant's chain of command.

[11] Complainant did not submit a copy of this fax to OHR in support of his Charge.

Retaliation

the Major, or his request for DCFMLA leave. Further, Respondent's protocol states that an employee on sick leave is to be informed of adverse actions either upon his return to work or through certified mail. By hand delivering Complainant's termination letter at 10:30 p.m. via armed officers to his home, Respondent intentionally frightened and intimidated Complainant and his wife.

**Documents**

OHR reviewed and considered the following documents provided by the Complainant:[12]

A. Documents Submitted at Intake
    1. OHR Questionnaire, dated July 13, 2015
B. Attachments to Complainant's Rebuttal
    1. Notice of Termination, dated June 19, 2015, and Acknowledgement of Receipt, signed June 24, 2015

OHR reviewed and considered the following documents provided by Respondent:[13]

A. Attachments to Respondent's Position Statement
    a. Affidavit of Respondent's FMLA and ADA Coordinator/Management Liaison Specialist, not dated
    b. DC FMLA Application, dated April 2, 2015
    c. Complainant's Doctor's note, dated June 22, 2015, excusing him from work until Monday, July 6, 2015
    d. Medical Certification for DCFMLA, dated July 1, 2015, detailing his medical conditions and stating that the Complainant is incapacitated for 3 to 6 months
    e. Memorandum: Letter of Counseling for Inappropriate Behavior from the Major to Complainant, dated May 12, 2015
    f. Incident Report by the Officer, dated June 11, 2015, which detailed how Complainant spoke offensively to Officer W after going to him to report a sergeant's disrespectful behavior
    g. Memorandum: Request for Complainant's Termination from the Major to the Director, dated June 11, 2015
    h. Affidavit of the Deputy Warden, not dated, stating that the recommendation to terminate was based on Complainant's conduct and that the Deputy Warden lacked knowledge of Complainant's wife's involvement in a case against the Major
    i. Affidavit of the Warden, not dated, stating that the recommendation to terminate was based on Complainant's conduct and that the Deputy Warden lacked knowledge of Complainant's wife's involvement in a case against Major P
    j. Affidavit of the Director, not dated, stating that Complainant's termination was a result of his misconduct and that the Director lacked knowledge of both Complainant's relationship with his wife and Complainant's wife's involvement in a case against the Major

---

[12] *See* OHR File at § IV.
[13] *See* OHR File at § V.

k. Notice of Termination, dated June 19, 2015, and Acknowledgement of Receipt, signed June 24, 2015
l. Open Letter from the Director's Office, dated January 13, 2014, concerning Staff Professionalism

B. Respondent's Response to OHR's Request for Information and Attached Documents
   a. Open Letter from the Director, dated January 13, 2014, concerning Staff Professionalism
   b. Respondent's EEO Policy, effective March 13, 2014
   c. Complainant's Personnel File
      i. Request for Authorization to Terminate Complainant from the Director to Respondent's Human Resources Department, dated June 18, 2015
      ii. Email/Request for Termination from Major P to the Director, dated June 11, 2015
      iii. Memorandum: Letter of Counseling for Inappropriate Behavior from the Major to Complainant, dated May 12, 2015
      iv. Incident Report by the Officer, dated June 11, 2015, which detailed how Complainant spoke offensively to the Officer after going to him to report a Sergeant's disrespectful behavior
      v. Incident Report by a witness, dated June 11, 2015, which detailed the Officer's complaint about Complainant
      vi. Written Letter of Counseling from Complainant to correctional officers dated June 24, 2014 and January 25, 2014
      vii. Memorandum of Complainant's Alleged Sexual Misconduct, dated February 7, 2012
   d. Medical Certification dated July 1, 2015
   e. Emails from Respondent's Human Resources Department , dated June 24, 2015, which details Respondent's attempts to serve Complainant his termination paperwork
   f. Affidavits of the Warden, Deputy Warden and Director
   g. Request for Authorization to Terminate Complainant from the Director to Respondent's Human Resources Department, dated June 18, 2015
   h. Notification of Personnel Action, effective July 10, 2015
   i. Email from the Director to Respondent's staff, explaining the Major's voluntary request to resign from the Deputy Warden position to a Shift Major position, dated October 2, 2013

C. Additional Information
   a. EEO Initial Contact, dated July 1, 2015
   b. EEO Exit Letter, dated July 1, 2015
   c. EEO Counseling Documentation
   d. Sexual Harassment Complainant against Respondent, dated November 7, 2013

**Summary of Relevant Documents**

Complainant's DCFMLA request form states that it was submitted to Respondent on April 2, 2015. Complainant requests intermittent medical leave for 640 hours, using a combination of sick leave, leave bank hours, voluntary leave, annual leave, and leave without pay. The application does not does not state the reason for the medical leave nor does is discuss Complainant's medical condition.

A letter from Complainant's doctor dated, June 22, 2015, states that Complainant is undergoing "close monitoring" and requests that he be excused from work until July 6, 2015. The note does not reference any medical condition or explain why Complainant was being closely monitored.

Complainant's doctor submitted a medical certification form to Respondent dated July 1, 2015 identifying Complainant's disability as chronic kidney disease, hypertensive chronic kidney disease (malignant), unspecified renal failure and type II diabetes mellitus. The certification indicates that Complainant's condition commenced on June 22, 2015 and the probable duration of incapacity is three to six months.

In an open letter to Respondent's employees regarding professionalism, dated January 13, 2014, the Director stated that verbal intimidation, derogatory comments or gestures, name-calling and the use of profanity towards others is unacceptable and will result in appropriate disciplinary action.

Complainant received a letter of counseling from the Major on May 12, 2015 regarding Complainant's inappropriate behavior. The Major stated that he received emails from a Classification and Parole Officer stating that Complainant referred to inmates as "bitches and motherfuckers" on over 15 occasions. The letter indicates that when the Major discussed the matter with Complainant, Complainant admitted to using these terms but clarified that the disparaging remarks were not directed any one person. Respondent, however, still found Complainant's conduct to be unprofessional. Complainant signed the letter of counseling on May 12, 2015.

In a report dated June 11, 2015, the Officer made a report regarding her conversation with Complainant. In the report, the Officer claims that Complainant asked her if she was a "dom or a fem"[14] and if she had a significant other in the past. The Officer later informed a sergeant and the Major of the conversation, as indicated in the incident report filled out by the sergeant on June 11, 2015. The record indicates that in February of 2012, an inmate filed a sexual harassment complaint against Complainant.

On June 11, 2015, the Major sent a memorandum to Respondent's Director requesting Complainant's termination. Complainant's termination was approved on June 18, 2015.

---

[14] The record indicates that Complainant attempted to assess whether the Officer had dominant or feminine characteristics in her relationships.

According to the Notice of Termination dated June 19, 2015,[15] Respondent terminated Complainant for "non-disciplinary" reasons. The Notice of Termination was signed by Complainant on June 24, 2015.

Respondent asserted in its response to the Request for Information[16] that Complainant was terminated for disciplinary reasons. The record indicates that Respondent listed "non-disciplinary reason" as the basis for Complainant's termination in order to allow Complainant to receive the maximum in severance pay. Respondent asserted that it acted with benevolence in light of Complainant's many years of service.

In Respondent's Basic Equal Employment Opportunity Training presentation, Respondent's sexual harassment policy dictates that each employee is prohibited from engaging in sexual harassment or inappropriate sexual conduct. The employee is required to report inappropriate sexual harassment or conduct when experienced. Sexual harassment can be unwelcomed or offensive conduct. An employee may report such conduct to any supervisor, a private hotline, the EEO officer, or Respondent's headquarters or human resources department.[17]

Third Party evidence indicates that the lawsuit against Respondent and the Major was initiated on November 7, 2013. Complainant's wife's testimony is included in the sexual harassment complaint.

The Major was terminated by Respondent for filing a false report and filing false statements in Respondent's monthly reports.

**Information from Witnesses**

OHR obtained and considered the following information from witnesses:[18]

A. Complainant
B. ADA Coordinator
C. Captain A
D. Complainant's Spouse
E. The Officer
F. Captain B

*Complainant*

Complainant indicated that he has stage 5 kidney failure, hypertension, cholesterol, and diabetes. He has also suffered 8 strokes. Complainant informed both the ADA Coordinator and the Major of his disabilities in January 2015. The Major instructed Complainant to talk to the ADA Coordinator and the ADA Coordinator gave Complainant the DCFMLA paperwork.

---

[15] *See* OHR File at § V.
[16] *See* OHR File at § V.
[17] Respondent's EEO Policy (*See* OHR File at § V).
[18] *See* OHR File at § III.

Although Respondent says Complainant's April 2, 2015 application was incomplete, Complainant asserted that the application was complete. Complainant's doctor faxed a copy of the application to Respondent. Complainant's wife indicated that the ADA Coordinator instructed her to bring an original copy of the application to have it approved. Complainant's wife also stated that the ADA Coordinator did not tell her that she could not accept the application from her.

When Complainant was hospitalized in June 2015, Complainant contacted a female Captain on the midnight shift. Complainant's wife called Captain A on the day shift to inform him that Complainant was being admitted to the hospital. Although he previously requested leave from the ADA Coordinator, Complainant stated that she did not follow up with him following his hospitalization.

Complainant stated that his relationship with his wife was public and common knowledge because she previously worked for Respondent and they had been together for ten (10) years. Respondent's Warden and Deputy Warden were both aware of the relationship. Complainant stated that his wife's involvement in the sexual harassment suit was public knowledge with Respondent since it was initiated in 2008.[19] When Complainant was hospitalized in January 2015, Respondent's Warden and Deputy Warden met Complainant's wife at the hospital, where she introduced herself. Complainant stated that he did not know anything about the lawsuit and did not ask her about it.

Complainant stated that when the inmates failed an inspection in May 2015, he became involved in a heated conversation. The "bitches and motherfuckers" statement was taken out of context. He stated that the Major gave him a verbal warning and informed him that the incident was not going into his personnel file. Complainant apologized to the inmates and nothing else happened.

In June 2015, Complainant states that the Officer approached Complainant to complain about perceived sexual harassment from a sergeant. He asked the Officer questions following Respondent's protocol regarding sexual harassment. He stated that he just wanted to find out what happened. He stated that the Officer misinterpreted his line of questioning.

Following the receipt of his advanced notice of termination, Complainant stated that he contacted DCHR, who had no record of his termination. As a result, Complainant sent his medical certification because DCHR instructed him to proceed as if he had not been terminated. After a few days, Complainant followed up with DCHR, who still had no record or knowledge of Complainant's termination. Complainant provided DCHR with a copy of his termination letter, and only then did Complainant receive his exit interview.

Complainant indicated that he used his sick leave while he waited for an answer regarding his DCFMLA application. He is confused because his termination letter stated that he had not been terminated for disciplinary reasons. He believes that he was terminated because of his wife's involvement in the sexual harassment lawsuit.

---

*ADA Coordinator*
The ADA Coordinator has been in this position with Respondent since July 2, 2012. She stated that she was aware of Complainant's disability because in 2014, Complainant requested DCFMLA due to a hospital stay. She told him to come see her if he needed anything.

In 2015, Complainant again requested DCFMLA. At first, Complainant submitted a request for intermittent leave on April 2, 2015. Complainant, however, didn't provide any medical documentation to support the request. The ADA Coordinator stated that she told Complainant when she saw him around the building that he was DCFMLA eligible, but he needed to submit his medical documentation. Despite her instruction, the medical documentation was not submitted. Complainant's application was thus, incomplete.

Complainant informed the ADA Coordinator that he was in the hospital on June 18, 2015. She told him that he was covered by DCFMLA. On June 22, 2015, she received a doctor's note from Complainant's doctor excusing Complainant from work until July 6, 2015. Complainant's doctor also faxed over his medical documentation on July 1, 2015. She stated that she would have processed his application after receiving the fax, but she was told that he had been removed from his position.

The ADA Coordinator stated that Complainant's significant other called her on his behalf, but the ADA Coordinator would always ask to speak to Complainant. She stated that she accepted the faxed copy of the DCFMLA application and medical documentation, but also told Complainant that she needed the hard copy original of the application.

*Captain A*[20]
Captain A stated that he started supervising Complainant in or around August 2013. They had a good working relationship. According to Captain A, he was not aware of any disciplinary actions taken against Complainant under his supervision. Captain A never officially disciplined Complainant, but he coached Complainant on the way he spoke to people. Captain A described Complainant as "blunt."

Captain A was aware that Complainant was married. He remembers his wife and remembers her picking his up from work. Captain A talked to her in the parking lot. Captain A stated that Complainant's marriage was common knowledge in the jail. He also acknowledged that Complainant's wife was a former employee. Captain A only recalled that there was a lawsuit involving Complainant's wife but cannot remember how he found out.

Captain A stated that the Major was his supervisor. Captain A stated that the Major and Complainant only had a working relationship and did not have a lot of common personality traits. Captain A stated that the Major never pressured him into disciplining Complainant. The

[20] The EEO Officer, who was present for the interview, interrupted the interview on several occasions and limited the scope of the investigative process by instructing Captain A not to answer key questions pertaining to the Major.

Major once made a comment about the cleanliness of Complainant's uniform but he also made comments about the cleanliness of the uniforms of other officers as well.

Captain A stated that Complainant spoke to him about his heart and kidney issues and that he had been hospitalized. Captain A does not recall speaking with Complainant about DCFMLA and asserted that Complainant never made an official DCFMLA request to him.

Captain A indicated that cursing at inmates happens often in the jail environment. He stated that there were not too many employees who had not cursed at an inmate in the past. Although Respondent's Director started an initiative to improve professionalism in the jails, he was not aware of any instances where an officer was punished for cursing at an inmate. Captain A mentioned that employees were typically disciplined for using force against an inmate. He has never disciplined a subordinate for cursing at an inmate.

Captain A lacked any knowledge regarding Complainant's termination. He mentioned that he read recently that Complainant was terminated for cursing at an inmate but could not recall where he read this information.

*Complainant's Wife*
Complainant's Wife ("Wife") worked for Respondent as a Corporal from December 2006 until she was assaulted in April 2009. After her assault, she was placed on worker's compensation. When she asked to return to work, she was told that she needed permission from the Major. The Major told her that if she did what she was supposed to do, she would have been back to work. The Wife did not want to compromise herself so she resigned in September of 2010. She stated that she made numerous complaints against the Major since 2007. Although her complaints were documented by Respondent's former deputy warden, there had been no action taken against the Major.

The Wife indicated that she and Complainant have been living together since 2007 and have been married since 2009. Complainant and his wife both worked for Respondent while they were dating and married. She stated that "everyone" in the jail knew about their relationship, including the Major, the majority of the Captains, the Deputy Warden, and the Warden. She would often call in sick on Complainant's behalf whenever Complainant was sick.

Wife stated that the sexual harassment suit began in 2011. She was contacted by the Washington Lawyers Committee to be a plaintiff in the case. However, she was unable to be a plaintiff in the case because the statute of limitations had run on her complaint. She was contacted again in 2014 and was later determined to be a witness. She stated that she is "the number one witness" in the case against Respondent and the Major. The Wife decided to come forward because she was no longer working there and knew other officers experienced the same treatment but remained silent because in fear of retaliation. She stated that over 50 female officers are involved in the case and it is ongoing. The Wife's first deposition was in June or July of 2014. She was deposed a total of three times. Her last deposition was on June 22, 2015. She explained how the Major sexually assaulted her during the deposition.

The lawsuit is public record so she believed that everyone, especially Respondent's management, knew about her involvement in the case. When Complainant was in the hospital, the Warden and Deputy Warden visited and met her.

The Wife stated that cursing in the jail was a common occurrence. Many of Respondent's employees would curse at inmates to get their attention. The Wife had never been reprimanded for cursing and has not witnessed another employee be disciplined for cursing at an inmate.

The ADA Coordinator told Complainant that he could use sick leave and that if he did not have enough, officers may donate leave. During the initial contact, ADA Coordinator informed them that Complainant would be on short term disability and then FMLA would come in. On June 24, 2015, Complainant was terminated.

During the first week of April, Complainant's physician contacted the ADA Coordinator to inform her of Complainant's medical condition and request FMLA. During the second week of April, Complainant told the Major and Captain A about his FMLA request. They both referred Complainant to the ADA Coordinator. On May 26, 2015, completed DCFMLA paperwork was faxed to Respondent. The Wife believes Respondent informed her that the paperwork was incomplete sometime between April and May. During the first week of June, the ADA Coordinator stated that she needed the original copies. Complainant picked up the paperwork and took it to the doctor. On June 17, 2015, Complainant was admitted to the hospital. On June 22, 2015, the doctor faxed a letter to the ADA Coordinator stating that Complainant was under his care and informed the ADA Coordinator that more paperwork was to follow. The Wife stated that Respondent failed to follow up with Complainant.

*The Officer*

The Officer has worked for Respondent for a year and half and only knew Complainant as a lieutenant. Her day shift supervisors are Captain A and Captain B. On June 11, 2015, the Officer complained to Complainant regarding an interaction with a sergeant because on that day he was in her chain of command. Complainant met with the sergeant and the Officer at the same time in order to address the situation. She felt like Complainant did not address the situation with urgency and was very nonchalant about her complaint. Complainant told her to get used to situations like these. Complainant gave examples about the culture of the department and then asked her whether she was a "dom or a fem." Surprised, the Officer informed him that she was neither. The Officer indicated that the sergeant had not said anything sexual to her and was puzzled to Complainant's line of questioning. She was only upset about the way the sergeant ran the unit.

The Officer believed that the questions Complainant asked were inappropriate, irrelevant, and inconsistent with protocol. Prior to this event, she had no issues with Complainant. The Officer has no knowledge of Complainant's wife or anything about his personal life. She was not aware of his wife's lawsuit. While she indicated that she did not swear at inmates, she was unable to state whether it was a common occurrence for other officers to curse at inmates because she had never observed how other officers interact with inmates.

*Captain B*
Captain B met Complainant in 2002. He was Complainant's supervisor until his termination. Captain B indicated that Complainant performed his duties in a satisfactory manner. Captain B never formally disciplined Complainant, but she did give him written and verbal counseling about his interactions with inmates.

Captain B indicated that cursing at inmates is not a common occurrence and is a violation of Respondent's policy. However, she had never disciplined a subordinate for cursing at an inmate because she has not witnessed an officer cursing at an inmate.

Captain B was unaware of Complainant's marital status. She also lacked knowledge of Complainant's wife's lawsuit, Complainant's disability, Complainant's DCFMLA request and the reason for which Complainant was terminated.

## LEGAL ANALYSIS

### PROBABLE CAUSE STANDARD OF REVIEW

OHR's duty at the probable cause stage is to "consider all the evidence and allegations to determine whether [Complainant's] claims [are] 'reasonable' and make out a *prima facie* case under the Human Rights Act." *Smith v. D.C. Office of Human Rights*, 77 A.3d 980, 997-98 (D.C. 2013); *see also Sparrow v. D.C. Office of Human Rights*, 74 A.3d 698, 706 (D.C. 2013) ("[T]he probable cause standard . . . requires consideration of whether [Complainant's] version of events [are] reasonable, not whether he failed to disprove [Respondent's] version of events."); *Grove v. Loomis Sayles & Co.*, 85 A.3d 832, 836 (D.C. 2014)(Complainant's claims must be reasonable and make out a *prima facie* case for a finding of probable cause).

Additionally, where Respondent has asserted a legitimate, non-discriminatory reason (or reasons) for its action, OHR has a duty to evaluate whether Complainant has provided credible, substantive, and probative evidence that the allegedly legitimate, non-discriminatory justification given by Respondent was not the actual reason for the action. *See Grove*, 85 A.3d at 836; *see also Freeman v. D.C. Office of Human Rights*, No. 13-CV-1150, fn. 2 (D.C. decided November 6, 2015) (unpublished). However, Complainant is not required to disprove Respondent's version of events at the probable cause stage. *See Smith*, 77 A.3d at 997.

If OHR finds probable cause, the case proceeds to a full-fledged administrative adjudication where Complainant has the burden of proving the claims by a preponderance of the evidence.[21] *See Smith*, 77 A.3d at 998; *Grove*, 85 A.3d at 836.

---

[21] If there is a probable cause finding, OHR may attempt conciliation prior to a full-fledged hearing. *See* D.C. Code § 2-1403.06 (2016).

**DC FAMILY AND MEDICAL LEAVE ACT**

**Coverage and Types of Claims**

The District of Columbia Family & Medical Leave Act ("DCFMLA"), D.C. Code §§ 32-501, *et seq.*, applies to employers who employ 20 or more employees in the District of Columbia. *See* 4 DCMR § 1601.

Under the DCFMLA, a qualified employee is also entitled to sixteen (16) weeks of medical leave during a twenty-four (24) month period when the employee is unable to perform the functions of his or her position because of a serious health condition. *See id.* at § 32-503 (a).[22] The DCFMLA also provides certain protections to an employee while he or she is out on medical or family leave. For example, an employee is entitled to maintenance of health insurance benefits while out on leave, to be restored to the same or an equivalent position upon returning from leave, and seniority or other benefits accrued prior to commencing leave. *See* D.C. Code §§ 32-505 (a), (b), and (d).

There are two types of claims under the DCFMLA—interference and retaliation. *See* D.C. Code § 32–507(a) (interference); § 32–507(b)(1) (retaliation); *see also Washington Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1075 (D.C. 2008) ("Like its federal counterpart, the DCFMLA recognizes two theories for recovery-'the retaliation or discrimination theory and the entitlement or interference theory'")(internal citation omitted); *Chang v. Inst. for Pub. Private Partnerships, Inc.*, 846 A.2d 318, 329 (D.C. 2004)(seminal case in which the Court of Appeals held that "under the DCFMLA, it is unlawful to terminate an employee because that employee has taken protected family or medical leave.").

**DCFMLA Interference**

It is unlawful under the DCFMLA for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the DCFMLA. *See* D.C. Code § 32-507(a). The elements of a *prima facie* claim of interference are generally as follows: 1) Complainant is eligible for DCFMLA benefits, 2) Respondent interfered with, restricted, or denied Complainant's exercise of a right, or attempt to exercise a right provided by statute, and 3) Complainant was prejudiced thereby. *See Hamilton v. Howard Univ.*, 960 A.2d 308, 317 (D.C. 2008) (Court of appeals reciting the pertinent regulatory eligibility requirements and requisite entitlements); *see also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 164 (D.C. Cir. 2015) (elucidating generally the *prima facie* elements of an interference claim under comparable federal statute).[23]

---

[22] The statute defines a "serious health condition" as "a physical or mental illness, injury, or impairment, that involves: (A) Inpatient care in a hospital, hospice, or residential health care facility; or (B) Continuing treatment or supervision at home by a health care provider or other competent individual." *Id.* at § 32–501(9).

[23] The D.C. Family and Medical Leave Act (DCFMLA) was intended to address many of the same policy concerns as its federal counterpart, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–

First Element - Eligibility

An employee who works for a covered employer is eligible for DCFMLA benefits when: the employee has accrued at least one year of service, worked 1,000 hours or more during the 12-month period immediately preceding the leave request, he or she requires leave for a purpose covered by the statute, and he or she has provided sufficient information to the employer of his or her need for covered leave. *See* 4 DCMR §§ 1601.1-.6 (covered employers); § 1603.1-.2 (required tenure and hours); § 1605.2 (serious health condition); §1606.1 (qualifying reasons to care for a family member or the birth or placement of a child); §1614.1 (employee is required to provide reasonable notice of need to make use of leave); § 1614.7 (employer may be required to permit DCFMLA leave even without a direct request for DCFMLA leave); *see also* D.C. Code § 32-501 (defining an eligible employee).

Second Element - Interference

An employer not only interferes with a right under the DCFMLA by denying the employee a right or benefit he or she is entitled to, but also by taking an action that has a reasonable tendency to interfere with an employee's exercise of DCFMLA rights. *See, e.g., Gordon v. U.S. Capitol Police*, 778 F.3d 158, 164-66 (D.C. Cir. 2015) (finding a valid claim of interference where an employer expressed hostility towards Complainant's use of FMLA leave to discourage the employee from making use of leave.). For example, taking an adverse employment action against an employee who has inquired about, requested, or used DCFMLA protected leave could constitute interference if it affects access to future benefits. *See generally* 4 DCMR § 1621.1 ("An employer shall not use the fact that an employee has requested, inquired about, or taken a period of family or medical leave under this chapter as a negative factor in employment actions, such as hiring, promotions, terminations, or disciplinary actions.").

Third Element - Prejudice

An employee is prejudiced or harmed where the "employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief." *Roseboro v. Billington*, 606 F. Supp. 2d 104, 108 (D.D.C. 2009).

---

2654 (2000). Although the DCFMLA provides for broader coverage than the FMLA, the acts are substantially similar, and the D.C. Court of Appeals has looked to its federal counterpart to assist in interpreting the prohibited acts under the DCFMLA. *See Hamilton v. Howard Univ.*, 960 A.2d 308, 317 (D.C. 2008). Accordingly, while the OHR is not bound by the legal decisions interpreting the federal statute, those decisions may be considered persuasive authority. *See Lenaerts v. District of Columbia Dept. of Employment Svs.*, 545 A.2d 1234, 1238 (D.C. 1988); *see also Chang v. Inst. For Public-Private P-ships, Inc.*, 846 A.2d 318 (D.C. 2004) (finding that the federal FMLA is used to interpret the DCFMLA).

**Failure to Provide Notice of DCFMLA Rights**

Courts have recognized that an employer does not violate the DCFMLA by failing to provide an employee with notice of his or her rights, if the employer treats the employee's leave as if it were protected under the Act. *See, e.g., Dorsey v. Jacobson Holman, PLLC*, 756 F. Supp. 2d 30, 38 (D.D.C. 2010) *aff'd by*, 476 F. App'x 861 (D.C. Cir. 2012) (court granted summary judgment to employer because although the employer did not provide the employee with notice of her rights under DCFMLA, the employee was not prejudiced by the failure because the employee received all of the benefits she would have received under the DCFMLA had her employer properly notified her of her rights).

***OHR finds no probable cause to believe that Respondent interfered with Complainant's rights under DCFMLA by failing to respond to his April 2, 2015 DCFMLA request.***

The first element of the claim is not reasonably supported by the record. Although Complainant met the tenure requirements necessary to be eligible for DCFMLA, there is no evidence in the record indicating that Complainant was unable to perform his job duties at the time of his request due to a serious medical condition on April 2, 2015. Rather, Complainant's doctor's note indicates that Complainant first became incapacitated due to a serious medical condition on June 22, 2015. Further, Complainant failed to complete his DCFMLA request on that date, because he failed to submit medical certification to support the DCFMLA request.[24] Accordingly, even though Complainant submitted a partial request for DCFMLA on April 2, 2015, the record does not indicate that Complainant was entitled to benefits at this time.[25] Accordingly, this claim is not reasonable and a hearing is not warranted with respect to this claim.

***OHR finds no probable cause to believe that Respondent interfered with Complainant's rights under DCFMLA by failing to respond to Complainant's June 22, 2015 DCFMLA request.***

The record does not contain sufficient evidence to support a reasonable *prima facie* claim of DCFMLA interference. The first element of the claim is met. Complainant met the tenure requirements necessary to be eligible for DCFMLA. Further, the record indicates that Complainant became eligible, and was entitled to, DCFMLA leave for the period between June

---

[24] See Complainant's April 2, 2015 Request for Family Medical Leave (OHR File at §II) (stating that the applicant "must file and attach form SF-71, 'Application for Leave,' when requesting [medical leave]."). *See also*, 4 DCMR§ 1615.1 ("An employer may require that a claim for medical leave under the DCFMLA for an eligible employee who has a serious health condition be supported by a medical certification issued by the employee's health care provider."). Although Complainant asserts that his doctor faxed the requested medical certification to Respondent sometime in April or May of 2015, the record does not support this narrative. The record indicates that Complainant's faxed medical documentation to Respondent on July 1, 2015 indicating that his incapacity began on June 22, 2015. Thus, there is no evidence that Complainant was entitled to DCFMLA prior to June 22, 2015.

[25] Moreover, even if Complainant had been eligible for intermittent DCFMLA in April of 2015, Complainant states that he took sick leave when needed following his application, and thus, he was not harmed by any failure on Respondent's part to grant his DCFMLA request between April and June 18, 2015.

22, 2015 and December 22, 2015, when Complainant called Respondent's ADA Coordinator and notified her of his hospitalization on June 18, 2015, and then Complainant's doctor faxed a DCFMLA medical certification from to Respondent's ADA Coordinator on July 1, 2015 indicating that Complainant first became incapacitated to a serious medical condition on June 22, 2015, and would continue to be incapacitated for a period of three to six months.[26] The second element of the claim, however, is not met. The record does not indicate that Respondent failed to respond to Complainant's June 22, 2015 DCFMLA request. Rather, the record indicates that Respondent's ADA Coordinator told Complainant that he was covered by DCFMLA following his June 18, 2015 hospitalization, and stated that she would have formally processed his DCFMLA request on July 1, 2015 when Complainant submitted his medical certification form to her had Complainant not been terminated. Accordingly, this claim is not reasonable and a hearing is not warranted in this matter.

***OHR finds probable cause to believe that Respondent interfered with Complainant's rights under DCFMLA by terminating his employment on June 24, 2015.***

The record contains sufficient evidence to support a reasonable *prima facie* claim of DCFMLA interference. The first element of the claim is met. The record indicates that Complainant became eligible, and was entitled to, DCFMLA leave for the period between June 22, 2015 and December 22, 2015, when Complainant called Respondent's ADA Coordinator and notified her of his hospitalization on June 18, 2015, and then Complainant's doctor faxed a DCFMLA medical certification from to Respondent's ADA Coordinator on July 1, 2015 indicating that Complainant first became incapacitated for a serious medical condition on June 22, 2015, and would continue to be incapacitated for a period of three to six months.[27]

The second and third elements are also met. An employer interferes with an employee's rights under the DCFMLA where the employer terminates an employee while he or she is out on DCFMLA protected leave. *See Washington Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1077 (D.C. 2008). Here, Complainant was terminated on June 24, 2015 even though he was out on DCFMLA protected leave.

[26] An employee is eligible for DCFMLA where the employee requests "family or medical leave from the employer no later than five (5) business days after the absence begins, or as soon as practicable thereafter. Notice may be given by the employee's spokesperson (for example, the employee's spouse, an adult family member, a health care provider, or another responsible party) if the employee is unable to do so personally." 4 DCMR § 1614.3.

[27] An employee is eligible for DCFMLA where the employee requests "family or medical leave from the employer no later than five (5) business days after the absence begins, or as soon as practicable thereafter. Notice may be given by the employee's spokesperson (for example, the employee's spouse, an adult family member, a health care provider, or another responsible party) if the employee is unable to do so personally." 4 DCMR § 1614.3.

OHR notes, however, that "the DCFMLA does not create an absolute right to reinstatement." *Id.* An employer does not violate the DCFMLA where it terminates an employee who would not have been retained had the employee not been on DCFMLA leave. *Id.* However, the reason for the termination may not be unlawful. *Id.* Here, the record indicates that Respondent made the decision to terminate Complainant on June 11, 2015, prior to Complainant's DCFMLA entitlement. Thus, it appears that Complainant would have been terminated even if he had not been out on DCFMLA leave. As discussed below, however, the record contains evidence that Complainant may have been terminated in retaliation for his wife's protected activities. Thus, OHR finds that Complainant's claim of DCFMLA interference is reasonable, and this claim should proceed to a hearing.

**DCFMLA Retaliation**

Retaliation is unlawful under the DCFMLA. *See* D.C. Code § 32–507(b)(1); *Chang v. Instit. for Public-Private Partnerships, Inc.*, 846 A.2d 318, 328-29 (D.C. 2004); *see also Alford v. Providence Hosp.*, 945 F.Supp.2d 98, 108 (D.D.C. 2013). The elements of a *prima facie* case of retaliation under the DCFMLA are: (1) Complainant engaged in a protected activity; (2) the employer took an adverse employment action; and (3) there was a causal connection between the two. *Chang*, 846 at 329-30.

First Element - Protected Activity

An employee engages in protected activity by exercising a right protected by the DCFMLA, including requesting or taking DCFMLA leave, or by opposing a practice made unlawful by the statute. *See Chang*, 846 A.2d at 329 (finding that making use of DCFMLA leave is a protected activity); *Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009).

Second Element - Adverse Action

An adverse employment action is an act that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Joyce v. Office of Architect of Capitol,* 966 F. Supp. 2d 15, 23 (D.D.C. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67–68 (2006)); *see also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015) (opining that an adverse action could also be an action that results in prejudice to the employee).

Third Element - Casual Connection

"An employee can establish a causal connection by showing that the protected activity and the adverse action were not *wholly unrelated.*" *Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009) (internal citations omitted). Close temporal proximity between the protected activity and the adverse action is one way of establishing a causal connection. *See Chang,* 846 A.2d at 329.

***OHR finds no probable cause to believe that Respondent retaliated against Complainant based on his protected activity of requesting DCFMLA leave on April 2, 2015 and June 22, 2015 when Respondent terminated Complainant on June 24, 2015.***

The record does not contain sufficient evidence to support a reasonable *prima facie* claim of DCFMLA retaliation. The record reflects that the first element of the claim is met because Complainant submitted a DCFMLA leave request to Respondent's ADA Coordinator on April 2, 2015 and on June 18, 2015. The second element of a *prima facie* claim is met because Respondent terminated Complainant's employment on June 24, 2015. The third element, however, is not met. Although there is a close temporal proximity between Complainant's June 18, 2015 request and his June 24, 2015 termination, the record indicates that the ADA Coordinator was not involved in the decision to terminate Complainant's employment, nor had Complainant's DCFMLA April 2, 2015 or June 22, 2015 requests for DCFMLA leave been properly formalized at the time of his termination. Moreover, Complainant's superiors were not aware of his DCFMLA request, nor were any of the individuals involved in Complainant's termination. Accordingly, Complainant's claim is not reasonable.

## DISABILITY DISCRIMINATION

Under the D.C. Human Rights Act (DCHRA), it is unlawful for an employer to fail or refuse to hire, discharge, or otherwise discriminate against an employee with respect to his or her compensation, terms, conditions, privileges, or promotions, or otherwise adversely to affect his or her status as an employee, "wholly or partially for a discriminatory reason based upon the actual or perceived . . . disability . . . of any individual." D.C. Code § 2-1401.11(a). The DCHRA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment." *Id.* at § 2-1401.02 (5A).

This jurisdiction looks to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and case law interpreting that statute for guidance on analyzing disability claims under the DCHRA. *See Sparrow*, 74 A.3d at 704; *Hunt v. D.C.*, 66 A.3d 987, 990 (D.C. 2013); *Grant v. May Dept. Stores Co.*, 786 A.2d 580, 583 (D.C. 2001). Congress has amended the ADA to broaden the narrow scope of protections formerly interpreted through the enactment of the ADA Amendments Act of 2008 (ADAA). *See* 29 C.F.R. § 1630.1(c)(4). Contrary to previous ADA analysis, the ADAAA emphasizes that "the definition of disability . . . shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. . . The question of whether an individual meets the definition of disability under this part should not demand extensive analysis." *Id.*

In cases of disparate treatment, the D.C. Court of Appeals looks to the analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) to determine whether discrimination has occurred under the DCHRA. *See Atlantic Richfield Co. v. District of Columbia Com'n on Human Rights,* 515 A.2d 1095 (D.C. 1986); *Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012). Under the *McDonnell Douglas* framework, "the precise requirements of a *prima facie* case can vary depending on the context." *Swierkiewicz v. Sorema N. A.*, 534 U.S.

506, 512 (2002). A claim of discrimination under the disparate treatment theory arises where an employer treats an employee less favorably than others because of his or her status in a protected class. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).

Generally, the *prima facie* elements in a discriminatory discharge case under the disparate treatment theory are as follows: (1) Complainant filed based his or her status in a protected class under the Act; (2) he was qualified for the job from which he was terminated; (3) the termination occurred despite his employment qualifications; and (4) the circumstances of the termination give rise to an inference of discrimination. *See Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012); *Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020, 1027-28 (D.C. 2014); *Kumar v. District of Columbia Water & Sewer Auth.*, 25 A.3d 9, 17 (D.C. 2011); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Hamilton v. Howard Univ.*, 960 A.2d 308, 314 (D.C. 2008).

***OHR finds no probable cause to believe that Respondent discriminated against Complainant on the basis of his disabilities by failing to respond to his DCFMLA leave requests and terminating his employment on June 24, 2015.***

The record does not contain sufficient evidence to support a reasonable prima facie claim of disability discrimination. The first element is met. Complainant suffered from stage 4 kidney disease, diabetes, and hypertension. Based on the record evidence, Complainant's condition did not substantially impair any major life activity until June 22, 2015, when his doctor indicated that his condition became serious, and Complainant was unable to work for a period of three to six months. Thus, Complainant filed based on his status as a disabled individual.

The second element of the claim is also met because Complainant suffered an adverse employment action when Respondent terminated his employment on June 24, 2015. OHR does not find, however, that Complainant suffered any adverse employment based on his allegations that Respondent failed to respond to his DCFMLA requests. As discussed above, the record does not indicate that Complainant was entitled to DCFMLA benefits on April 2, 2015 because Complainant failed to submit medical certification demonstrating his medical need for the benefits. Similarly, as discussed above, the record indicates that Respondent did not fail to respond to Complainant's June 22, 2015 request for DCFMLA leave. Rather, Respondent informed Complainant that he was eligible for DCFMLA, and planned to process his formal application once his medical documentation was received.

The third element, however, is not met because the record does not indicate that Complainant was terminated under circumstances giving rise to an inference of disability discrimination. The record indicates that Complainant's supervisor and co-workers may have been aware of Complainant's kidney condition and that he had been hospitalized. However, the decision to terminate Complainant was made on June 11, 2015, prior to his hospitalization and close in time to a report filed against Complainant by a female subordinate who lodged a sexual harassment complaint against Complainant because he asked her whether she was a "fem" or a "dom." The record also indicates that the employee who recommended Complainant's termination may have been motivated to recommend Complainant's termination due to Complainant's wife's protected

activity. Accordingly, the record indicates that Complainant was terminated due to the sexual harassment complaint filed by a subordinate employee and in retaliation for his wife's protected activities, and not Complainant's disabilities. Thus, Complainant's claim is not reasonable and a hearing is not warranted in this matter.

**RETALIATION**

The District of Columbia Human Rights Act ("DCHRA") provides that "it shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having [either] exercised or enjoyed or . . . aided or encouraged any other person in the exercise or enjoyment of any right granted or protected" under this Act. D.C. Code § 2-1402.61(a). Significantly, an employer violates the anti-retaliation provisions if it takes an adverse action that is "motivated in substantial part by retaliatory reasons, even if [the employer] was motivated also by legitimate business reasons." *Propp v. Counterpart Int'l*, 39 A.3d 856, 870 (D.C. 2012).

The *prima facie* elements of retaliation claim under the DCHRA are as follows: 1) Complainant or his spouse, engaged in a protected activity; 2) the employer took an adverse action against him or her; and (3) a causal relationship exists between the protected activity and the adverse action. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176-78 (2011) (an employee has standing to file a retaliation claim where his spouse, or a close family member has engaged in a protected activity). *See also, Bryant v. D.C.*, 102 A.3d 264, 268 (D.C. 2014); *Propp*, 39 A.3d at 863.

A protected activity for purposes of the DCHRA need not take the form of a lawsuit or of a formal complaint to an enforcement agency. *See Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 790 (D.C. 2001). Aiding or encouraging any other person in the exercise or enjoyment of any right under the DCHRA is also a protected activity. *See* D.C. Code § 2-1402.61.

Under the DCHRA, Title VII, and related case law, the prohibited materially adverse employment action in retaliation cases not only includes tangible action affecting the terms and conditions of employment (*i.e.*, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits, *etc.*), but also extends to any employment action that may dissuade a reasonable worker from making or supporting a charge of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), *Smith v. D.C. Office of Human Rights*, 77 A.3d 980, 993 (D.C. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 368 n.31 (D.C. 1993) (holding that the prohibitions of the DCHRA "are not limited to retaliatory actions affecting an employee's job status"); *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006). The Supreme Court, in interpreting this standard has stated that it is "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired." *Thompson v. N. Am. Stainless, LP*, 562 U.S. at 174.

An employee may establish a causal link between his protected activity and the adverse action by showing that his or her employer was aware of his protected activity and that the adverse action occurred shortly thereafter. *See Propp v. Counterpart Int'l*, 39 A.3d 856, 868 (D.C. 2012); *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985). However, temporal proximity is not required for a *prima facie* showing. *Buggs v. Powell*, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) (timing is "but one method of proving retaliation"). Additionally, courts have recognized that in particular contexts, Respondents might retaliate at their "first opportunity" and in those contexts a longer time period between the protected activity and the alleged adverse action would not necessarily defeat a claim of retaliation. *See, e.g., Barnabas v. Bd. of Trustees of Univ. of D.C.*, 686 F. Supp. 2d 95, 105-06 (D.D.C. 2010) (the jury could infer that the University's reduction of the plaintiff's teaching load was the first opportunity it had to retaliate seven months later).

***OHR finds probable cause to believe that Respondent retaliated against Complainant* for his spouse's participation in a protected activity *by terminating him on June 24, 2015.***

The record contains sufficient evidence to establish a *prima facie* claim of retaliation.

The first element of the claim is met because Complainant's wife participated in a protected activity when she was listed as a witness, and deposed in a sexual harassment lawsuit against Respondent and the Major in June or July of 2014. The record indicates that the Wife explained during her depositions how she was sexually assaulted by the Major at work while both were employed with Respondent. The record indicates that Complainant's wife was set to provide further testimony in the case on June 23, 2015.

The second element of the claim is met because Complainant suffered an adverse action when he was terminated on June 24, 2015.

Finally, the third element of the claim is met. The record indicates that the Major was personally named in the sexual harassment law suit against Respondent. Not only is there a close temporal proximity between Complainant's Wife's protected activity (on June 23, 2015) and Complainant's termination (on June 24, 2015), the record indicates that the Major, whose behavior Complainant's Wife was testifying about, was the person who recommended Complainant's termination, even though the Major did not usually supervise Complainant. Complainant's normal supervisors generally believed Complainant was a good performer, and did not have issues with his performance. However, the record indicates that on two occasions during the time Complainant worked under the Major's supervision, and in the two months preceding Complainant's termination and Complainant's Wife's deposition, the Major subjected Complainant to disciplinary action. The first was on May 12, 2015 when the Major wrote Complainant up for swearing at an inmate; and the second was when the Major recommended his termination after a subordinate reported to him that Complainant had asked her whether she was a "fem" or "dom." The record indicates that Officers, like Complainant, were generally not written up for swearing at inmates although this practice was prohibited by Respondent's policy.

Although Respondent indicates that Complainant was terminated for a legitimate, non-discriminatory reason, his failure to follow the proper workplace etiquette standards,

Complainant's termination letter indicates that Complainant was terminated for "non-disciplinary" reasons. Thus, the record includes evidence that the proffered reason for Complainant's termination may not have been the actual reason for his termination.

Accordingly, OHR finds Complainant's claim to be reasonable, and a hearing is warranted with respect to this claim.

## DETERMINATION

For the foregoing reasons, OHR finds:

**NO PROBABLE CAUSE** to believe that Respondent interfered with Complainant's rights under DCFMLA by failing to respond to his April 2, 2015 DCFMLA request.

**NO PROBABLE CAUSE** to believe that Respondent interfered with Complainant's rights under DCFMLA by failing to respond to his June 22, 2015 DCFMLA request.

**PROBABLE CAUSE** to believe that Respondent interfered with Complainant's rights under DCFMLA by terminating Complainant's employment on June 24, 2015.

**NO PROBABLE CAUSE** to believe that Respondent retaliated against Complainant based on his protected activity of requesting DCFMLA leave on April 2, 2015 and June 22, 2015 when Respondent terminated Complainant on June 24, 2015.

**NO PROBABLE CAUSE** to believe that Respondent discriminated against Complainant on the basis of his disabilities by failing to respond to his DCFMLA leave requests and terminating his employment on June 24, 2015.

**PROBABLE CAUSE** to believe that Respondent retaliated against Complainant for his spouse's participation in a protected activity by terminating him on June 24, 2015.

***IT IS SO ORDERED.***

## CONCILIATION

The Respondent is requested to notify this Office by contacting Georgia Stewart via e-mail at georgia.stewart@dc.gov or by U.S. post to 441 4th St., NW, Suite 570N, Washington, DC 20001, or by calling 202.727.4559, within fifteen (15) calendar days after receipt of this Determination as to whether said Respondent is prepared to pursue conciliation of this matter. Otherwise, failure to respond or to respond in the affirmative will result in this Office processing this case for summary determination or a hearing before an independent hearing examiner pursuant to 4 DCMR §§ 109-110. A filing with OHR represents an election of remedies after the Director issue a probable cause determination, and a cause finding may not be removed or appealed to Superior Court. *See Brown v. Capitol Hill Club*, 425 A.2d 1309, 1311 (D.C. 1981). However, a

final Order of the Director, after a summary determination or hearing on the merits, may be appealed. 4 DCMR § 121.3.

**DCFMLA REQUEST FOR RECONSIDERATION AND PETITION FOR REVIEW**

Complainant may request reconsideration of a no cause finding **within 15 calendar days from the following date:** 9/13/16, by submitting a written request to the Director at ohr.ogc@dc.gov. The request is not to exceed ten pages. The request must be based on misapplication of law, misstatement of material fact, or newly discovered evidence. 4 DCMR § 1625.4. A party may appeal a final decision under the DCFMLA by filing a petition for review with the Superior Court within 30 days of service of notice of the final decision. 4 DCMR § 1625.15.

**RIGHT TO APPLY FOR RECONSIDERATION UNDER THE HUMAN RIGHTS ACT**

Complainant may submit a Request for Reconsideration of the No Probable Cause findings in Letter of Determination. 4 DCMR §§111.3 and 113.1. Similarly, Respondent may submit a Request for Reconsideration of a Probable Cause Finding in the Letter of Determination. *Id.* The request should not exceed ten pages and should be submitted to ohr.ogc@dc.gov. The request, along with all supporting documentation, must be submitted in writing to the Director of the Office of Human Rights **within 15 calendar days from the following date:** 9/13/16. The parties may submit a Request for Reconsideration on the grounds of newly discovered evidence, misapplication of laws, or misstatement of material facts. The request must be based on one or more of these grounds. Newly discovered evidence is evidence that: (a) is competent, relevant, and material; (b) was not reasonably discoverable before the issuance of this Letter of Determination; and (c) would alter the ultimate outcome in this case. The Request for Reconsideration may be dismissed if the application is: (a) not based on one of the above grounds; or (b) not timely filed. **THE PARTIES MUST INCLUDE ALL SUPPORTING DOCUMENTATION AND REASONS IN THE ORIGINAL REQUEST FOR RECONSIDERATION.** OHR may forward a copy of any Request for Reconsideration, along with all supporting documentation, to the other party for a Response.

**COMPLAINANT'S RIGHT TO PETITION FOR REVIEW UNDER THE HUMAN RIGHTS ACT**

If the Complainant does not file a Request for Reconsideration with OHR, this letter constitutes a final decision of OHR. Complainant has **30 calendar days** from the date of service of this decision to file a Petition for Review with the D.C. Superior Court. 4 DCMR § 121.3 (30 days for D.C. government employees or applicants).

**RIGHT TO SUBSTANTIAL WEIGHT REVIEW UNDER CROSSFILED FEDERAL STATUTES**

The parties have a right to a "Substantial Weight Review" from the U.S. Equal Employment Opportunity Commission (EEOC). If the parties wish to obtain such a review, please submit the

*Robert Murphy v. District of Columbia Government - DOC*
Docket No. 15-889-DC(CN)
EEOC No. 10C-2015-00807
Page 27 of 27

request **within 15 calendar days** of the date of this Letter of Determination provided above to the State and Local Coordinator, Equal Employment Opportunity Commission, Washington Field Office, 131 M Street, NE, Fourth Floor, Suite 4NWO2F, Washington, DC 20507-0100.

Sincerely,

Mónica Palacio, Director
District of Columbia, Office of Human Rights

Date: 9-12-16

Cc:
Lakisha Dickens, OHR Program Analyst
Lakisha.dickens@dc.gov

27