UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT MURPHY, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>    Defendant. )<br>)<br>_____) | Civil Action No. 18-CV-1478 (JDB) |

**PLAINTIFF'S RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Robert Murphy, pursuant to Fed. R. Civ. P. 56 and Local Rule 7(h), hereby files this Response in Opposition to Defendant's Motion for Summary Judgment ("Response"). In support of this Response, Plaintiff has attached herewith the Memorandum of Points and Authorities, Plaintiff's Response to Defendant's Statement of Undisputed Material Fact, Plaintiff's Statement of Disputed Material Facts, and the proposed order.

Date: November 5, 2021

                                                      Respectfully submitted,

                                                      /s/*Donald M. Temple*
                                                    Donald M. Temple
                                                    (Bar #408749)
                                                    Temple Law Offices
                                                    1310 L Street, N.W., Suite 750
                                                    Washington, DC  20005
                                                    202-628-1101
                                                    Dtemplelaw@gmail.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-CV-1478 (JDB) |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OFPLAINITFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

The instant case was filed on June 22, 2018. All claims emanate from Defendant's termination of Plaintiff's employment on June 24, 2015. On October 31, 2018, Plaintiff filed the operative Amended Complaint. [ECF No. 10]. On July 15, 2019, this Court granted in part and denied in part Defendant's motion to dismiss as follows:

Count I alleges violation of the ADA by (1) failing to respond to Plaintiff's FMLA requests on April 2 and June 22 of 2015; and (2) terminating Plaintiff in retaliation to his invoking the right to medical leave. Count I proceeded as to the April 2 failure-to-accommodate claim.

Counts II and III allege violation of FMLA and DCFMLA for the same conduct stated above. Count II proceeded as to the April 2 interference and retaliation claims as willful violation of the FMLA. Count III proceeded as to the April 2 interference claim.

Count IV alleges violation of Title VII by terminating Plaintiff in retaliation to his wife's participation in a separate lawsuit against Plaintiff's supervisor, Pettiford. Count IV also moved forth under a perception theory of Title VII retaliation.

Count V alleges violation of DCHRA for the same conduct supporting Count IV. Because a DCHRA retaliation claim is analyzed under the same framework as Title VII, Count V continued under a perception theory as well.

## Motion for Summary Judgment

On September 24, 2021, Defendant filed its Motion for Summary Judgment ("Motion"). In support, Defendant stated the following grounds: (1) the District terminated Plaintiff's employment for a legitimate, nondiscriminatory reason; (2) Plaintiff retaliation claims under Title VII and the DCHRA fail because his wife testified in the lawsuit against Pettiford after termination had been recommended; (3) the DCHRA claim is barred by Plaintiff's election of remedies; and (4) Plaintiff did not provide the required medical documentation in support of his April 2, 2015 FMLA request until after his termination, defeating the failure to accommodate claim under the ADA, interference claims under the FMLA and DCFMLA.

In addition to the disputed material facts delineated in Plaintiff's statement attached herewith, Defendant argument cannot support summary judgment as a matter of law because (1) Defendant's reliance on the Walker report and the time of Sheen's deposition is immaterial because Plaintiff is proceeding under a perception theory; (2) the medical certification relied on by Defendant concerns the June 22, 2015 request, not the April 2 FMLA request; and (3) election of remedies does not apply to bar Plaintiff's DCHRA claim.

## II. Legal Standard

Summary judgment is only proper when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Materiality exists when the facts "might affect the outcome of the suit under the governing law." In evaluating whether a genuine issue of material fact exists, all facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted). To survive summary judgment, the nonmovant must provide evidence that would permit a reasonable jury to find in the nonmovant's favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). At this stage, the Court's function is not weighing evidence and adjudicating the truth of the matter but determining whether there is a genuine issue for trial. *See* Anderson, 477 U.S. at 249.

## III. ADA Failure to Accommodate, FMLA and DCFMLA Interference and Retaliation Claims Arising from April 2, 2015 Request

### A. ADA Failure to Accommodate

This Court has already discussed the necessary requirement for Plaintiff to establish an ADA failure to accommodate claim: (1) he had a disability within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of this position with reasonable accommodation; and (4) his employer refused to make such

4

accommodation." *Floyd v. Lee*, 968 F. Supp. 2d 308, 326 (D.D.C. 2013) (quoting *Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 153–54 (D.D.C. 2013)). "[A]n employer's unreasonable delay in responding may constitute the denial of an accommodation." *Marks v. Wash. Wholesale Liquor Co. LLC*, 253 F. Supp. 3d 312, 324 (D.D.C. 2017). To survive summary judgment, Plaintiff must adduce sufficient evidence to allow a reasonable person to conclude in his favor as to all four requirements. *Hargrove v. Aarp*, 205 F. Supp. 3d 96, 110 (D.D.C. 2016) (citing *Solomon v. Vilsack* , 763 F.3d 1, 9 (D.C.Cir.2014).

In its Motion, Defendant did not dispute any requisite element of Plaintiff's claim. It merely stated that the claim failed because Plaintiff did not provide the required medical certification until July 1, 2015. [ECF No. 44 at 14]. In supporting this argument, Defendant provide a fax dated July 1, 2015 from Plaintiff's doctor. [ECF No. 44-4]. On the face of this medical certification, however, the commencement date of the condition is reflected as June 22, 2015. *Id.* at 2. Plaintiff's claim concerns his April 2, 2015 Request, not the June 22, 2015 Request. There is no further evidence to support Defendant's position that it should be entitled to summary judgment as a matter of law.

It is undisputed that Plaintiff's wife, Ja'net Sheen submitted a FMLA request to Defendant. [ECF No. 44-12 at 3-6]. Plaintiff testified that his doctor filled out the required paperwork, then Sheen took the FMLA packet to Captain Vineyard, who then took it to Taylor Jones. *Id.* at 6. Absent from Defendant's Motion and exhibits is any evidence supporting that Defendant responded to Plaintiff's request. Unreasonable delay in responding can be construed as a denial of accommodation. As such, whether Defendant responded to Plaintiff's April 2, 2015 Request, and whether there was a denial of Plaintiff's FMLA request are two material facts that remain in dispute. Denial of summary judgment is warranted on Plaintiff's ADA failure to accommodate claim.

### B. FMLA Interference and Retaliation Claims

"Under the FMLA, a plaintiff may state: (1) an interference claim ... alleging that [his] employer has restrained, denied, or interfered with [his] substantive rights under the Act and/or (2) a retaliation claim ... alleging that [his] employer has taken adverse action against [him] because [he] took leave or engaged in activity protected by the Act, such as by filing a complaint." *Alford v. Providence Hosp.*, 945 F. Supp. 2d 98, 104 (D.D.C. 2013), aff'd, 561 F. App'x 13 (D.C. Cir. 2014).

Defendant rested its entire argument against Plaintiff's willful FMLA interference and retaliation claims on the same medical certification fax dated July 1, 2015. This single document does not pass muster for the reasons discussed in the ADA failure to accommodate claim. The fax does not concern the April 2 Request. This Court previously held that Plaintiff sufficiently pleaded willfulness as to the April 2 interference and retaliation claims under FMLA. *Murphy v. Dist. of Columbia*, 390 F. Supp. 3d 59, 67 (D.D.C. 2019). The facts supporting these claims remain disputed and were not addressed by Defendant in its Motion: (1) Defendant was aware of its obligation under the FMLA yet willfully and intentionally refused to respond to Plaintiff's April 2 Request; (2) Plaintiff and his doctor filed the April 2 request with the appropriate documentation; (3) Plaintiff and his wife, Sheen, inquired as to the status of the request on several occasions without any response from Defendant; and (4) Defendant continued to ignore the April 2 Request until Defendant fired Plaintiff in retaliation. *Id.*

### C. DCFMLA Interference Claim

The DCFMLA is analogous to FMLA. It prohibits interference with an employee's medical leave rights, D.C. Code § 32-507(a), retaliation against an employee for opposing a practice made unlawful by the DCFMLA, D.C. Code § 32-507(b)(1), and retaliation for participating in a

6

proceeding or charge against the employer under the statute, D.C. Code § 32-507(b)(2)– (3). *Id.* Similar to the ADA and FMLA claims above, Defendant neglected to discuss any substantive elements but focused on the medical certification. To-reiterate, this piece of evidence does not discharge Defendant's liability as to its willful interference and retaliatory action against Plaintiff for seeking leave on April 2, 2015. Defendant pointed to no evidence that it responded or remotely took any action as to the April 2 Request. As such, summary judgment is inappropriate as to Plaintiff's DCFMLA interference claim.

IV. **Retaliation Claims under Title VII and DCHRA arising out of Sheen's Participation in the Lawsuit against Pettiford**

Defendant asserted that summary judgment would be proper in its favor because (1) it terminated Plaintiff's employment due to his conduct toward Angela Walker, a legitimate nondiscriminatory reason; (2) Sheen, Plaintiff's wife, testified in the Pettiford lawsuit after Plaintiff had been terminated; and (3) Plaintiff's DCHRA claim is barred by election of remedies.

At the outset, it is critical to note that at all times referenced herein, Ms. Sheen was well known to be a critical and primary fact witness against the District of Columbia in Lisa Brokenborough versus the District of Columbia, Thomas M. Faust, and Joseph Pettiford. See Case 1:13-cv-01757, filed on November 7, 2013. In that complaint, at page 29, Section C. Pervasiveness of Sexual Harassment and Retaliation of the DOC. Ms. Sheen was identified as "Witness #1" against Defendant Pettiford. See Ex. 1, pps. 29-30.

On June 11, 2015 Mr. Pettiford – without benefit of an objective and comprehensive investigation – on the exact same day of the incident involving Plaintiff, requested his termination. See Ex. 3. Such complaints, however, are governed by the Department's Policies and Procedures pursuant to which appropriate investigations are required. See Exhibit 2 at page 9-10. Against this backdrop, inferences should be made that the Department and Defendant Pettiford were well aware

7

that Ms. Sheen remained a priority witness against Detective Pettiford – and that despite proximity – he resented Ms. Sheen – and further Plaintiffs.

A prima facie case of retaliation under Title VII requires "(1) that an employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013). The same analysis applies to a retaliation claim under DCHRA.

There are two types of expressly protected activity under Title VII: "(1) participation in EEO proceedings, such as making a charge, testifying, assisting, or otherwise participating in an EEO investigation, proceeding, or hearing, and (2) opposition to any practice made an unlawful employment practice by Title VII, 42 U.S.C. § 2000e-3(a), which includes discrimination based on "race, color, religion, sex, or national origin." *Manus v. Hayden*, No. 18-cv-1146 (KBJ), at *25 (D.D.C. May 23, 2020); *see also, Grosdidier v. Broad. Bd. of Governors*, 774 F. Supp. 2d 76, 107 (D.D.C. 2011); *Dunbar v. Foxx*, 246 F. Supp. 3d 401, 414 (D.D.C. 2017). The traditional burden shifting framework is relevant when Title VII claims concern the first two categories of protected activity.[1] D.C. courts have also recognized a third theory of retaliation under Title VII, often referred to as perception theory. *See Murphy*, 390 F. Supp. 3d at 71. As per Plaintiff's traditional retaliation claim, Plaintiff incorporates by reference the finding of the D.C. Human Rights Commission regarding its finding of retaliation. Several points should be summarized.

---

[1] *See McLaughlin v. Holder*, 828 F. Supp. 2d 230, 238-39 (D.D.C. 2011) (discussing the relevance of the burden-shifting framework, stating that "whether a plaintiff has made out a prima facie case is 'almost always irrelevant' and 'is a largely unnecessary sideshow.'"). When an employer has proffered a legitimate, nondiscriminatory reason for an adverse action, the ultimate issue to be decided is: "has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* In answering this ultimate question, the prima facie case remains relevant, but only as part of the evidence the court considers. *See Jones v. Bernanke,* 557 F.3d 670, 679 (D.C.Cir.2009). The same analysis applies to retaliation claims.

> The first element of the claim is met because Complainant's wife participated in a protected activity when she was listed as a witness, and deposed in a sexual harassment lawsuit against Respondent and the Major in June or July of 2014. The record indicates that the Wife explained during her depositions how she was sexually assaulted by the Major at work while both were employed with Respondent. The record indicates that the Complaint's wife was set to provide further testimony in the case on June 23, 2015.
>
> The second element is met because complainant suffered an adverse action when he was terminated on June 24, 2015.
>
> Finally, the third element of the claim is met. The record indicates that the Major was personally named in the sexual harassment lawsuit against respondent. Not only is there a close temporal proximity between Complainant's Wife's protected activity (on June 23, 2015) and complainant's termination (on June 24, 2015), the record indicates that the Major, whose Complainant's termination, even though the Major did not usually supervise Complainant, Complainant's normal supervisors generally believed Complainant was a good performer, and did not have with his performance. However, the record indicates that on two occasions during the Complainant worked under the Major's supervision, and in the two months preceding Complainant's termination and Complainant's Wife's deposition, the Major subjected Complainant to disciplinary action. The first was on May 12, 2015 when the Major wrote Complainant up for swearing at an inmate; and the second was when the Major recommended his termination after a subordinate reported to him that Complainant had asked whether she was a "fem" or "dom". The record indicates that Officers, like Complainant were generally not written up for swearing at inmates although this practice was prohibited by Respondent's policy.

The essential point here is that the issue of pretext remains. Plaintiff is also proceeding under the traditional and the perception theory. "A perception theory of retaliation does not rest on whether the employee actually asserts participation in a protected activity; rather, the theory applies so long as the employer believed that the employee was engaged in protected activity." *Johnson v. Napolitano*, 686 F. Supp. 2d 32, 36 (D.D.C. 2010). The *Johnson* court further explained that the perception theory "focuses on the employer's subjective reasons for taking adverse action against an employee." *Id*. at 35 (quoting *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 571 (3d Cir. 2002)).

In *Fogleman*, the Third Circuit emphasized that if the plaintiff could demonstrate that the employer's subjective belief that he was assisting in a lawsuit caused the adverse action against

9

him, it did not matter whether that subjective belief was correct. *See also*, *Murphy*, 390 F. Supp. 3d at 70-71. As applicable here, if Plaintiff could show that Defendant terminated him under the perception that his wife was going to testify against his supervisor in a lawsuit, whether or not Sheen testified would be an immaterial inquiry. In other words, Defendant's argument that Sheen testified after termination is irrelevant. Defendant's argument as to the report filed by Angela Walker is also futile. What matters is Pettiford's <u>subjective reasons</u> for terminating Plaintiff. Defendant's entire analysis based on the burden-shifting framework is misguided—it completely neglected to dispel one essential material fact, Pettiford's subjective reasons. Sheen also testified that she was first approached by the Washington Lawyers Committee in 2013, when the Pettiford lawsuit was initiated. ECF No. 44-13 at 2. In 2008, she filed a complaint against Pettiford for harassment that did produce any result. ECF No. 44-13 at 5.

These facts alone bring into dispute Pettiford's subjective motivation in terminating Plaintiff on June 22, 2015. Plaintiff is proceeding under the traditional and perception theory for his Title VII retaliation claims, Defendant's complete failure to address the subject reasons behind Pettiford's decision to terminate Plaintiff warrants denial of summary judgment on both counts.

## CONCLUSION

Genuine issues of material facts exist here. Plaintiff respectfully urges that this Court to deny summary judgment on the counts addressed herein.

Respectfully submitted,

/s/*Donald M. Temple*
Donald M. Temple
(Bar #408749)
Temple Law Offices
1310 L Street, N.W., Suite 750
Washington, DC  20005
202-628-1101
Dtemplelaw@gmail.com

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT MURPHY, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>    Defendant. )<br>)<br>_____ ) | Civil Action No. 18-CV-1478 (JDB) |

**RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 7(h) of the Civil Rules of the U.S. District Court for the District of Columbia, Plaintiff, by and through undersigned counsel, responds to Defendant's Statement of Undisputed Material Facts.

1. Plaintiff Robert Murphy was employed as a Lieutenant in the D.C. Department of Corrections. Ex. 1, June 11, 2015 Request for Termination.

   **Response:** Undisputed. ECF No. 44-2.

**Plaintiffs April 2015 Request for FMLA Leave**

2. In April 2015, Plaintiff went to his doctor after having a heart attack. Ex. 11, Deposition of Plaintiff Robert Murphy, Feb. 3, 2021 (Pl.'s Dep.) 20:9-21:1.

   **Response:** Undisputed. ECF No. 44-12 at 3.

3. On April 2, 2015, Plaintiff's fiancée, Ja'net Sheen, submitted a request for extended leave under the FMLA to the Department of Corrections (DOC) on his behalf. Ex. 2, Apr. 2, 2015 FMLA Request; Ex. 11, Pl.'s Dep. 22:22-23:19.

   **Response:** Undisputed. ECF No. 44-12 at 5-6.

11

4. Plaintiff's doctor did not submit the necessary medical certification supporting Plaintiff's FMLA request until July 1, 2015, when he faxed it to DOC. Ex. 3, July 1, 2015 Fax.

   **Response:** Disputed. The medical certification attached concerns Plaintiff's FMLA Request dated June 22, 2015, not April 2, 2015. ECF No. 44-4 at 2. The June 22, 2015 Request is no longer at issue. *See* Mem. Op. dated July 15, 2019. [ECF No. 18].

5. Plaintiff was aware that he needed to submit the physician's portion of the FMLA leave request for the request to be processed. Ex. 11, Pl.'s Dep. at 41:7-16; 51:16-52:9.

   **Response:** Undisputed. ECF No. 44-12 at 11, 13-14.

6. Plaintiff returned to work after the April 2015 consultation. Ex. 11, Pl.'s Dep. 27:6-12.

   **Response:** Undisputed. ECF No. 44-12 at 7.

**Events Preceding Plaintiff's Termination**

7. On May 12, 2015, Plaintiff received a letter of counseling from his supervisor, Major Joseph Pettiford, because he used the terms "bitches and motherfuckers" when speaking with inmates. Ex. 8, May 12, 2015 Written Reprimand.

   **Response:** Disputed. In the Letter of Counseling, Major Pettiford confirmed that the Classification and Parole Office, Eric Tagne, was not present when the alleged profanity occurred. Major Pettiford further acknowledged that while Plaintiff admitted to using the stated terms, the terms were no directed at any individual. ECF No. 44-9 at 2.

8. Although Plaintiff claims he did not direct the terms at any particular individual, he nonetheless admits to using the language. Ex 11, Pl.'s Dep. 35:5-21; Ex. 8 at 1.

   **Response:** Undisputed. ECF No. 44-12 at 8.

9. On June 11, 2015, corrections officer Angela Walker submitted an internal complaint about Plaintiff's conduct toward her. Ex. 9, Walker Statement.

**Response:** Undisputed. ECF No. 44-10.

10. Walker reported that during her shift on June 11, 2015, her supervisor, Sergeant Bernard Bryan, ordered her to perform two tasks in a manner contrary to her post orders and training. Ex. 9, Walker's Statement, at 1-2; Ex. 4, Log Book Entry at 1.

    **Response:** Undisputed. ECF No. 44-10 at 1-2; ECF No. 44-5 at 1.

11. Walker reported the violations to Plaintiff, the zone lieutenant, and Sergeant Bryan's supervisor. Ex. 9 at 2.

    **Response:** Undisputed. ECF No. 44-10 at 2.

12. Plaintiff then met with Walker to discuss her concerns. *Id.*

    **Response:** Undisputed.

13. Walker reported that during their conversation, Plaintiff told her "Fuck the Deputy Warden" and made other disparaging remarks about the Deputy Warden. Ex. 9 at 3.

    **Response:** Undisputed as to the content of Walker's report only. ECF No. 44-10 at 3.

14. Walker also reported that Plaintiff told her that "cussing and disrespect was the norm" among officers at the D.C. Jail. Ex. 9 at 3.

    **Response:** Undisputed as to the content of Walker's report only. ECF No. 44-10 at 3.

15. According to Walker, Plaintiff then began to ask her personal questions. Ex. 9 at 4-5.

    **Response:** Undisputed as to the content of Walker's report only. ECF No. 44-10 at 4-5.

16. Walker reported that Plaintiff asked her, "[A]re you a dom or a femme?" *Id.* at 4.

    **Response:** Undisputed as to the content of Walker's report only. ECF No. 44-10 at 4.

17. Plaintiff admits that he asked Walker whether she was "a dom or a femme." Ex. 11, Pl.'s Dep. 77:15-17.

    **Response:** Undisputed. ECF No. 44-12 at 17.

18. After the conversation, Walker reported Plaintiff's inappropriate conduct up the chain of command and completed a written report. Ex. 9 at 5.

    **Response:** Undisputed as to the content of Walker's report only. ECF No. 44-10 at 5.

**Plaintiff's Termination**

19. On June 11, 2015, Pettiford, Plaintiff's supervisor, submitted a written request for Plaintiff's termination. Ex. 1, Request for Termination.

    **Response:** Undisputed. ECF No. 44-2.

20. His request to terminate Plaintiff was based on Walker's report of Plaintiff's inappropriate conduct toward her, which he noted violated DOC's "'zero tolerance policy' toward sexual harassment." *Id.* at 2.

    **Response:** Disputed that Walker's report was the cause of Plaintiff's termination.

21. Pettiford also noted that Plaintiff's instruction to Walker to accept disrespectful behavior by corrections officers "demonstrated that he will not serve as a 'change agent.'" *Id.*

    **Response:** Undisputed as to the content of the Request for Termination only. Doc. 44-2 at 2.

22. Pettiford also noted Plaintiff's May 12, 2015 letter of counseling, which Pettiford believed "illustrates [Plaintiff's] unwillingness to change this behavior and support the team's efforts in becoming a benchmark corrections agency." *Id.*

    **Response:** Undisputed as to the content of the Request for Termination only. ECF No. 44-2 at 2.

23. On June 18, 2015, the D.C. Department of Human Resources approved the request to terminate Plaintiff's employment. Ex. 6, June 18, 2015 DCHR Approval.

    **Response:** Undisputed. ECF No. 44-7.

24. On June 19, 2015, DOC issued Plaintiff's letter of termination signed by DOC Director Thomas Faust. Ex. 7, June 19, 2015 letter of termination.

    **Response:** Undisputed. ECF No. 44-8.

25. Because Plaintiff was out on sick leave, DOC employees served him with the termination letter at his home, on June 24, 2015. Ex. 7 at 3; Ex. 11, Pl.'s Dep. 84:9-21.

    **Response:** Undisputed. ECF No. 44-8.

**Sheen's Deposition Testimony in Litigation against Pettiford**

26. Sheen was deposed in a sexual harassment lawsuit filed against Pettiford. Ex. 11, Pl.'s Dep. 124:1-124:15; Ex. 12, Sheen Feb. 4, 2021 Dep. 13:10-19.

    **Response:** Undisputed. ECF No. 44-12; ECF No. 44-13.

27. Sheen's deposition took place on August 20, 2015. Ex. 13, Aug. 20, 2015 Sheen Dep at 1.

    **Response:** Undisputed.

**Plaintiff's Administrative Proceedings Before the D.C. Office of Human Rights (OHR)**

28. Plaintiff brought his District of Columbia Human Rights Act (DCHRA) claims before OHR. Ex. 10.

    **Response:** Undisputed. ECF No. 44-11.

29. On September 12, 2016, OHR issued a probable cause determination. *Id.* at 27.

    **Response:** Undisputed. ECF No. 44-11.

30. Among the issues addressed were whether the District terminated Plaintiff in violation of the DCHRA. *Id.* at 2.

    **Response:** Undisputed. ECF No. 44-11.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT MURPHY,           ) | |
|                          ) | |
|     Plaintiff,           ) | Civil Action No. 18-CV-1478 (JDB) |
|                          ) | |
| v.                       ) | |
|                          ) | |
| DISTRICT OF COLUMBIA,    ) | |
|                          ) | |
|     Defendant.           ) | |
|                          ) | |
| _____  ) | |

**PLAINITFF'S STATEMENT OF DISPUTED MATERIAL FACTS**

Pursuant to Local Rule 7(h) of the Civil Rules of the U.S. District Court for the District of Columbia, Plaintiff, by and through undersigned counsel, files this Statement of Disputed Material Facts.

1. In January of 2015, Plaintiff informed Defendant that he had been diagnosed with stage 5 kidney failure, hypertension, and diabetes.

2. On April 2, 2015, Plaintiff and his doctor submitted to Defendant an application for medical leave under the FMLA with the required documentation.

3. Both Plaintiff and his wife inquired after the status of the April 2 FMLA request on multiple occasions without receiving a response from Defendant.

4. Defendant was aware of its obligation under the FMLA yet willfully and intentionally refused to respond to Plaintiff's April 2 Request.

5. Defendant continued to ignore the April 2 Request through June of 2015.

6. The lawsuit against Pettiford, Plaintiff's supervisor, was initiated on November 7, 2013. ECF Nos. 44-11 at 10, 44-14.

7. Pettiford had been aware that Plaintiff and Sheen were married before the lawsuit against Pettiford commenced in 2013. ECF No. 44-11 at 13.

8. Sheen's testimony was included in the complaint against Pettiford in 2013. ECF No. 44-11 at 10.

9. In 2013, Sheen was approached for information concerning the lawsuit against Pettiford.

10. Between 2013 and June of 2015, Pettiford was made aware of Sheen's participation in the lawsuit against him.

Respectfully submitted,

/s/*Donald M. Temple*
Donald M. Temple
(Bar #408749)
Temple Law Offices
1310 L Street, N.W., Suite 750
Washington, DC  20005
202-628-1101
Dtemplelaw@gmail.com

17