UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT MURPHY,<br><br>            Plaintiff,<br><br>                    v.<br><br>DISTRICT OF COLUMBIA,<br><br>            Defendant. | Civil Action No. 18-1478 (JDB) |

## MEMORANDUM OPINION

Plaintiff Robert Murphy alleges that his former employer, the D.C. Department of Corrections (the "DOC")—and by extension, defendant District of Columbia—violated several different statutes by failing to accommodate his disabilities, interfering with his right to medical leave, and terminating his employment for impermissible reasons.  See Mem. Op., July 15, 2019 [ECF No. 18] ("Mem. Op.") at 1.  The District has moved for summary judgment under Federal Rule of Civil Procedure 56.  See generally Def.'s Mot. for Summ. J. [ECF No. 44] ("Mot.").  For the reasons explained below, the Court will grant the District's motion in part and deny it in part.

### Factual Background

Murphy was an employee at the DOC from 1990 until July 2015.  Am. Compl. for Damages [ECF No. 10] ("Am. Compl.") ¶ 4; see also Resp. to Def.'s Statement of Undisputed Material Facts [ECF No. 45] ("Resp. to Def.'s SUMF") ¶ 1.[1]  In April 2015, Murphy visited his doctor after

---

[1] Murphy filed his memorandum in opposition to the District's summary judgment motion, response to the District's statement of undisputed material facts, and statement of disputed material facts as one combined document.  Murphy also filed all four of the exhibits in support of his response as a single document, and the District similarly filed its summary judgment motion and memorandum in support of the motion as one document.  Despite these consolidated filings, the Court will cite each of these documents separately.

suffering a heart attack.  Resp. to Def.'s SUMF ¶ 2.  On April 2, Murphy's then fiancée, Ja'net Sheen, submitted a request for extended leave under the Family and Medical Leave Act ("FMLA") to the DOC on Murphy's behalf.  Id. ¶ 3.  Murphy alleges that the DOC never responded to his April FMLA application even though he and Sheen asked about it several times.  Mem. Op. at 2; Am. Compl. ¶¶ 12–13.  Critically, the District claims that Murphy and his doctor did not submit the necessary medical certification supporting this FMLA request until July 1, 2015.  Statement of Undisputed Material Facts in Supp. of Mot. [ECF No. 44-1] ("Def.'s SUMF") ¶ 4.  Murphy denies this assertion.  Resp. to Def.'s SUMF ¶ 4; Pl.'s Statement of Disputed Material Facts [ECF No. 45] ¶ 2.

Murphy returned to work after Sheen submitted his April FMLA application.  Resp. to Def.'s SUMF ¶ 6.  On May 12, 2015, Murphy received a letter of counseling from his supervisor, Major Joseph Pettiford, because he acted inappropriately by using the terms "bitches and motherfuckers" when speaking with inmates.  Id. ¶ 7; see also Letter of Counseling re: Inappropriate Behavior [ECF No. 44-9].  Murphy claims he did not direct those expletives at any particular individual but admits to using the language.  Resp. to Def.'s SUMF ¶ 8; Letter of Counseling re: Inappropriate Behavior at 1.

On June 11, 2015, corrections officer Angela Walker submitted an internal complaint about Murphy.  Resp. to Def.'s SUMF ¶ 9; see also Employee Report of Significant Incident/Extraordinary Circumstances [ECF No. 44-10] at 2.  Walker reported that her supervisor—Murphy's subordinate—was disrespectful and ordered her to perform tasks in a manner contrary to her orders and training.  Resp. to Def.'s SUMF ¶ 10; Employee Report of Significant Incident/Extraordinary Circumstances at 1–2.  Walker's report states that when she informed Murphy of the incident, he made inappropriate statements, including asking Walker

whether she was "a dom or a femme," saying "Fuck the Deputy Warden," and telling her that "cussing and disrespect was the norm" and that she "would have to adapt to the environment." Resp. to Def.'s SUMF ¶¶ 11–16; Employee Report of Significant Incident/Extraordinary Circumstances at 3–4. Murphy admits to asking Walker whether she was "a dom or a femme." Resp. to Def.'s SUMF ¶ 17; Excerpts of Robert Murphy Dep. Tr. [ECF No. 44-12] at 77:7–17 (stating Murphy "was trying to establish how [Walker] identified to see if she was, in fact, being targeted because of her preference").

Later on June 11, Pettiford submitted a request to terminate Murphy. Resp. to Def.'s SUMF ¶ 19; see also Request for Termination [ECF No. 44-2]. Pettiford's request for termination mentions the May 12 letter of counseling Murphy received regarding his language around inmates as well as the June 11 report filed by Walker. See Resp. to Def.'s SUMF ¶¶ 20–22; see also Request for Termination at 2 ("Lieutenant Murphy has demonstrated that he will not serve as a 'change agent.' Moreover, in keeping with the agency's 'zero tolerance policy' towards sexual harassment, Lieutenant Murphy's comment about Officer Walker's sexual preference cannot go devoid of action."). The DOC Department of Human Resources approved this request on June 18, Email from Human Resources [ECF No. 44-7], and an official letter of termination was issued on June 19, Termination Letter [ECF No. 44-8]; accord Resp. to Def.'s SUMF ¶¶ 23–24.

On the same day that Human Resources approved Pettiford's request to terminate Murphy, June 18, Murphy suffered another heart attack. Am. Compl. ¶ 14. On June 22, he again requested FMLA leave. Id. ¶ 15. On June 24, he was served with and signed his letter of termination. Termination Letter at 3; Resp. to Def.'s SUMF ¶ 25. Murphy's termination became effective on July 10, 2015. Termination Letter at 1.

Murphy claims that he was fired not for the reasons Pettiford specified in his request to terminate Murphy, but due to Murphy's relationship with and support of Sheen—Murphy's now wife.  See Mem. of P. & A. in Supp. of Pl.'s Resp. in Opp'n to Mot. ("Opp'n") [ECF No. 45] at 7.[2]  Sheen is a former corrections officer who filed a complaint with the DOC in 2008 alleging that Pettiford harassed her.  Excerpts of Ja'net Sheen Dep. Tr. [ECF No. 44-13] 16:14–17:10.  More importantly for this lawsuit's purposes, Sheen was a witness in Brokenborough v. District of Columbia, Civil Action No. 13-1757, a separate sexual harassment suit against the District, the DOC's Director, and Pettiford that was ongoing at the time Pettiford recommended Murphy's termination.  Ex. 1 [ECF No. 45-1] ("Brokenborough Compl.") ¶¶ 138–42 ("Defendant Pettiford harassed former corrections officer Ja'net Sheen from late 2007 to approximately April 2009.").  Sheen was deposed in that case on August 20, 2015.  Resp. to Def.'s SUMF ¶¶ 26–27; see Notice of Deposition [ECF 44-14].

## Procedural History

Murphy filed a "Charge of Discrimination" with the Equal Opportunity Employment Commission and the D.C. Office of Human Rights ("OHR") on August 13, 2015, alleging that the District committed a variety of unlawful discriminatory acts.  Mem. Op. at 3; see also Charge of Discrimination [ECF No. 12-1] at 1.  OHR issued a probable cause determination, finding probable cause for some, but not all, of Murphy's claims.  Resp. to Def.'s SUMF ¶ 29; Letter of Determination [ECF No. 44-11].  One of the claims before OHR was whether the District terminated Murphy in violation of the D.C. Human Rights Act ("DCHRA").  Resp. to Def.'s SUMF ¶ 30; Charge of Discrimination at 1.

---

[2] Murphy's memorandum in opposition to the District's motion begins on page 2.  For ease of reference, the Court will use the numbering in Murphy's opposition when citing to that document.

Murphy initiated litigation against the District in this Court in June 2018.  See generally Compl. for Damages [ECF No. 1].  Murphy later filed an amended complaint, Count I of which alleges that the District violated the Americans with Disabilities Act ("ADA") by failing to accommodate his April and June requests for medical leave and by terminating him in retaliation for making those requests.  See Am. Compl. ¶¶ 24–28.  Counts II and III allege that the same conduct violated the federal FMLA and D.C.'s version of the FMLA ("DCFMLA").  See id. ¶¶ 30–36.  Counts IV and V allege that the District violated Title VII of the Civil Rights Act of 1964 and the DCHRA by terminating Murphy in retaliation for supporting his wife's participation in the sexual harassment lawsuit against Pettiford.  Id. ¶¶ 38–46; see also Mem. Op. 3–4 (describing the claims in the amended complaint).

The District moved to partially dismiss Murphy's amended complaint in December 2018. See generally Def.'s Mot. to Dismiss Am. Compl. in Part [ECF No. 12].  The Court granted the District's motion in part and denied it in part in July 2019.  Order, July 15, 2019 [ECF No. 17] at 1.  Specifically, the Court dismissed Count I's June failure-to-accommodate claim and both the April and June retaliation claims under the ADA, Count II's June interference claim under the FMLA, and Count III's June interference and retaliation claims under the DCFMLA.  Id.; see also Mem. Op. at 5–17 (explaining rationale).  After the Court's Order, the remaining claims are as follows: a failure-to-accommodate claim under the ADA for not responding to the April FMLA request (Count I); an interference claim and a retaliation claim under the FMLA for not responding to the April FMLA request and then terminating Murphy for making that request (Count II); an interference claim under the DCFMLA for not responding to the April FMLA request (Count III); and retaliation claims under Title VII and the DCHRA (Counts IV and V) for terminating Murphy

due to his support of Sheen's participation in the lawsuit against Pettiford, the DOC's Director, and the District.  Opp'n at 2–3.

The District has moved for summary judgment on all remaining claims.  See Mem. of P. & A. in Supp. of Mot. [ECF No. 44] ("Mem in Supp. of Mot.") at 1.  The District argues that Murphy's failure-to-accommodate claim under the ADA and interference claims under the FMLA and DCFMLA fail because his April FMLA application was incomplete.  Id.  The District also claims that it is entitled to summary judgment on Murphy's retaliation claims under the FMLA, Title VII, and the DCHRA because the District terminated Murphy for legitimate, nondiscriminatory reasons.  Id.  The District further contends that Murphy's retaliation claims under Title VII and the DCHRA fail because Sheen did not participate in the deposition against Pettiford until after Pettiford recommended Murphy's termination.  Id. at 10.  Finally, the District states that Murphy's DCHRA claim is barred because he pursued this claim before OHR.  Id.

Murphy has filed his opposition to the District's motion, see generally Opp'n, and the District has filed its reply, see generally Reply in Supp. of Mot. [ECF No. 46] ("Reply").  The motion is now fully briefed and ripe for this Court's decision.

## Legal Standards

To prevail on a motion for summary judgment, the movant "must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law." Citizens for Resp. & Ethics in Wash. v. U.S. Postal Serv., Civ. A. No. 20-2927 (JDB), 2021 WL 3662843, at *3 (D.D.C. Aug. 17, 2021); accord Fed. R. Civ. P. 56(a).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law."  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citation omitted).  A dispute is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When determining if there is a genuine dispute sufficient to preclude summary judgment, the Court must accept the nonmovant's evidence as true and draw all justifiable inferences in his favor. Anderson, 477 U.S. at 255; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (noting that the party seeking summary judgment "always bears the initial responsibility of" demonstrating the absence of a genuine dispute of material fact). But a party opposing a motion for summary judgment "may not rest upon . . . mere allegations or denials [but instead] must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). The nonmoving party "must establish more than the 'mere existence of a scintilla of evidence' in support of its position," Smith v. Ergo Sols., LLC, Civ. A. No. 14-382 (JDB), 2019 WL 147718, at *6 (D.D.C. Jan. 9, 2019) (quoting Anderson, 477 U.S. at 252), and if the nonmovant's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted," Anderson, 477 U.S. at 249–50 (citations omitted).

## Analysis

The Court will first determine whether the District is entitled to summary judgment on Murphy's failure-to-accommodate claim under the ADA. Next, the Court will consider whether Murphy's alleged failure to complete his FMLA application entitles the District to summary judgment on Murphy's interference claims under the FMLA and DCFMLA. The Court will then decide whether the District is entitled to summary judgment on Murphy's retaliation claims under the FMLA, Title VII, and the DCHRA.

## I.   ADA Failure-to-Accommodate Claim

The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  To prevail on a failure-to-accommodate claim under the ADA, a plaintiff must show that he has a disability, that the employer had notice of the disability, that the plaintiff could perform the essential functions of the position, and that the employer refused to make a reasonable accommodation.  Hill v. Assocs. for Renewal in Educ., Inc., 897 F.3d 232, 237 (D.C. Cir. 2018); accord Pappas v. Dist. of Columbia, 513 F. Supp. 3d 64, 86 (D.D.C. 2021).  The failure-to-accommodate claim in this case concerns Murphy's April 2 FMLA application.  Opp'n at 2 ("Count I alleges violation of the ADA by (1) failing to respond to [Murphy's] FMLA requests on April 2 and June 22 of 2015; and (2) terminating [Murphy] in retaliation to his invoking the right to medical leave.  Count I proceeded as to the April 2 failure-to-accommodate claim.").

The District argues that no reasonable jury could find that it refused to provide Murphy with a reasonable accommodation under the ADA because "[t]he record establishes that [Murphy's] physician did not submit the required medical certification to support [Murphy's] April 2, 2015 request for FMLA leave until July 1, 2015, after [Murphy's] employment had been terminated."  Mem. in Supp. of Mot. at 11.  Accordingly, "the District did not deny [Murphy] a reasonable accommodation; rather, he failed to timely comply with the procedures to seek FMLA leave."  Id. at 12; see also Davis v. George Wash. Univ., 26 F. Supp. 3d 103, 114 (D.D.C. 2014) ("[O]nce an employer has established a fixed set of procedures to request accommodations, the plaintiff-employee's failure to file a request through this procedure could preclude a claim for failure to accommodate.").  Murphy responds that whether his April 2 FMLA application was incomplete is a disputed material fact that a jury should decide.  See Opp'n at 5.

These arguments overlook a more fundamental question inherent in Murphy's ADA accommodation claim—has Murphy submitted a request for a reasonable accommodation under the ADA?  For the reasons explained below, the Court is not convinced that Murphy can establish this essential element.  Because the District did not move for summary judgment on this basis, however, the Court will permit the parties to submit additional briefing dedicated to the question of whether Murphy, through his April FMLA request or other communications, requested a reasonable accommodation under the ADA.

"An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C. Cir. 1999).  A request for an accommodation "does not have to be in writing . . . or formally invoke the magic words 'reasonable accommodation.'" Lee v. Dist. of Columbia, 920 F. Supp. 2d 127, 136 (D.D.C. 2013) (alteration in original) (quoting Loya v. Sebelius, 840 F. Supp. 2d 245, 259 n.15 (D.D.C. 2012)).  But the request must make it "clear that the employee wants assistance for his or her disability."  Id. (quoting Loya, 840 F. Supp. 2d at 259 n.15).

In Waggel v. George Washington University, 957 F.3d 1364 (D.C. Cir. 2020), the D.C. Circuit recently adjudicated a case where a plaintiff did not specifically request an ADA accommodation but did request time off and then took FMLA leave because of renal cancer.  957 F.3d at 1369–70, 1372–73.  Following her termination, the plaintiff brought a variety of claims against her former employer, including a failure-to-accommodate claim under the ADA.  See id. at 1370–71.  The D.C. Circuit rejected the plaintiff's "argument that her requests for FMLA leave should have been construed as requests for an ADA accommodation," and because she did not otherwise request an ADA accommodation, the plaintiff could not establish an ADA failure-to-

accommodate claim.  Id. at 1373.  Noting that the "structure of the [FMLA and ADA] statutes are fundamentally different," and that "the Department of Labor's implementing regulations emphasize [that] claims under each statute must be analyzed separately," id. (citing 29 C.F.R. § 825.702(b)), the D.C. Circuit concluded that an application for medical leave under the FMLA does not automatically constitute a request for a reasonable accommodate under the ADA. This conclusion is consistent with the judgments of other courts that have considered the issue. E.g., Acker v. Gen. Motors, L.L.C., 853 F.3d 784, 791–92 (5th Cir. 2017) ("Textual comparison . . . demonstrates why requesting FMLA leave alone is not a request for an ADA reasonable accommodation. . . . [A]n employee seeking FMLA leave is by nature arguing that he cannot perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he can perform the essential functions of the job.") (citing 29 U.S.C. § 2612(a)(1)(D) and 42 U.S.C. § 12111(8)); McCormack v. Blue Ridge Behav. Healthcare, 523 F. Supp. 3d 841, 858 (W.D. Va. 2021) ("Notably absent, however, is any assertion that [plaintiff's] requests for FMLA leave also qualified as requests for an ADA accommodation . . . [a]nd the court's own review of existing caselaw supports the opposite conclusion.").

But while Waggel holds that FMLA requests do not always constitute ADA accommodation requests, the D.C. Circuit did not foreclose the possibility that, in certain circumstances, an FMLA request could put an employer on notice that the employee was also requesting an accommodation under the ADA.  See Waggel, 957 F.3d at 1373 n.2 ("We read [Capps v. Mondelez Global, LLC, 847 F.3d 144 (3d Cir. 2017),] more modestly as noting that a request can trigger both the FMLA and the ADA through language that independently satisfies the requirements of both statutes."); see also 29 C.F.R. § 825.702(c)(2) (indicating that there are instances where a request for FMLA leave can constitute a request for a reasonable

accommodation).  Although it is not completely clear when a request for FMLA leave also operates

as a request for an ADA accommodation, it is certain that the application must give the employer

some notice that the employee is intending to take advantage of the statutory entitlements of both

the FMLA and the ADA.  See Waggel, 957 F.3d at 1372 ("[A] request for a medical leave of

absence standing alone [is] insufficient to make out a request for accommodation") (citing

Flemmings, 198 F.3d at 861–62); see also id. at 1373 ("The ADA respects individual choices

regarding whether and what type of accommodation to seek.").

   In this case, it is not clear that Murphy's April request for leave under the FMLA informed

the DOC he was also requesting a reasonable accommodation under the ADA.  See Apr. FMLA

Request [ECF No. 44-3].  The form Murphy submitted is titled "Request for Family/Medical

Leave," id. at 1, subtitled "District of Columbia Family and Medical Leave Act of 1990," id., and

primarily consists of a series of boxes that Murphy checked where appropriate, see id. at 1–2.

Murphy requested 640 hours of medical leave because of his "serious health condition," id. at 2, a

key statutory phrase under the FMLA, see 29 U.S.C. § 2612(a)(1)(D), but not under the ADA.  The

form never identifies Murphy as an individual with a disability or otherwise suggests that he was

requesting an accommodation under the ADA.

   But without more information, the Court cannot rule out the possibility that Murphy

informed the DOC that he intended his leave request to also serve as a request for a reasonable

accommodation.  As stated earlier, accommodation requests do "not have to be in writing . . . or

formally invoke the magic words 'reasonable accommodation,'" Lee, 920 F. Supp. 2d at 136

(alteration in original) (citation omitted), and Murphy has alleged that he communicated with the

DOC about his FMLA application many times, see Am. Compl. ¶¶ 12–13.  Furthermore, in certain

cases "a leave of absence may constitute a reasonable accommodation under the ADA."  Hancock

v. Wash. Hosp. Ctr., 13 F. Supp. 3d 1, 11 (D.D.C. 2014); accord EEOC, Employer-Provided Leave
and the Americans with Disabilities Act (May 9, 2016), available at
https://www.eeoc.gov/eeoc/publications/ada-leave.cfm (last accessed Mar. 1, 2022).

Because it is possible that Murphy may have communicated his intent to request a
reasonable accommodation to the DOC through his April FMLA request and related
communications, and because the District did not argue in its summary judgment motion that
Murphy's request for FMLA leave did not constitute a request for an ADA accommodation, the
Court will not grant the District summary judgment on this claim at this time. "While district
courts possess the authority to enter summary judgment against a party sua sponte, . . . that
authority may only be exercised 'so long as the losing party was on notice that she had to come
forward with all her evidence.'" Athridge v. Rivas, 141 F.3d 357, 361 (D.C. Cir. 1998) (quoting
McBride v. Merrell Dow & Pharms., Inc., 800 F.2d 1208, 1212 (D.C. Cir. 1986)). The District
moved for summary judgment on Murphy's ADA claim solely on its theory that there is no genuine
dispute over whether Murphy submitted a completed FMLA application packet, see Mem. in Supp.
of Mot. at 11–12, and though this theory is somewhat connected to the idea that Murphy failed to
request an ADA accommodation, it is not sufficiently related for the Court to grant the District's
present summary judgment motion, see McBride, 800 F.2d at 1212 (concluding that a defendant's
motion for summary judgment on one aspect of plaintiff's claim did not put the plaintiff on notice
of the need to produce evidence on a different aspect).

Consequently, the Court will permit Murphy and the District to submit additional briefing
on the issue of whether Murphy's ADA claim should be denied for failure to submit a request for
a reasonable accommodation. The briefing shall conform to the schedule and limitations outlined
in the Order accompanying this opinion.

## II.        FMLA and DCFMLA Interference Claims

In order to establish an FMLA interference claim, a plaintiff "must show that 'her employer interfered with, restrain[ed], or denied the exercise of or the attempt to exercise, any right provided by the FMLA and that she was prejudiced thereby.'"  Gordon v. U.S. Capitol Police, 778 F.3d 158, 164 (D.C. Cir. 2015) (alteration in original) (quoting McFadden v. Ballard Spahr Andrews & Ingersoll, LLP, 611 F.3d 1, 7 (D.C. Cir. 2010)); accord 29 U.S.C. § 2615(a)(1).  "Courts interpret the FMLA and the DCFMLA similarly," Cobbs v. Bluemercury, Inc., 746 F. Supp. 2d 137, 142 (D.D.C. 2010), and a plaintiff must make the same showing to establish an interference claim under the DCFMLA, see id. at 144; accord D.C. Code § 32-507(a) ("It shall be unlawful for any person to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by this subchapter.").

The District argues that no reasonable jury could find that it interfered with Murphy's FMLA or DCFMLA rights because Murphy's "physician did not submit the required medical certification to support [Murphy]'s April 2, 2015 request for FMLA leave until" after Murphy was fired.  Mem. in Supp. of Mot. at 11.  In support of its argument, the District attaches a copy of Murphy's April FMLA application, and notably absent is any medical certification.  See Apr. FMLA Request.  The District also includes a copy of a medical certification that Murphy's physician submitted in July, well after Murphy submitted his April application.  July Med. Certification [ECF No. 44-4].  Murphy correctly points out, however, that the July medical certification "does not concern the April 2 Request" and was instead submitted in support of his June FMLA application.  Opp'n at 6.  More importantly, Murphy testified in his deposition that his April FMLA application contained his medical certification when Sheen submitted it.  See

Opp'n at 5; Excerpts of Robert Murphy Dep. Tr. 23:13–19 ("I took the [FMLA] packet to my doctor and he filled it out.  My wife then took the packet . . . and gave it to" the DOC.).

Both parties concede that Murphy needed to submit the physician's portion of his FMLA application in order for the application to be processed and for Murphy to be entitled to FMLA and DCFMLA leave.  See Resp. to Def.'s SUMF ¶ 5; Excerpts of Robert Murphy Dep. Tr. 41:7–16; see also 29 U.S.C. § 2613(a) ("An employer may require that a request for [medical] leave . . . be supported by [an appropriate] certification . . . ."); D.C. Code § 32-504(a) (similar); Hodges v. Dist. of Columbia, 172 F. Supp. 3d 271, 281 (D.D.C. 2016) ("FMLA leave my be denied absent an appropriate certification.").  Consequently, whether Murphy submitted the required medical certification in support of his April FMLA request constitutes a material fact that "might affect the outcome of [his FMLA and DCFMLA interference claims] under governing law."  Holcomb, 433 F.3d at 895.

And after carefully considering the issue, the Court concludes that this material fact is genuinely disputed.  Although a party opposing a summary judgment motion "may not rest upon mere allegation[s]," Anderson, 477 U.S. at 256, Murphy has not merely alleged that the DOC received his medical certification, but instead has given sworn testimony detailing how he, with the assistance of his doctor and wife, submitted a complete FMLA application to the DOC in April, see Excerpts of Robert Murphy Dep. Tr. 23:9–19.  Murphy's recollection of how the DOC received his medical certification was neither conclusory, see Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) (partially affirming summary judgment because plaintiff's unsupported allegation that a less-qualified student was hired over plaintiff was so conclusory "a jury would be in no position" to assess its accuracy), nor a mere statement of opinion, see Pardo–Kronemann v. Donovan, 601 F.3d 599, 611 (D.C. Cir. 2010) (affirming summary judgment against plaintiff notwithstanding

14

statements that "reflect[ed] at most a personal opinion") (citation omitted).  It was instead a detailed factual assertion that a jury must ultimately decide whether to credit.

The D.C. Circuit has repeatedly advised district courts that a "party's own sworn testimony can alone defeat summary judgment."  United States v. $17,900 in U.S. Currency, 859 F.3d 1085, 1092 (D.C. Cir. 2017); accord Greene, 164 F.3d at 674 (partially overturning grant of summary judgment because the accuracy of the recollection in plaintiff's sworn affidavit was "a question not for the court . . . but for the jury").  For instance, in Arrington v. United States, 473 F.3d 329 (D.C. Cir. 2006), the key question was whether a plaintiff alleging police brutality produced enough evidence that the police beat him after he was handcuffed to survive a motion for summary judgment.  473 F.3d at 331, 336.  In reversing the district court's grant of summary judgment, the D.C. Circuit noted that the plaintiff's recollection of events found "support in sworn deposition testimony," meaning there was a genuine issue of material fact.  Id. at 338 ("Possessed of this testimony, a jury can assess the validity of [plaintiff]'s claims.").  As in Arrington, Murphy's recollection of events is inherently self-serving.  See id. at 342 (Brown, J., concurring and dissenting in part).  Nevertheless, whether Murphy is to be believed is a question that should not be resolved via summary judgment.  See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

To be sure, Murphy could have bolstered his opposition to the District's summary judgment motion in many ways.  He could have more clearly testified that his doctor filled out the required medical certification instead of simply using the phrase "the packet," see Excerpts of Robert Murphy Dep. Tr. 23:13–19; but cf. id. 41:9–16 (detailing Murphy's understanding of his doctor's need to medically certify his FMLA application), he could have submitted an affidavit

from his doctor swearing that the certification was completed in April, or he could have submitted testimony from Sheen that she gave the District a completed FMLA application. But summary judgment does not turn on "whether a party offers a particular form of evidence." $17,900 in U.S. Currency, 859 F.3d at 1092; see also Fed. R. Civ. P. 56(c)(1)(A) (noting parties may use depositions to show a fact is genuinely disputed). In this case, Murphy has supported his claim that the District received a completed application with sworn testimony, which is further supported by the District's concession that it received at least an incomplete FMLA application from Sheen. Def.'s SUMF ¶ 3.[3] As such, the Court concludes that Murphy has submitted sufficient evidence to survive summary judgment at this time.

Moreover, the District has not submitted evidence that is so persuasive as to render Murphy's claim unbelievable. Although there are cases where summary judgment is appropriate despite a nonmoving party's sworn testimony in opposition, the D.C. Circuit has emphasized that these cases are "rare." Chenari v. George Wash. Univ., 847 F.3d 740, 747 (D.C. Cir. 2017) (quoting Robinson v. Pezzat, 818 F.3d 1, 10 (D.C. Cir. 2016)). Examples of these cases include when there is "a video tape that 'quite clearly' demonstrates the falsity of the plaintiff's statement," Robinson, 818 F.3d at 10 (quoting Scott v. Harris, 550 U.S. 372, 378 (2007)), or when the nonmoving party's testimony is "contradicted by multiple disinterested witnesses," id. In this case, however, the only direct evidence the District offers in support of its position is its copy of the incomplete April FMLA application. Viewing that evidence in the light most favorable to Murphy

---

[3] The District's concession that Sheen submitted the FMLA application eases some of the concerns the Court has over the possibility that it could be claimed that Murphy's testimony about Sheen's submission of the application was not based on Murphy's personal knowledge. See GMO Rice v. Hilton Hotel Corp., Civ. A. No. 85-1470, 1987 WL 16851, at *2 (D.D.C. Sept. 1, 1987) ("The use of depositions under Rule 56 is limited to those statements made 'on personal knowledge.' . . .") (quoting Sires v. Luke, 544 F. Supp. 1155, 1160 (S.D. Ga. 1982)). While Murphy's testimony alone cannot establish a perfect chain of custody between his doctor's completion of the medical certification and Sheen's submission of the FMLA request to the DOC, the Court is satisfied that Murphy's testimony in combination with the District's concessions creates a disputed issue of material fact.

and drawing all justifiable inferences in his favor, as it must at this stage, see Robinson, 818 F.3d at 8, the Court cannot conclude that this record proves the District never received the medical certification in support of Murphy's April application.  The certification may have been misfiled or inadvertently destroyed, and the incomplete application does not possess the same probative force as the examples the D.C. Circuit deemed sufficient to render summary judgment appropriate in the face of opposing sworn testimony.[4]

And even if the Court were to conclude that there was not a genuine dispute as to whether Murphy submitted the requisite medical certification, the Court would still not grant the District summary judgment as to the entirety of Murphy's FMLA and DCFMLA interference claims.  The regulations interpreting the FMLA state that employers are "expected to responsively answer questions from employees concerning their rights and responsibilities under the FMLA."  29 C.F.R. § 825.300(c)(5); accord D.C. Mun. Regs. tit. 4, § 1613.1.  The FMLA's interpreting regulations explicitly provide that "[f]ailure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights," 29 C.F.R. § 825.300(e), and the DCFMLA's interpreting regulations have a similar provision, see D.C. Mun. Regs. tit. 4, § 1613.9.  Other courts that have considered these regulations have similarly noted that "unresponsiveness may itself run afoul of the FMLA's" requirements.  E.g., Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 427 (2d Cir. 2016); accord Cloutier v.

---

[4] The Court reaches this conclusion although there is some evidence—not mentioned in the District's motion for summary judgment—that suggests that Murphy's recollection of the submission of his April FMLA application has changed over time.  Compare Excerpts of Robert Murphy Dep. Tr. 23:13–19 (containing Murphy's sworn statement that the April FMLA application Sheen delivered to the DOC contained the medical certification at the time of its submission), with Letter of Determination at 18 n.24 (indicating Murphy previously told OHR "that his doctor faxed the requested medical certification to [the District] sometime in April or May of 2015").  Although the details may have changed, this inconsistency does not require the Court to disregard sworn testimony.  Murphy has consistently stated that the District received the medical certification in support of his April FMLA application prior to his termination, and he has made that assertion under oath.  It is the jury's job to decide whether he is telling the truth, not the Court's.  See Holcomb, 433 F.3d at 895 (noting courts "are not to make credibility determinations" when considering motions for summary judgment).

GoJet Airlines, LLC, 996 F.3d 426, 443 (7th Cir. 2021); McCoy v. Diamond Elec. Mfg. Corp.,

Civ. A. No. 3:17-4329, 2019 WL 691400, at *3 (S.D.W. Va. Feb. 19, 2019) ("[A]n FMLA

interference claim will survive a motion for summary judgment if facts exist that could lead a

reasonable juror to conclude that an employer did not responsively answer an employee's

questions concerning their rights under the FMLA.").

Murphy alleges that he and Sheen "inquired on several occasions as to the status of his

FMLA request and whether the [DOC] needed additional information to complete the request."

Am. Compl. ¶ 12.  According to Murphy, these requests were ignored.  Id. ¶ 13.  This allegation,

if true, may establish a violation of the requirement that employers answer employees' FMLA and

DCFMLA-related questions.  See 29 C.F.R. § 825.300(c)(5); D.C. Mun. Regs. tit. 4, § 1613.1.  Yet

the District never denies, or even responds to, Murphy's claim that his and Sheen's inquiries went

unanswered.  See Mem. in Supp. of Mot. at 11–12 (moving for summary judgment on Murphy's

FMLA and DCFMLA interference claims solely on the basis that Murphy failed to submit the

medical certification); Reply at 2–3 (same).  Consequently, the Court cannot dismiss Murphy's

FMLA and DCFMLA interference claims—there are uncontested allegations which, if accepted,

may suffice to show that the DOC violated Murphy's rights under both statutes.

In sum, the Court concludes that there is a genuine dispute as to whether Murphy submitted

the medical certification in support of his April FMLA request.  Murphy has sworn under oath that

he gave his doctor the medical certification, his doctor filled it out, and Sheen submitted the

completed application to the DOC.  Excerpts of Robert Murphy Dep. Tr. 23:13–19.  This claim

finds at least some support in the District's concession that Sheen did deliver Murphy's portion of

the FMLA application, Def.'s SUMF ¶ 3, and the District has not submitted sufficient evidence to

render the rest of Murphy's claim too implausible to be believed, see Chenari, 847 F.3d at 747–

48.   Furthermore, even if Murphy were unable to proceed with his FMLA and DCFMLA interference claims based on the District's failure to respond to his April FMLA application, Murphy could still proceed due to the District's alleged failure to respond to his questions about that application.[5]   Hence, the District's motion for summary judgment on Murphy's FMLA and DCFMLA interference claims will be denied.

### III.   FMLA, Title VII, and DCHRA Retaliation Claims

The requirements for establishing a prima facie case of retaliation under the FMLA, Title VII, and the DCHRA are similar.   See McFadden, 611 F.3d at 6 ("The analytical framework for [plaintiff's] claim of retaliation [under the FMLA, Title VII, and the DCHRA] is essentially the same as that applicable to a claim of discrimination under Title VII.").   Under all three statutes, Murphy must demonstrate (1) that he engaged, or the DOC believed that he engaged, in statutorily protected activity; (2) that he suffered a materially adverse action by the DOC;[6] and (3) that there is a causal link that connects the statutorily protected activity with the adverse action.   See Mem. Op. at 13–16 (analyzing Murphy's Title VII claim and describing the "perception theory" under which he is proceeding); Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1368 (D.C. Cir. 2000) (FMLA); Howard Univ. v. Green, 652 A.2d 41, 45 (D.C. 1994) (DCHRA).

---

[5] Of course, in order to succeed on any of his FMLA and DCFMLA interference claims, Murphy eventually will need to establish that these alleged violations of his rights caused him prejudice.   See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002); see also Ridings v. Riverside Med. Ctr., 537 F.3d 755, 763–64 (7th Cir. 2008) (holding that failure to answer questions did not constitute FMLA interference due to lack of prejudice).   And there is evidence in the record suggesting that Murphy may be unable to make this showing.   See Letter of Determination at 18 n.25 ("Even if [Murphy] had been eligible for intermittent DCFMLA in April of 2015, Complainant states that he took sick leave when needed following his application, and thus, he was not harmed by any failure on [the District]'s part to grant his DCFMLA request between April and June 18, 2015.").   But the District did not move for summary judgment on this basis, and the Court will not answer this question now.

[6] The D.C. Circuit has recently questioned, but not answered, "whether the 'material adversity' standard articulated for Title VII [cases] governs in the context of FMLA claims," or whether FMLA claims should be governed by a lighter standard of adversity.   Gordon, 778 F.3d at 162.   The Court need not answer this question now because it is uncontested that Murphy's termination meets the higher adversity showing required for articulating a Title VII retaliation claim.   See Mem. in Supp. of Mot. at 7–11 (not questioning this conclusion); see also Durant v. Dist. of Columbia Gov't, 875 F.3d 685, 698 (D.C. Cir. 2017) (concluding that termination constitutes a materially adverse action).

Retaliation claims under the FMLA, Title VII, and the DCHRA are all governed by the familiar burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Gordon</u>, 778 F.3d at 161 (FMLA); <u>Gaujacq v. EDF, Inc.</u>, 601 F.3d 565, 576 (D.C. Cir. 2010) (Title VII and DCHRA).[7]  But if the employer offers a "legitimate, nondiscriminatory reason for its action . . . then the court 'need not—<u>and should not</u>—decide whether the [employee] actually made out a prima facie case under <u>McDonnell Douglas</u>.'"  <u>Taylor v. Solis</u>, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009) (quoting <u>Brady v. Off. of Sergeant at Arms</u>, 520 F.3d 490, 494 (D.C. Cir. 2008)); <u>see also</u> <u>Brady</u>, 520 F.3d at 494 ("[T]he prima facie case is a largely unnecessary side show.").  Instead, "the court should proceed to the question of retaliation" or not and should resolve that question in the employer's favor if the employee is unable to prove an essential element of his case or if the employee is unable to rebut the employer's explanation.  <u>Taylor v. Solis</u>, 571 F.3d at 1320 n.*

In this case, the District makes three arguments in favor of granting it summary judgment on Murphy's retaliation claims.  First, it contends as a threshold matter that Murphy's DCHRA retaliation claim is barred because he already pursued it before OHR.  Mem. in Supp. of Mot. at 10 ("A plaintiff may choose an administrative remedy under the DCHRA or to bring a civil action but cannot choose both.").  Murphy states in his brief's introductory section that the "election of remedies does not apply to bar [his] DCHRA claim," Opp'n at 3, but he never elaborates on that assertion.

The District also disputes whether Murphy has adequately established an essential element of his retaliation claims under Title VII and the DCHRA.  Specifically, the District argues that

---

[7] Courts applying that framework first determine whether the employee has articulated a prima facie case of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's action.  <u>Id.</u>  The employee then has the burden of demonstrating that the employer's stated reason was pretext for discrimination.  <u>Id.</u> at 804.

Murphy has not sufficiently alleged that the DOC perceived him as engaging in statutorily protected activity prior to his termination as required for Murphy's Title VII and DCHRA retaliation claims.  See Mem. in Supp. of Mot. at 10.  The District emphasizes that "Sheen's deposition testimony against Pettiford in the sexual harassment lawsuit filed against him occurred on August 20, 2015, two months after Pettiford requested [Murphy]'s termination."  Id.  Murphy claims that this fact "is irrelevant" because prior to his termination, the DOC believed that Murphy assisted his wife as she participated in the litigation against Pettiford, the DOC's Director, and the District.  Opp'n at 10.

Finally, the District claims that all three retaliation claims must be dismissed because Murphy has not shown a causal link between his statutorily protected activity and termination.  Mem. in Supp. of Mot. at 9–10.  According to the District, "the record amply establishes that the District terminated [Murphy]'s employment for a legitimate nondiscriminatory reason—because he made inappropriate remarks to Walker."  Id.  Murphy responds that a reasonable jury could conclude that the District's stated reasons for his termination were pretextual and summary judgment should be denied.  See Opp'n at 5, 9–10.

The Court will address these three disputed issues in turn.  For the reasons explained below, the Court concludes that while the District is entitled to summary judgment on Murphy's retaliation claims under the DCHRA and FMLA, Murphy may proceed with his retaliation claim under Title VII.

A.   Murphy's DCHRA Retaliation Claim Is Barred Due to His Election of Remedy

As a threshold matter, the District argues that Murphy's DCHRA retaliation claim must be dismissed because he first pursued this claim before OHR.  Mem. in Supp. of Mot. at 10–11.  Murphy's only response to this claim is as follows: "election of remedies does not apply to bar

21

[Murphy]'s DCHRA claim."  Opp'n at 3.  The District persuasively argues that the Court should view this meager opposition as a concession of the District's claim.  Reply at 4 & n.1; see also Evans v. Holder, 618 F. Supp. 2d 1, 13 (D.D.C. 2009) ("It is well-settled that where a non-moving party fails to oppose arguments set forth in a motion for summary judgment, courts may treat such arguments as conceded.").  The Court ultimately need not decide whether it is appropriate to treat the District's argument as conceded, however, because summary judgment on Murphy's DCHRA retaliation claim would be warranted even if Murphy had voiced more vigorous opposition.

D.C. Code § 2-1403.16(a) provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction" unless the person first filed a complaint with OHR.  See Brown v. Capitol Hill Club, 425 A.2d 1309, 1311 (D.C. 1981) ("The jurisdiction of the court and OHR are mutually exclusive in the first instance. Thus, where one opts to file with OHR, he or she generally may not also file a complaint in court."); accord Pauling v. Dist. of Columbia, 286 F. Supp. 3d 179, 200–01 (D.D.C. 2017).  The statute authorizes suit under the DCHRA after filing a complaint with OHR in only two limited instances: (1) if OHR dismissed the complaint on the grounds of administrative convenience or (2) if the complainant withdrew the complaint before a probable-cause determination.  D.C. Code § 2-1403.16(a); accord Pauling, 286 F. Supp. 3d at 201.  There is no exception for when OHR finds merit in the complaint.  Anderson v. U.S. Safe Deposit Co., 552 A.2d 859, 861–62 (D.C. 1989); Adams v. Dist. of Columbia, 740 F. Supp. 2d 173, 178, 189–90 (D.D.C. 2010), aff'd, 618 F. App'x 1 (D.C. Cir. 2015).

It is undisputed that Murphy brought his DCHRA claims, including his DCHRA retaliation claim, before OHR.  Resp. to Def.'s SUMF ¶¶ 28–30.  It is also undisputed that OHR issued a probable cause determination on the DCHRA retaliation claim.  Id. 29–30; see also Letter of

22

Determination at 23–25 (finding probable cause for Murphy's DCHRA retaliation claim). Indeed, Murphy "incorporates by reference" OHR's findings in his brief. Opp'n at 8–9. Thus, neither of the exceptions listed in D.C. Code § 2-1403.16(a) apply, and the District is entitled to summary judgment on Murphy's DCHRA retaliation claim.

    B. <u>The Timing of Sheen's Deposition Does Not Preclude Murphy's Title VII Retaliation Claim</u>

Title VII prohibits employers from discriminating because of sex, 42 U.S.C. § 2000e–2(a)(2), which in turn prohibits employers from sexually harassing employees, <u>see</u> <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 66–67 (1986). Employers also may not retaliate against any employees who have "'opposed any . . . unlawful employment practice' or who have 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' related to that unlawful practice." Mem. Op. at 13 (quoting 42 U.S.C. § 2000e–3(a)). In its prior Memorandum Opinion, the Court explained that Murphy's Title VII claim may proceed on the "perception theory" of retaliation. Mem. Op. at 13–16. Essentially, Murphy need not demonstrate that he actually engaged in statutorily protected activity prior to his termination; instead, he may succeed by showing that the DOC believed that he was engaged in statutorily protected activity by assisting Sheen with the sexual harassment lawsuit against Pettiford. <u>See</u> <u>id.</u> at 13–14 (citing <u>Johnson v. Napolitano</u>, 686 F. Supp. 2d 32, 36 (D.D.C. 2010)).[8]

---

[8] In his opposition to the District's summary judgment motion, Murphy asserts that he is "proceeding under the traditional and perception theory" for his Title VII retaliation claim. Opp'n at 9. This assertion is surprising because when the District previously moved to dismiss Murphy's Title VII retaliation claim on the basis that Murphy had not alleged that he had engaged in any statutorily protected activity, Def.'s Mot. to Dismiss Am. Compl. in Part at 9–12, Murphy did not claim that he had adequately alleged his own participation in protected activity prior to his termination, <u>see</u> Pl.'s Opp'n to Def.'s Mot. to Dismiss [ECF No. 14] at 8–10 (arguing for perception and third-party retaliation theories of discrimination). Without resolving this question now, the Court notes that while Title VII prohibits employers from retaliating against employees who assist with enforcement proceedings "in any manner," 42 U.S.C. § 2000e–3(a), and Murphy's complaint alleges that he was terminated due to his "clear support of his wife's participation in the sexual harassment lawsuit," Am. Compl. ¶ 38, Murphy has never articulated what form that support took and whether it would constitute protected activity under the applicable statute. Murphy will need to do so in order to succeed at trial.

The District claims that this perception theory must be dismissed because Sheen's deposition in the lawsuit against Pettiford did not occur until after Pettiford requested Murphy's termination.  Mem. in Supp. of Mot. at 10.  The Court easily rejects this argument.  Title VII prohibits an employer from retaliating against an employee because the employee participated "in any manner" in an enforcement proceeding.  42 U.S.C. § 2000e–3(a).  This prohibition is not limited to giving deposition testimony.  Sheen was listed as "Female Witness #1" in a complaint filed against Pettiford, the DOC's Director, and the District in November 2013, prior to Murphy's termination.  Brokenborough Compl. at 29.  The fact that Sheen did not give deposition testimony until after Murphy's termination does not mean that, at the time of his termination, she was  not engaged in protected activity or, more importantly, that Pettiford could not have recommended Murphy's termination due to Pettiford's belief that Murphy was assisting with both the upcoming deposition and the ongoing litigation as a whole.[9]  Hence, while the Court does not agree with Murphy's claim that it is "irrelevant" that Sheen was deposed after he was terminated,[10] Opp'n at 10, the Court does agree that the timing of Sheen's deposition does not preclude Murphy's Title VII retaliation claim.

    C.  <u>Murphy Has Produced Sufficient Evidence for His Title VII Retaliation Claim to Survive Summary Judgment, but Not for His FMLA Retaliation Claim</u>

The District's last argument in support of its motion for summary judgment is that Murphy's Title VII and FMLA retaliation claims fail because the DOC terminated Murphy for

---

[9] The Court stresses that the litigation against Pettiford was ongoing when he recommended Murphy's termination.  The Court therefore rejects the District's argument that there was a several-year gap between Sheen's protected activity and the DOC's allegedly discriminatory act.  <u>See</u> Reply at 5–6.  The Court similarly rejects the District's suggestion that one must be a named party in a lawsuit to engage in protected activity under Title VII.  <u>See</u> <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173–76 (2d Cir. 2005) (holding that volunteering to be a witness in a Title VII lawsuit constitutes protected activity).

[10] It is possible that the District could point to the fact that Sheen was deposed after Murphy's termination as some—albeit weak—evidence that the DOC's stated reasons for firing Murphy were not pretextual.

legitimate, nondiscriminatory reasons—he made inappropriate comments to Walker and had previously been disciplined for using inappropriate language around inmates.  Mem. in Supp. of Mot. at 9.  Murphy argues in opposition that these stated reasons were pretext and that he was actually fired for exercising, or being perceived to exercise, his statutory rights under Title VII and the FMLA.  See Opp'n at 6, 9–10.  Having resolved the District's initial challenges to Murphy's retaliation claims, the Court "must resolve one central question: Has [Murphy] produced sufficient evidence for a reasonable jury to find that the [District]'s asserted non-discriminatory reason was not the actual reason [Murphy was fired] and that the [District instead] intentionally discriminated against [him] . . . ?"  Brady, 520 F.3d at 494.  And after careful review, the Court concludes the answer to that question is "yes" when considering Murphy's Title VII retaliation claim but "no" when considering his FMLA retaliation claim.

First, with regards to his Title VII claim, Murphy has produced several pieces of evidence that a jury could rely on in ruling that Pettiford recommended Murphy's termination due to Sheen's participation in the lawsuit against Pettiford and the DOC.  Sheen's allegations against Pettiford, including that he would sexually proposition her "approximately eight times per shift" for over a year, are serious.  Brokenborough Compl. ¶¶ 138–42.  Sheen's pursuit of these claims both internally with the DOC, id. ¶ 140, and externally as part of a publicly filed lawsuit provides ample evidence for a jury to find that Pettiford resented Sheen.  The District has also never contested Murphy's implied claim that Pettiford knew about Murphy's and Sheen's relationship.  See Am. Compl. ¶ 18; see also Letter of Determination at 13 (Sheen's statement to OHR that "'everyone' in the jail knew about" her relationship with Murphy).  And the fact that the lawsuit was ongoing

at the time Pettiford recommended Murphy's termination and Sheen's deposition would occur roughly two months later provides further support for Murphy's theory of retaliation.[11]

In addition to submitting ample evidence in support of his retaliation theory, Murphy also submitted evidence that a reasonable jury could use to determine that the DOC's stated reasons for firing Murphy were pretextual.  Regarding his infraction for using profane language around inmates, see Letter of Counseling re: Inappropriate Behavior at 1, Murphy testified that such behavior was common, yet only he was reprimanded by Pettiford, Excerpts of Robert Murphy Dep. Tr. 206:4–21 ("Twenty-five years of corrections and you write up a supervisor for cussing. It was unheard of. . . .  The executive level down to the probationary officer used profanity, but you write me up. . . .  I'm the only supervisor, only officer that I know, that's ever been written up for cussing at inmates.").  The District does not respond to this allegation, which, if accepted, calls into question the DOC's true reasons for disciplining and terminating Murphy.  See Geter v. U.S. Gov't Publ'g Off., 436 F. Supp. 3d 227, 239 (D.D.C. 2020) (noting that evidence that an employee was singled out for harsh treatment can support an inference of pretext).

Murphy also alleges that his termination violated the DOC's internal policies since he was fired "without benefit of an objective and comprehensive investigation."  Opp'n at 7.  The DOC internal policies that Murphy includes as an exhibit to his opposition brief do suggest that allegations of harassment will be investigated by an EEO Officer and that "[e]ach employee against whom an adverse action has been proposed will be entitled to a reasonable amount of official time to prepare his or her response," Ex. 2 [ECF No. 45-1] at 9–11, neither of which happened in

---

[11] The record does not specify, and the parties do not discuss, whether Pettiford and the DOC knew when Sheen would be deposed at the time Murphy was fired.  Even if they did not know the exact date of Sheen's deposition, however, the docket in the Brokenborough litigation indicates that Pettiford and the DOC would have been aware that Sheen—Female Witness #1 in the lawsuit—would be deposed sometime around the summer of 2015.  See Min. Order, Apr. 13, 2015, Brokenborough v. Dist. of Columbia, 13-cv-1757 (stating discovery would close in August 2015 and defendants' dispositive motion would be due in September).

Murphy's case, see Request for Termination (requesting Murphy's termination on the same day as Walker's complaint without any indication Pettiford spoke to Murphy first).  According to the District, Pettiford's investigation of Walker's claims was sufficient, Reply at 3–4, and the DOC's policies do not apply since Murphy does not contest he asked Walker whether she was "a dom or a femme" and since Murphy's termination was also based on his comments about the Deputy Warden and his past discipline, id. at 4–5.  The Court need not resolve this dispute now, but when viewing the evidence in the light most favorable to Murphy, it is at least plausible that his termination did not conform with the DOC's policies, which again, if shown, would provide additional evidence of pretext.  See McIntyre v. Peters, 460 F. Supp. 2d 125, 138 (D.D.C. 2006) ("[D]efendant's failure to follow its own policy . . . when viewed in light of plaintiff's other evidence of pretext, raises a credibility question that is properly left to the jury.").  As such, upon consideration of both the several pieces of evidence Murphy submitted in support of his retaliation theory and the evidence Murphy submitted indicating that the DOC's reasons for firing him were pretextual, the Court concludes that whether Murphy's termination violated Title VII rests on genuinely disputed factual issues.[12]

The Court reaches a different conclusion regarding Murphy's FMLA retaliation claim.  As an initial matter, the Court rejects the District's assertion that Murphy "has dropped from his case any assertion that he was terminated for his April 2, 2015 leave request in violation of the FMLA."  Reply at 4.  Although the Court agrees with the District that Murphy could have more clearly and

---

[12] While a reasonable jury could determine that the actual reason for Murphy's termination was Pettiford's belief that Murphy was engaged in Title VII protected activity, the Court does not suggest that a jury must reach this conclusion.  The allegations regarding Murphy's misconduct—many of which are undisputed, see Resp. to Def.'s SUMF ¶¶ 7–18—could certainly lead a reasonable jury to conclude that there were entirely legitimate reasons for Pettiford to recommend Murphy's termination.  That Pettiford could have recommended Murphy's termination for legitimate reasons does not mean that he did, however, and Murphy has produced sufficient evidence for his Title VII retaliation claim to survive summary judgment at this time.

fulsomely defended his FMLA retaliation claim, his brief does indicate Murphy's intent to continue litigating the issue.  See Opp'n at 6 ("[The DOC] continued to ignore the April 2 Request until [it] fired [Murphy] in retaliation.").  Nonetheless, Murphy has not produced sufficient evidence to withstand the District's summary judgment motion.

The main pieces of evidence in support of Murphy's FMLA retaliation claim are that he submitted an application for FMLA leave on April 2, Apr. FMLA Request, and then Pettiford recommended his termination on June 11, Request for Termination.[13]  Unlike with Murphy's Title VII claim, where there are several obvious reasons to believe Pettiford was aware of Sheen's participation in the litigation against him, Murphy does not point to any facts connecting his FMLA application with Pettiford or those who approved his termination.  There are also facts pointing toward the opposite conclusion.  For instance, it is undisputed that Murphy returned to work after submitting his FMLA application, Resp. to Def.'s SUMF ¶ 6, and Murphy's FMLA interference claim is premised on the fact that the District never processed or took any action on his request even though Murphy submitted it months before his termination.  In the absence of any evidence that Pettiford or those who approved Pettiford's termination request were aware of Murphy's intent to take FMLA leave, Murphy's FMLA retaliation claim cannot survive summary judgment.

That Murphy was terminated a few months after he submitted his request for FMLA leave does not require the Court to reach a different conclusion.  The D.C. Circuit recently noted that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  Pueschel v. Chao,

---

[13] The Court notes that Murphy's June FMLA request does not provide any support for his claims since Murphy submitted that request on June 22, after Pettiford recommended Murphy's termination and Murphy's termination letter was finalized.  See Request for Termination; Termination Letter; Am. Compl. ¶ 15.

955 F.3d 163, 167 (D.C. Cir. 2020) (alteration in original) (quoting <u>Clark Cnty. Sch. Dist. v.</u> <u>Breeden</u>, 532 U.S. 268, 273 (2001)).  The D.C. Circuit further noted that "three- and four-month intervals [had previously been] found insufficient to infer causality between the protected activity and the adverse employment action."  <u>Id.</u>; <u>accord</u> <u>Akosile v. Armed Forces Ret. Home</u>, 141 F. Supp. 3d 75, 95–96 (D.D.C. 2015).   While the slightly-over-two-month span between when Murphy submitted his application and when Pettiford recommend his termination may be close enough to create some inference of causality, that inference is not sufficiently strong to overcome the evidence the District presented in favor of its nondiscriminatory explanation for Murphy's termination.[14]

In short, given that Murphy has conceded he used inappropriate language around inmates, Resp. to Def.'s SUMF ¶¶ 7–8, and asked a subordinate whether she was "a dom or a femme,"[15] <u>id.</u> ¶ 17 (citation omitted), Murphy needed to produce strong evidence in his favor for a reasonable jury to conclude his termination was for impermissible reasons.  Murphy met that need regarding his Title VII retaliation claim by pointing to his relationship with Sheen and her significant participation in the ongoing lawsuit against the District, the DOC's Director, and Pettiford—the supervisor who both reprimanded Murphy and later recommended his termination.  That Murphy happened to file an FMLA application months before he was terminated which was never acted on, however, is not persuasive enough to save his FMLA retaliation claim.

---

[14] The Court reaches this conclusion even though Murphy was also reprimanded for inappropriate behavior on May 12, a few weeks closer in time to his FMLA application.  Letter of Counseling re: Inappropriate Behavior at 1.

[15] Although Murphy claims that he used this language "based on [his] training . . . to establish how [Walker] identified to see if she was, in fact, being targeted because of her preference," Excerpts of Robert Murphy Dep. Tr. [ECF No. 44-12] at 77:7–17, he has produced no independent evidence demonstrating that he was trained to ask such an inappropriate question.  Though Murphy may pursue this defense when litigating his Title VII retaliation claim, it is not sufficient to preclude summary judgment on his FMLA retaliation claim.

## Conclusion

For the foregoing reasons, the Court will grant the District's summary judgment motion with respect to Murphy's FMLA and DCHRA retaliation claims. The Court will abstain from deciding whether to grant the District's motion with respect to Murphy's ADA failure-to-accommodate claim at this time. The parties shall submit additional briefing discussing whether Murphy's ADA claim should be dismissed for failure to request a reasonable accommodation. The Court will deny the District's motion with respect to Murphy's FMLA and DCFMLA interference claims for the District's alleged failure to respond to Murphy's April FMLA application and numerous questions about that application. The Court will also deny the District's motion with respect to Murphy's Title VII claim that the District terminated Murphy for his support, perceived or actual, for Sheen's participation in litigation against Pettiford, the DOC's Director, and the District. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 2, 2022