**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT MURPHY, | ) |
|     Plaintiff, | ) |
| v. | )    Civil Action No. 18-cv-1478 (JDB) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
|     Defendant. | ) |
| _____ | ) |

**PLAINTIFF'S SUPPLEMENTAL SUMMARY JUDGMENT BRIEF**
**REGARDING PLAINTIFF'S DISPUTED ADA CLAIM**

Comes Now Plaintiff, Robert Murphy, by and through the undersigned counsel, and respectfully submits its brief Supplemental Memorandum in response to this Court's Memorandum Opinion dated March 2, 2022. (Docket 48) According to the Court's Memorandum at 9-11, the court is particularly interested in the extent to which plaintiff's Americans with Disability Act ("ADA") claim in this matter should be dismissed on summary judgment grounds. Following below is Plaintiff's brief argument and analysis.

**ARGUMENT**

**GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING PLAINTIFF'S ADA CLAIM.**

*Citing Waggel v. George Washington University*, 957 F.3d 1364 (D.C. Cir. 2020), this court "recognizes that an FMLA claim can also constitute an ADA accommodation request, specifically putting an employer on notice that the employee was simultaneously requesting an accommodation under the ADA. The *Waggel* court notes that the application must give the employer some notice that the employee is intending to take advantage of the statutory entitlements of both the FMLA and the ADA. This court noted that a request for a medical leave of absence, standing alone, is insufficient to make out a request for accommodation. *Flemings v.*

*Howard University*, 198 F. 3d 857, 861-862. (D.C. Cir. 1999). And further, that a request for an accommodation "does not have to be in a writing . . . . or formally invoke the magic words 'reasonable accommodation.'" *Lee v. District of Columbia*, 920 F. Supp. 2d 127, 136 (D.D.C.). But the request must make it "clear that the employee wants assistance for his or her disability." *Id. quoting Loya v. Sebelius*, 840 F. Supp. 2d 245, 259, n. 15 (D.D.C. 2012)

Against this backdrop, the District of Columbia Office of Human Rights' September 12, 2016, Determination Letter provides reference as does several brief statements in Plaintiff's deposition provides needed clarity to this issue. The Letter notes the Complainant's Response to Defendant as follows:

> Complaint asserts that prior to April of 2015, he discussed his Stage 4 kidney failure with the Major. (Pettiford). Complainant explained to the Major that his doctor instructed him to request FMLA leave in order to properly recover. The Major instructed him to meet with Respondent's ADA Coordinator, who instructed him to complete the DCFMLA packet. Plaintiff turned in a completed application shortly thereafter in April 2015.
>
> D.C. Motion for Summary Judgment at Ex. 10, OHR Letter of Determination, Complainant Rebuttal at p.6

Plaintiff confirmed his "consultation" with Ms. Taylor Jones regarding his health concerns in his deposition:

> When I got sick again, I had a heart attack. And that last heart attack in April, my doctor said that because of my condition, it was -- it was best for me to go out on FMLA and start my proceedings for -- to go out on disability at that time. And that's why he requested FMLA.
> Q. That's April 2, 2015?
> A. Yes. I don't know if it was April 2. I just know it was around April 2015.
> Q. Okay. So that consultation could have happened in March, and then -- it could have happened March 31, for example. And then you made the request on April 2. Is that what you mean by, it happened 13 around that time?
> A I can't be accurate about that at this time."
>
> Plaintiff's Opposition to Defendant's Motion for Summary Judgment at Ex.11, Murphy Deposition Tr, at 24-25.

Plaintiff later confirmed that he met with Ms. Taylor in March 2015. *Id*. at 146 ("A No, I met with Ms. Taylor Jones sometime in March. Q Sometime in March? A Yes"). What happened

2

thereafter in terms of Plaintiff's FMLA application is disputed. Plaintiff confirms, however, the heretofore undisputed OHR statement in an independent Declaration. Exhibit 1. He recalls his communication with Major Pettiford and Ms. Jones prior to April 2, 2015. He recalls her sensitivity to his health concerns, her mentioning of her own serious health condition and meeting for a period.[1] He affirmed that during that meeting she discussed short- and long-term disability, FMLA, and his interest in working a light duty assignment. She also provided him with an FMLA packet. After his illness in early April, upon his return to work, Mr. Murphy was in fact reassigned to Transport, a lighter duty. However, during that time he became ill again and required leave. Upon his return in May 2015, Major Pettiford assigned him back to the DC jail.

These particular facts, confirmed by the Mr. Murphy's Declaration, demonstrate two significant points. First, that he apprised Major Pettiford about his stage 4 kidney failure prior to April 2, 2015. Secondly, that subject to Mr. Murphy notifying Major Pettiford about his serious health conditions, Plaintiff met with the ADA coordinator and discussed his range of concerns, specifically that he wanted and needed assistance with his disability. While not in writing, the circumstances surrounding Murphy's health conditions and his conditions were well known to management which for a short period resulted in Plaintiff being given a lesser duty assignment.

The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions or privileges of employment." 42 U.S.C. § 12112(a). Indeed, the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). In this instance, without reason, Major Pettiford ended Murphy's temporary accommodation (Transport

Assignment) without any explanation or justification, nevertheless that it was a hardship to the Agency.

Based upon Plaintiff's communications with Ms. Jones prior to April 2, 2015, Mr. Murphy sought both FMLA and ADA benefits simultaneously, which is partially confirmed by his reassignment near that meeting to a lighter duty assignment. In this connection, as indicated by Mr. Murphy's supplemental Declaration, the record demonstrates that the Defendant Employer here had some notice that Mr. Murphy's health condition was precarious, to say the least, and that his concerns were not isolated to his FMLA application process alone. Plaintiff urges that the FMLA application process be considered in the context of Mr. Murphy's discussion with Major Pettiford about his stage 4 kidney status, Pettiford's referral of Mr. Murphy to Ms. Jones regarding employment options given his health, Ms. Jones' meeting and discussion with Mr. Murphy prior to April 2, 2015 for about an hour about his health and employment situation, Ms. Jones' instruction to Mr. Murphy regarding the FMLA submission, and the Agency's reassignment of Mr. Murphy to light duty following his return to work after his early April FMLA application.

Moreover, Mr. Murphy's application and notation of his "serious health condition" resulting in the Agency's knowledge thereof, is consistent with Defendant's temporary re-assignment of Plaintiff to a light duty Transport officer. The Agency's preliminary brief accommodation and sudden ending of it effectively denied his request for light duty and constituted a denial of reasonable accommodations. If Mr. Murphy was notably ill before April 2, 2015, suffered an illness on the job when he returned to work in April 2015 (which required an ambulance transfer him to the hospital), it was oxymoronic that Defendant should have returned him to the jail and its harsh working conditions which rendered his health predictably and extremely more vulnerable. More importantly, this record demonstrates that Mr. Murphy

communicated his health concerns to the Agency via Ms. Taylor in later March 2015, after already disclosing a major health concern to the Major. It also shows that a "consultation did in fact occur at that time regarding an obvious effort by Plaintiff to obtain assistance with his disability. Mr. Murphy acted in accordance with his instructions; he made an oral request on one hand for a less demanding assignment and a formal FMLA request.

Notably, as per his FMLA leave request, according to the EEOC, a leave of absence request may also constitute a reasonable accommodation request under the ADA, even though a leave may mean that the employee is not working. As explained by the EEOC, leave qualifies as a reasonable accommodation "when it enables an employee to return to work following the period of leave." Employees with disabilities may need leave for variety of reasons, including recuperation from an illness with a manifestation of a disability. See 2002 EEOC and 2016 EEOC guidance describing leave as a reasonable accommodation.

## **CONCLUSION**

In sum, Mr. Murphy's supplemental record indicates that his intentions in early April 2015 in his dealings with Defendant's management and Ms. Jones were to maximize any support for his deteriorating health condition and work status, which included both FMLA and the ADA requests. Also, Plaintiff took the steps that he best knew and understood, subject to guidance from the Agency, to achieve that support. These facts demonstrate that Plaintiff communicated his concerns to the proper authorities for reasonable accommodations and intended that his health-related concerns be effectively and simultaneously considered under the ADA. Accordingly, this court should not dismiss Mr. Murphy's ADA claim.

Respectfully submitted,

*/s/Donald M. Temple*
Donald M. Temple #408749
1310 L Street NW, Suite 750
Washington, DC 20005
Tel: (202) 628-1101
Fax: (202) 628-1149
dtemplelaw@gmail.com
*Attorney for Plaintiff*