## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ROBERT MURPHY,**

　　　**Plaintiff,**

　　　**v.**                                         Civil Action No. 18-1478 (JDB)

**DISTRICT OF COLUMBIA,**

　　　**Defendant.**

### <u>MEMORANDUM OPINION</u>

　　Plaintiff Robert Murphy alleges that his former employer, the District of Columbia Department of Corrections ("DOC")—and, by extension, defendant District of Columbia— violated the Americans with Disabilities Act ("ADA") and several other statutes by failing to accommodate his disabilities, interfering with his right to medical leave, and terminating him for impermissible reasons.  See <u>Murphy v. Dist. of Columbia</u>, Civ. A. No. 18-1478 (JDB), 2022 WL 612710, at *1 (D.D.C. Mar. 2, 2022).   The District moved for summary judgment on all of Murphy's claims.  See Mem. of P. & A. in Supp. of Def's Mot. for Summ. J. [ECF No. 44] at 1. The Court granted in part and denied in part the District's motion in a prior Memorandum Opinion and directed the parties to submit supplemental briefing on one remaining issue: whether a reasonable jury could conclude that Murphy actually requested an accommodation for his disabilities under the ADA.  <u>Murphy</u>, 2022 WL 612710, at *1, *6.  For the reasons stated below, the Court answers that question in the affirmative and will accordingly deny the District's request for summary judgment on Murphy's ADA claim.

**Factual Background**[1]

Murphy was employed by the DOC from 1990 to July 10, 2015.  Murphy, 2022 WL 612710, at *1.  Murphy alleges that he informed his employer in January 2015 that he had been diagnosed with stage five kidney failure, hypertension, and diabetes.  Pl.'s Statement of Disputed Material Facts [ECF No. 45] ¶ 1.  After Murphy suffered a heart attack in April 2015, Murphy's doctor advised him to request medical leave.  Resp. to Def.'s Statement of Undisputed Material Facts [ECF No. 45] ¶ 2 ("Resp. to Def.'s SUMF"); see Decl. of Robert Murphy [ECF No. 49-1] ¶ 2 ("Murphy Decl.").  Murphy also claims that he spoke with his supervisor, Major Joseph Pettiford, about his health concerns and that Pettiford directed him to speak with the ADA Coordinator, Taylor Jones.  Murphy Decl. ¶¶ 1–3.  Murphy alleges that he and Jones met and discussed short- and long-term disability status, as well as the possibility of a reassignment to a lighter duty station.  Id. ¶ 3.  After their discussion, Jones gave Murphy a Family Medical Leave Act ("FMLA") application, id. ¶ 4, which Murphy's then-fiancée, now wife, Ja'net Sheen submitted on his behalf in April 2015, Resp. to Def.'s SUMF ¶ 3.[2]  The DOC did not respond to the April FMLA application that Sheen submitted.  Murphy, 2022 WL 612710, at *1.

Murphy returned to work after using his accrued sick leave.  Murphy, 2022 WL 612710, at *1, *9 n.5; see Murphy Decl. ¶ 5.  Murphy alleges that he was temporarily reassigned to a lighter work assignment under Captain Orlando Harper, whom Murphy alleges called for an ambulance after he suffered a stroke on the job.[3]  Murphy Decl. ¶ 5.  Murphy then claims that, when he

---

[1] The Court set forth the factual and procedural background of this case at length in its prior Memorandum Opinion, Murphy, 2022 WL 612710, at *1–3, and the discussion here will be abbreviated.

[2] The parties dispute whether Sheen submitted a completed FMLA application that contained the medical certification necessary for processing.  Murphy, 2022 WL 612710, at *1.  But that issue is not relevant to the narrow question presented here.  See id. at *6–9 (denying District's motion for summary judgment on this basis).

[3] The District disputes whether Murphy ever worked with Harper.  Suppl. Br. in Supp. of District of Columbia's Mot. for Summ. J. [ECF No. 50] ("D.C.'s Suppl. Br.") at 3 ("Captain Harper stopped working for DOC on August 17, 2012.").

returned to work following his stroke, he was transferred back to his regular post at the D.C. Jail. Id.  Murphy received a termination letter on June 24, 2015, and his termination became effective on July 10, 2015.  Murphy, 2022 WL 612710, at *2.

## Legal Standard

A motion for summary judgment shall be granted when the movant has demonstrated "that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law."  Murphy, 2022 WL 612710, at *3 (quoting Citizens for Resp. & Ethics in Wash. v. U.S. Postal Serv., 557 F. Supp. 3d 145, 151 (D.D.C. 2021)); accord Fed. R. Civ. P. 56(a).  When determining whether there is a genuine dispute of material fact, the Court must accept all evidence presented by the nonmoving party as true and make all reasonable inferences in favor of the nonmoving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), unless the record "blatantly contradict[s]" the nonmoving party's assertions such "that no reasonable jury could believe it," Scott v. Harris, 550 U.S. 372, 380 (2007).  But the nonmoving party "may not rest upon . . . mere allegations or denials [and instead] must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).  The nonmoving party must also "establish more than the 'mere existence of a scintilla of evidence' in support of its position."  Smith v. Ergo Sols., LLC, Civ. A. No. 14-382 (JDB), 2019 WL 147718, at *6 (D.D.C. Jan. 9, 2019) (quoting Anderson, 477 U.S. at 252).

## Analysis

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  To successfully claim that an employer violated the ADA by failing to

3

accommodate an employee's disability, the employee must demonstrate that: (1) the employee had a disability as defined by the ADA; (2) the employer had notice of the disability; (3) the employee could, when provided with reasonable accommodations, perform the essential functions of employment; and (4) the employer refused to provide reasonable accommodations.  Murphy, 2022 WL 612710, at *4 (citing Hill v. Assocs. for Renewal in Educ., Inc., 897 F.3d 232, 237 (D.C. Cir. 2018)).  At the fourth prong of this analysis, there is "[a]n underlying assumption . . . that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C. Cir. 1999).[4]

Given the statutory differences between the FMLA and the ADA,[5] an application for medical leave under the FMLA does not automatically constitute a request for a reasonable accommodation under the ADA.  See Murphy, 2022 WL 612710, at *5 (citing Waggel, 957 F.3d at 1373).  An employee can put an employer on notice that the employee is requesting both FMLA medical leave and an ADA reasonable accommodation, however, see id., by using language in the FMLA application that signals an intent to take advantage of both the FMLA and ADA or by conveying that intent to the employer through other communications, see Waggel, 957 F.3d at 1373 n.2; see also Lee v. Dist. of Columbia, 920 F. Supp. 2d 127, 136 (D.D.C. 2013) (explaining

---

[4] The D.C. Circuit has noted that "there may well be cases where the plaintiff's need for an accommodation is so apparent that the defendant must offer one regardless of whether the plaintiff requested it."  Chenari v. George Wash. Univ., 847 F.3d 740, 748 (D.C. Cir. 2017).  Neither party has claimed that this is such a case, so the Court need not decide the issue.  Nevertheless, the Court notes its doubts about whether this case would qualify for that exception. Cf. Waggel v. George Wash. Univ., 957 F.3d 1364, 1372 (D.C. Cir. 2020) (holding that a plaintiff's cancer diagnosis did not require an employer to offer an accommodation in absence of a request because "[n]otice of a disability does not ordinarily satisfy the ADA's request requirement, which performs the independent function of informing an employer of the limitations imposed by a disability and the nature of the accommodation needed to remedy those limitations").

[5] The FMLA entitles "an eligible employee" to leave because of, among other things, "a serious health condition that makes the employee unable to perform the functions of [his or her] position."  29 U.S.C. § 2612(a)(1)(D).  The ADA, on the other hand, requires employers to offer a reasonable accommodation to a qualified individual who could perform the essential functions of the relevant employment position with or without a reasonable accommodation.  42 U.S.C. § 12111(2), (8); id. § 12112(a), (b)(5)(A).

that a "request for a reasonable accommodation does not have to be in writing . . . or formally invoke the magic words 'reasonable accommodation.'" (internal quotation marks omitted) (quoting Loya v. Sebelius, 840 F. Supp. 2d 245, 259 n.15 (D.D.C. 2012)).

In its previous Memorandum Opinion, the Court questioned whether Murphy had ever requested a reasonable accommodation under the ADA, an issue that neither party had addressed in detail. Murphy, 2022 WL 612710, at *4. The Court, therefore, instructed the parties to submit supplemental briefs addressing whether Murphy had made it clear to the DOC—either through the FMLA application itself or other communications—that he was seeking an accommodation under the ADA. Id. at *4–6. In his supplemental brief and in a new declaration attached as an exhibit to that brief, Murphy contends that he sought two different accommodations that were effectively denied: temporary leave and reassignment to a lighter duty station. See Pl.'s Suppl. Summ. J. Br. Regarding Pl.'s Disputed ADA Claim [ECF No. 49] ("Murphy's Suppl. Br.") at 4–5; Murphy Decl. ¶¶ 2–3, 5. The Court will consider each accommodation request in turn.

## I.   **Temporary Leave**

Murphy first argues that, between requesting time off in his FMLA application and the related discussion he had with Jones about "short-term and long-term disability" prior to submitting the FMLA application, see Murphy Decl. ¶¶ 3–4, his FMLA request also functioned as a request for an ADA accommodation, see Murphy's Suppl. Br. at 4–5.

The District makes three arguments in response. The District first appears to dispute whether medical leave can ever constitute a reasonable accommodation under the ADA. See D.C.'s Suppl. Br. at 2–3. The District similarly claims that Murphy was not entitled to relief under the ADA because he could not perform the essential functions of his position. Id. at 2 & n.1. The District's final argument is that, even assuming a request for leave can constitute a reasonable

accommodation under the ADA and Murphy could perform the essential functions of his position, Murphy has not submitted sufficient evidence for a reasonable jury to find he requested such an accommodation.  See id. at 3–4.

To the extent that the District disputes whether medical leave can constitute an accommodation under the ADA, the District is correct in noting that—as the Court explained previously—an employee seeking medical leave under the FMLA is "by nature arguing that he cannot perform the functions of the job," whereas an employee seeking an accommodation under the ADA is arguing that he could perform the functions of the job if given an accommodation. Murphy, 2022 WL 612710, at *5 (quoting Acker v. Gen. Motors, L.L.C., 853 F.3d 784, 791–92 (5th Cir. 2017)).  Hence, not all applications for leave under the FMLA automatically qualify as requests for an ADA accommodation.  But, as the Court also explained previously, there may be circumstances where an employee's FMLA application "could put an employer on notice that the employee was also requesting an accommodation under the ADA."  Id.; see also 29 C.F.R. § 825.702(c)(2) (illustrating that there are instances where a request for FMLA leave can constitute a request for a reasonable accommodation).  Additionally, the Court noted that a temporary "leave of absence may constitute a reasonable accommodation under the ADA."  Murphy, 2022 WL 612710, at *5 (quoting Hancock v. Wash. Hosp. Ctr., 13 F. Supp. 3d 1, 11 (D.D.C. 2014)); see also Schobert v. CSX Transp. Inc., 504 F. Supp. 3d 753, 790 (S.D. Ohio 2020) (concluding that an FMLA request can serve as a request for reasonable accommodation when leave would "allow [an employee] to address an ongoing ailment that plausibly meets the definition of 'disability,' and that, if they took the time off as planned, they could continue to perform the essential functions of their job").  The Court will not spend more time restating its prior conclusions here.

The District's second argument—that Murphy was ineligible for an ADA accommodation because he was not capable of performing the essential functions of his employment—is similarly unsuccessful.  See D.C.'s Suppl. Br. at 2–3.  The District supports its claim by citing Murphy's deposition, in which he conveyed his doctor's opinion, prior to filing the FMLA application, that Murphy's working career was over.  Ex. 2 to D.C.'s Suppl. Br. [ECF No. 50-2] ("Murphy Dep.") at 20:17–22 ("[My doctor] didn't think that I could . . . I couldn't do the job anymore.").  It may well be the case that Murphy's ADA claim will eventually fail because he cannot show he was eligible for the statute's benefits.  But the Court will not reach that conclusion now for two independent reasons.  First, the District raised this argument for the first time in its supplemental brief, and Murphy has not been able to respond.  Cf. Hammond v. D.C. Record Ctr., 593 F. Supp. 2d 244, 249 (D.D.C. 2009) (noting that courts are reluctant to dismiss claims for reasons that have not been fully briefed by the parties).  Second, when viewing the evidence in Murphy's favor, a reasonable jury could conclude that he was capable of performing the essential functions of his employment.  Although Murphy's doctor may have believed that Murphy could not complete his job, he returned to work after submitting his FMLA application and continued to work at least intermittently for the next few months.  See Murphy, 2022 WL 612710, at *1.  Summary judgment is not appropriate in these circumstances.

Finally, the question becomes whether Murphy has submitted sufficient evidence for a reasonable jury to conclude that the District was on notice that he was requesting leave under both the ADA and FMLA.  The Court has previously noted that Murphy's FMLA application "never identifies Murphy as an individual with a disability or otherwise suggests that he was requesting an accommodation under the ADA," undermining his claim that his FMLA request also put his employer on notice regarding an ADA accommodation.  See Murphy, 2022 WL 612710, at *5.

But Murphy has now submitted a declaration swearing that he and Jones spoke about "short-term and long-term disability" and that Jones gave him an FMLA application to complete.  Murphy Decl. ¶¶ 3–4.  This declaration is, admittedly, "self-serving."  D.C.'s Suppl. Br. at 3.  And Murphy never alleges that he told Jones he intended for his FMLA application to also function as an ADA accommodation request or that Jones told Murphy the District would consider his FMLA application to be an ADA accommodation request.

But "a 'party's own sworn testimony can alone defeat summary judgment.'"  Murphy, 2022 WL 612710, at *7 (quoting United States v. $17,900 in U.S. Currency, 859 F.3d 1085, 1092 (D.C. Cir. 2017)).  And as the Court previously acknowledged, even if his "recollection of events is inherently self-serving," Murphy, 2022 WL 612710 at *7, "whether Murphy is to be believed is a question that should not be resolved via summary judgment," id.; see Greene v. Dalton, 164 F.3d 671, 674 (D.C. Cir. 1999) (concluding that the district court "quite clearly invaded the province of the jury" by granting a summary judgment motion in the face of a sworn affidavit).  Murphy's declaration indicates that he informed the DOC of his health conditions and discussed disability assistance with the ADA coordinator prior to the filing of the FMLA application.  See Murphy Decl. ¶¶ 1–3.  Viewing Murphy's statements in the light most favorable to him, a reasonable jury could find that the District was on notice of Murphy's intent for his FMLA application to constitute a request for leave under both the FMLA and the ADA.  Cf. Schobert, 504 F. Supp. 3d at 792, 795 (denying employer's motion to dismiss employees' failure-to-accommodate claims in part because employees "plausibly alleged that they have a disability, that they requested FMLA leave, that [their employer] knew about those requests, and that, on the facts here, such requests for leave may double as requests for a reasonable accommodation"); Mattison v. Md. Transit Admin., Civ. No. JKB-21-00168, 2021 WL 4503566, at *8 (D. Md. Oct. 1, 2021) (denying employer's motion to

dismiss an ADA failure-to-accommodate claim because the employee "sufficiently alleged that he requested an [ADA] accommodation, albeit in the form of a request for intermittent FMLA leave and notification to his supervisor that he was taking such leave").  Hence, Murphy's statements regarding his conversation with the ADA coordinator create a genuine issue of material fact requiring denial of the District's summary judgment motion.

## II.   Reassignment to a Lighter Duty

Murphy also seems to suggest that the District failed to accommodate his disability in a second, independent way.  See Murphy's Suppl. Br. at 3–4; Murphy Decl. ¶¶ 3, 5.  Murphy swears that he and Jones discussed Murphy "being assigned to a less stressful work environment due to [his] health conditions," Murphy Decl. ¶ 3, and that Murphy then briefly received this accommodation when he was reassigned—temporarily—to the Transport team under Harper in late April or May 2015, id. ¶ 5.  Murphy's supplemental brief references these events primarily as evidence bolstering his claim that the District knew that he intended for his FMLA application to double as an ADA accommodation request.  See, e.g., Murphy's Suppl. Br. at 4 ("[Murphy] urges that the FMLA application process be considered in the context of . . . the Agency[] reassign[ing] [him] to light duty following his return to work after his early April FMLA application.").[6]  But Murphy also appears to argue that, by assigning him back to his regular duty station, the District discriminated against him in violation of the ADA, giving rise to a separate failure-to-accommodate claim.  See id. at 3–4 ("The Agency's preliminary brief accommodation and sudden ending of it effectively denied his request for light duty and constituted a denial of reasonable accommodations.").

---

[6] As discussed above, there is sufficient evidence for that claim to survive summary judgment even without considering Murphy's additional allegations about his reassignment.

The District disputes Murphy's factual allegations, arguing in particular that Murphy's assertions regarding Harper cannot be true because Harper stopped working for the DOC in 2012. D.C.'s Suppl. Br. at 3; see also Notification of Personnel Action [ECF No. 50.1] (recording Harper's separation from the DOC in 2012); Allegheny County Warden's Biography, https://www.alleghenycounty.us/jail/staff/warden.aspx (last visited July 7, 2022) (indicating that Harper has been warden of the Allegheny County Jail in Pennsylvania since 2012).  And while courts should refrain from making "credibility determinations or weigh[ing] the evidence" when considering motions for summary judgment, Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), a court may "lawfully put aside testimony that is so undermined as to be incredible," Chenari, 847 F.3d at 747 (quoting Robinson v. Pezzat, 818 F.3d 1, 10 (D.C. Cir. 2016)).  At the same time, even assuming that Murphy is mistaken about working for Harper in 2015, Murphy may still have requested reassignment to a different duty station due to his health problems, received that accommodation, and then had that accommodation effectively denied when he was assigned back to his original duty station.  Murphy's credibility on that sequence of events is, of course, undercut by the Harper issue.  Ultimately, however, the Court need not resolve this dispute because Murphy's allegations cannot support an ADA failure-to-accommodate claim for a more fundamental reason: they are outside the scope of Murphy's complaint.

Murphy's amended complaint alleges that the District violated his right to an accommodation under the ADA "by consistently refusing [his] attempts to request necessary medical leave." Am. Compl. [ECF No. 10] ¶ 25.  Murphy's declaration, attached to a supplemental brief opposing summary judgment, marks the first time he has suggested that the District denied him a reasonable accommodation by failing to permanently reassign him to a different duty station. Because Murphy's complaint alleges that the District violated his right to an accommodation under

the ADA only by denying his request for time off, Murphy cannot now claim that the District also discriminated against him by effectively denying his request for a different duty station.  <u>See, e.g.</u>, <u>Boykin v. Fenty</u>, 650 F. App'x 42, 44–45 (D.C. Cir. 2016) (per curiam) (affirming dismissal of claims that were not alleged in the operative complaint).  Hence, to the extent that Murphy intended for his declaration to support a new failure-to-accommodate claim, that intent fails.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court will deny the District's motion for summary judgment with respect to Murphy's April failure-to-accommodate claim under the ADA.


/s/<br>
────────────────────<br>
JOHN D. BATES<br>
United States District Judge

Dated:  <u>July 8, 2022</u>

11