UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT MURPHY,<br><br> Plaintiff,<br><br>  v.<br><br>DISTRICT OF COLUMBIA,<br><br> Defendant. | Civil Action No. 18-1478 (JDB) |

## MEMORANDUM OPINION & ORDER

Before the Court are two motions in limine: one filed by plaintiff Robert Murphy, and one filed by defendant the District of Columbia (the "District"). In 2018, Murphy brought this suit against the District alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act of 1964, the Family Medical Leave Act of 1993 ("FMLA"), the D.C. Family Medical Leave Act ("DCFMLA"), and the D.C. Human Rights Act of 1977. The allegations pertain to the District's failure to accommodate his disability, interference with his right to medical leave, and termination of his employment for impermissible reasons in 2015. After three rounds of dispositive motions and an unsuccessful attempt at mediation, the case is now headed for trial, which is set to begin on June 20, 2023. For the reasons explained below, the Court will deny Murphy's motion and grant in part and deny in part the District's motion.

1

**Background**[1]

## I. Factual Background

Murphy was employed by the D.C. Department of Corrections ("DOC") from 1990 to July 10, 2015.  Murphy I, 590 F. Supp. 3d at 179.  Murphy alleges that he informed DOC in January 2015 that he had been diagnosed with stage five kidney failure, hypertension, and diabetes.  Murphy II, 2022 WL 2643554, at *1.  Murphy then suffered a heart attack in April 2015, and Murphy's then-fiancée, Ja'net Sheen, submitted a request to DOC seeking extended leave under the FMLA on Murphy's behalf on April 2.  Murphy I, 590 F. Supp. 3d at 179.  Murphy claims DOC never responded to his FMLA application despite Murphy and Sheen following up several times.  Id.  The District claims Murphy did not submit the requisite medical certification from his doctor supporting the FMLA application until July 1, 2015, which Murphy denies.  Id.

Murphy returned to work after Sheen submitted the FMLA application, and on May 12, 2015, he received a reprimand letter from his supervisor, Major Joseph Pettiford, for using inappropriate language when speaking with inmates, which Murphy admits.  Murphy I, 590 F. Supp. 3d at 179.  On June 11, 2015, corrections officer Angela Walker submitted an internal complaint about Murphy.  Id.  She reported that her supervisor—Murphy's subordinate—was disrespectful and ordered her to perform tasks in a manner contrary to her orders and training.  Id.  Walker claimed that when she told Murphy about his subordinate's behavior, Murphy made inappropriate statements, "including asking Walker whether she was 'a dom or a femme,' saying 'Fuck the Deputy Warden,' and telling her that 'cussing and disrespect was the norm' and that she

---

[1] The Court assumes familiarly with these facts, see Murphy v. Dist. of Columbia ("Murphy I"), 590 F. Supp. 3d 175, 179–181 (D.D.C. 2022); Murphy v. Dist. of Columbia ("Murphy II"), Civ. A. No. 18-1478 (JDB), 2022 WL 2643554, at *1 (D.D.C. July 8, 2022), and will thus only briefly recite them here.

'would have to adapt to the environment.'" Id. (citation omitted). Murphy admits to asking Walker whether she was "a dom or a femme." Id. (citation omitted).

Later that day, Pettiford submitted a request to terminate Murphy. Murphy I, 590 F. Supp. 3d at 180. The request mentioned Murphy's use of inappropriate language with inmates and the report filed by Walker. Id. DOC approved the termination request on June 18, and an official letter of termination was issued the next day. Id. Murphy suffered another heart attack on June 18—the same day DOC approved his termination—and he was served with his termination letter on June 24. Id. His termination became effective on July 10, 2015. Id.

Murphy claims he was not fired for the reasons outlined in Pettiford's request for termination, but rather due to his relationship with Sheen. Murphy I, 590 F. Supp. 3d at 180. Sheen, who was also a corrections officer for DOC, filed a complaint with DOC in 2008 alleging that Pettiford harassed her. Id. Sheen was also a witness in Brokenborough v. District of Columbia, Civ. A. No. 13-1757 (TSC), a separate sexual harassment suit again the District, the DOC's Director, and Pettiford that was ongoing at the time Pettiford recommended Murphy's termination. Id. Sheen was deposed in Brokenborough in August 2015. Id.

## II. Procedural Background

Murphy brought this lawsuit in June 2018. See Compl. for Damages [ECF No. 1]. He later filed an amended complaint, lodging five claims against the District related to his request for medical leave and ultimate termination under the ADA, the FMLA, the DCFMLA, and Title VII. See Am. Compl. for Damages [ECF No. 10]. The District moved to partially dismiss Murphy's complaint, and the Court granted the motion in part in July 2019. Murphy v. Dist. of Columbia, 390 F. Supp. 3d 59, 72 (D.D.C. 2019). The District then moved for summary judgment on all remaining claims, and the Court granted that motion in part. Murphy I, 590 F. Supp. 3d at 196.

After further summary judgment briefing on one of the remaining claims, see Murphy II, 2022 WL 2643554, the live claims are now: a failure-to-accommodate claim under the ADA for the District's failure to respond to the April 2015 FMLA request (Count I); an interference claim under the FMLA and the DCFMLA for the District's failure to respond to the April 2015 FMLA request (Counts II and III); and a retaliation claim under Title VII for terminating Murphy due to his support of Sheen's participation in the lawsuit against Pettiford (Count IV).

The parties were referred to mediation in August 2022, see Aug. 1, 2022 Order [ECF No. 55], and in January 2023 the parties notified the Court that they had completed mediation and were unable to reach an agreement and thus requested a trial date, Joint Status Report [ECF No. 59]. The Court held a status conference on February 2, 2023 at which it set trial for June 20, 2023. Feb. 6, 2023 Min. Order.

On May 31, 2023, each party filed a motion in limine. See Pl.'s Mot. in Lim. [ECF No. 61] ("Murphy Mot."); Def.'s Mot. in Lim. [ECF No. 62] ("Dist. Mot."). Each party responded in opposition to the other's motion, see Pl.'s Opp'n to Dist.'s Mot. [ECF No. 68] ("Opp'n to Dist. Mot."); Def.'s Opp'n to Murphy Mot. [ECF No. 67] ("Opp'n to Murphy Mot."), and each party replied in support of its respective motion, see Reply in Supp. of Dist. Mot. [ECF No. 70] ("Dist. Reply"); Pl.'s Reply to Opp'n to Murphy Mot. [ECF No. 69] ("Murphy Reply"). The parties also argued their motions at the pretrial conference on June 15, 2023. The motions are now ripe for decision.

## Analysis

### I. Murphy's Motion in Limine

Murphy asks the Court

> to exclude any reference by Defendant to Plaintiff's alleged "sexual harassment" and other alleged misconduct on around June 11, 2015 as a reason for disciplinary

      action or termination of Plaintiff; any reference to Plaintiff's prior disciplinary actions relating three (3) years from the date of his termination; or any reference to other individuals terminated by [DOC's Director Thomas Faust] related to sexual harassment.

Murphy Mot. at 1.  He argues such evidence should be excluded because it "is irrelevant and inadmissible because its probative value is far outweighed by its . . . likelihood of undue prejudice against Plaintiff."  Id.  Murphy also seeks to exclude from trial the de bene esse testimony of Lennard Johnson, a defense witness whose deposition occurred on June 7, 2023, due to "Defendant's failure to have timely and properly identif[ied] the subject witness."  Id. at 5.  The District opposes each request.  See Opp'n to Murphy Mot.

      **A.  Evidence of Workplace Misconduct and Disciplinary Actions**

      Murphy first seeks to preclude "any reference by Defendant to Plaintiff's alleged 'sexual harassment' and other alleged misconduct on around June 11, 2015 as a reason for disciplinary action or termination of Plaintiff" and "any reference to Plaintiff's prior disciplinary actions relating three (3) years from the date of his termination."  Murphy Mot. at 1.  Specifically, Murphy claims the District should be prohibited from introducing "multiple exhibits which demonstrate Plaintiff's alleged involvement in prohibited 'sexual harassment' conduct based upon Walker's June 11, 2015 sexual harassment claim, Pettiford's June 11, 2015 recommended termination, Human Resource's June 10, 2015 approval thereof, and Mr. Faust's June 19, 2015 rubber-stamped termination."  Id. at 3–4.  Murphy argues the evidence could only be relevant "to paint Plaintiff in a negative light or besmirch his character in order to create a disguised [] shadow reason to justify its June 19-24, 2015 termination" because he claims the District admits that his termination was "based upon a non-disciplinary termination" and that the complaint was not followed up by an investigation per DOC's policy before terminating him.  Id. at 4.  He argues the evidence is

5

impermissible character evidence under Federal Rule of Evidence 404(a) and that it will "potentially confuse[] and mislead[] the jury and prejudice[] the trial process." Id.

The District disagrees, arguing that the evidence Murphy seeks to preclude relating to his incidents of misconduct in May and June of 2015 (1) is relevant because it supports the District's argument that it terminated Murphy for legitimate, non-retaliatory reasons, (2) is not overly prejudicial, and (3) would not be introduced to prove conformity with a particular character trait on a particular occasion. See Opp'n to Murphy Mot. at 3–4.

The Court agrees with the District. Under Federal Rule of Evidence 402, "[r]elevant evidence is admissible" unless, as relevant here, another rule provides otherwise. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The evidence Murphy seeks to preclude is plainly relevant to the District's defense to Murphy's Title VII retaliation claim. To succeed on his claim, "Murphy must demonstrate (1) that he engaged, or the DOC believed that he engaged, in statutorily protected activity; (2) that he suffered a materially adverse action by the DOC; and (3) that there is a causal link that connects the statutorily protected activity with the adverse action." Murphy I, 590 F. Supp. 3d at 189. "[I]f the employer offers a 'legitimate, nondiscriminatory reason for its action,'" then "'the court should proceed to the question of retaliation' . . . and should resolve that question in the employer's favor if the employee is unable to prove an essential element of his case or if the employee is unable to rebut the employer's explanation." Id. at 189–90 (quoting Taylor v. Solis, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009)). Evidence of misconduct by Murphy in the time shortly before his termination is certainly relevant because it tends to show that the District did not terminate Murphy due to his support of Sheen in her participation in a lawsuit against the District and Pettiford, but

instead because of Murphy's misconduct.  As this Court noted in Murphy I, "[t]he allegations regarding Murphy's misconduct—many of which are undisputed—could certainly lead a reasonable jury to conclude that there were entirely legitimate reasons for Pettiford to recommend Murphy's termination."  590 F. Supp. 3d at 194 n.12 (citation omitted).

Murphy seems to claim that, even if the evidence is relevant, it should be excluded under either Rule 404(a) or 403 because it "seeks to paint Plaintiff in a negative light or besmirch his character" and might "confuse[] and mislead[] the jury and prejudice[] the trial process."  See Murphy Mot. at 4.  Rule 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  But the District does not purport to bring in this evidence of misconduct and alleged sexual harassment to show that Murphy was more likely to act in accordance with that character on any particular occasion.  Opp'n to Murphy Mot. at 4.  It instead intends to introduce the evidence to prove why Murphy was terminated—i.e., that it terminated Murphy for legitimate, non-discriminatory reasons.  Id.  Because the District's proposed use of this evidence is not prohibited under Rule 404(a), the Court will not exclude it under that rule.

Murphy's invocation of Rule 403 fares no better.  Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  While it is true that evidence of alleged sexual harassment and other misconduct could cause the jury to view Murphy in a worse light or even confuse the issues, those potential dangers certainly do not substantially outweigh the highly probative value of that evidence to the District's defense.

Last, the Court rejects Murphy's arguments that the evidence of his misconduct should be excluded because his termination was labeled "nondisciplinary" in his official termination letter and DOC did not initiate an investigation into the June 2015 sexual harassment claims by Walker before terminating him. These are facts Murphy may raise at trial to undermine the District's argument that his termination was legitimate and non-retaliatory, but they are not bases for excluding otherwise relevant evidence.

Hence, the Court will deny Murphy's motion to exclude evidence of his workplace misconduct in May and June 2015.

### B. DOC Director Faust's Testimony

Murphy asks the Court to exclude any testimony by DOC Director Thomas Faust about his "termination of other purportedly similarly situated employees." Murphy Mot. at 5. The District claims such testimony is relevant because the Director's termination of

> others for similar conduct is relevant to whether the reasons stated in Pettiford's June 11, 2015 recommendation for termination were the real reasons for Plaintiff's termination and to whether the District would have fired Plaintiff for that conduct regardless of any perception by Pettiford that Plaintiff was engaged in protected activity.

Opp'n to Murphy Mot. at 5. The District also notes that this testimony is particularly relevant here "because Plaintiff testified at his deposition that other employees had engaged in similar conduct but were not disciplined and is expected to testify similarly at trial." Id.

The Court again agrees with the District. Evidence that DOC terminated other employees who engaged in misconduct similar to that of Murphy is admissible under Rules 401 and 402 because it is relevant to the District's defense against Murphy's Title VII retaliation claim. Specifically, it tends to show that DOC fired Murphy due to his misconduct—a legitimate, non-

8

retaliatory reason—rather than in retaliation for his support of Sheen. If others were terminated for similar misconduct, it is more likely that Murphy was, too.

Murphy argues that the testimony is nevertheless inadmissible under Rule 608(b). Murphy Mot. at 5. Rule 608(b) provides that "[e]xcept for a criminal conviction . . . , extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." That rule is inapposite here. Faust's testimony as to other similar terminations would not be offered to support his character for truthfulness; rather, as explained, it would be offered to show that Murphy's termination was for non-retaliatory reasons. See Opp'n to Murphy Mot. at 5. Rule 608(b) is thus not a bar to the admission of this relevant evidence.

Murphy further claims that "the introduction of such evidence opens a door to the parallel factual circumstances surrounding each such proffered termination, including the time, date, circumstances, and . . . reasons for said terminations including the extent to which there was a cloud of retaliation overhanging said terminations." Murphy Mot. at 5. Murphy identifies no legal basis for prohibiting testimony on these grounds, but to the extent this could be construed as a Rule 403 argument based on confusing the issues or wasting time, the relevance of the proffered testimony outweighs any such minimal concern. Hence, the Court will deny Murphy's motion to preclude testimony by Faust related to his termination of other similarly-situated employees.

Murphy does note that "[t]o date, Defendant has not proffered the names of the employees, the dates of the terminations, the reasons for the terminations, and the circumstances surrounding them," id.; see also Murphy Reply at 2, which the District confirmed was true at the pretrial conference. The Court will accordingly order the District to provide the name, date of termination,

and reason for termination for each of the employees about which Faust will testify by not later than June 19, 2023, but ideally as soon as possible.

### C. Johnson's Deposition Testimony

Murphy initially asked the Court to preclude the District from introducing the <u>de bene esse</u> deposition testimony of Lennard Johnson, a defense witness, as evidence at trial, Murphy Mot. at 5, but he withdrew his objection at the pretrial conference.  But the District raised a new objection to the admission of the portion of the deposition in which Johnson discusses that Pettiford was terminated some years after Murphy's termination for making false statements.  The District argues that the only relevance of the reason for Pettiford's termination would be to prove the truth of the circumstances of the termination, which would undermine Pettiford's credibility by showing that he has a character for untruthfulness.

Federal Rule of Civil 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  Hence, because Johnson's deposition transcript is extrinsic evidence, the portion of the deposition that concerns Pettiford's termination for false statements is not admissible to show that the circumstances of the termination are true and he thus has an untruthful character.  However, Rule 608(b) also provides that "the court may, on cross-examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness."  Thus, the Court will exclude the reference to Pettiford's termination from Johnson's deposition but will allow Murphy's counsel to inquire about the circumstances of Pettiford's termination during his cross-examination of Pettiford.

10

**II.     The District's Motion in Limine**

The District seeks to exclude (1) "evidence that Sheen's 2013 declaration provided in the administrative proceeding was read during Pettiford's deposition on June 22, 2015," Dist. Mot. at 1; (2) "evidence about the specific claims brought in Brokenborough by the plaintiffs and the specific allegations Sheen raised against Pettiford," id. at 2; (3) "Plaintiff from presenting evidence about claims that the Court has previously dismissed, specifically, that Plaintiff sought any reasonable accommodation under the ADA other than FMLA leave," id.; and (4) "testimony from 'Captain Vinyard,' Janea Kirumba, Karla Kirby, Gitana Stewart-Ponder, and an unidentified witness from the 'D.C. Office of Human Resources Benefits, and Retirement,'" id. at 7.[2]  Murphy opposes these requests for a variety of reasons, which will be addressed below.  See Opp'n to Dist. Mot. at 2–11.

**A.  Sheen's Declaration**

The District first seeks to preclude "evidence that Sheen's 2013 declaration was read at Pettiford's June 22, 2015 deposition because the deposition occurred after Pettiford had already recommended Plaintiff's termination" and is "thus irrelevant." Dist. Mot. at 4.  Murphy's response is a bit hard to parse, but the Court construes it as contending that the evidence is relevant because "Pettiford's June 23, 2015 deposition was scheduled . . . and he was fully aware of Sheen['s] witness status, her relationship to Murphy, her explicit witness s[tate]ment in the Brokenborough complaint articulating Pettiford's sexually offensive conduct, again mentioning the term Sheen's

---

[2] The District initially objected to the introduction of testimony from Kirby, Dist. Mot. at 7, but later withdrew its objection to that testimony in its reply, Dist. Reply at 6 n.2, so the Court will not exclude Kirby's testimony. Murphy also indicated at the pretrial conference that he does not intend to call Kirumba as a witness, so the District's objection is now moot.  Moreover, Murphy did not include a DOC HR employee on his witness list in his pretrial statement, see Joint Pretrial Statement [ECF No. 71] at 4–5, but at the pretrial conference indicated that he will call Denise Shell-McGill, a DOC HR on the defense's witness list, and the District did not object.  Hence, the District's objection to the testimony of an "unidentified" HR witness is now moot.

11

'fiancée.'" Opp'n to Dist. Mot. at 3. Further, he argues that the evidence "is relevant to the issue of retaliatory motive and pattern" because the day after Pettiford's deposition, "DOC officials came to Sheen and Murphy's home to deliver termination papers all while armed with pistols to inform Murphy for the first time that Murphy was fired. Such extraordinary incidents . . . were not consistent with DOC policy . . . ." Id.

The Court agrees with the District that this evidence is irrelevant and thus inadmissible. The proffered basis of the relevance of the evidence is Pettiford's state of mind when he decided to recommend Murphy's termination—Murphy's theory is that Pettiford recommended his termination as retaliation for Murphy's fiancée's testimony against Pettiford in the Brokenborough case. But it is undisputed that Sheen's affidavit was read to Pettiford after he recommended Murphy's termination and after Murphy was formally terminated. Thus, Pettiford's state of mind or motivation at the time of his decision to recommend Murphy's termination could not have been affected by hearing Sheen's declaration because that event had not yet occurred. There is therefore no relevance to this specific evidence. If there was evidence that Pettiford saw or was aware of the allegations in Sheen's affidavit before his decision to recommend Murphy's termination, or was otherwise aware of her status as a witness against him in the Brokenborough case, then that evidence would be relevant to Murphy's Title VII retaliation claim and can be admitted. But that is not the evidence at issue before the Court.

Hence, the Court will grant the District's request to preclude evidence that Sheen's declaration was read at Pettiford's deposition.

**B. Substance of Sexual Harassment Claims Against Pettiford by Sheen and Brokenborough Plaintiffs**

The District next asks the Court to "preclude evidence related to the substance of the Brokenborough plaintiffs and Sheen's allegations of sexual harassment against Pettiford because

12

it is irrelevant to Plaintiff's claims and would cause unfair prejudice to the District." Dist. Mot. at 5. Murphy argues that the details of the sexual harassment allegations against Pettiford are relevant and thus "seeks to admit the Brokenborough complaint." Opp'n to Dist. Mot. at 5.

As an initial matter, the substance of the sexual harassment allegations in the Brokenborough complaint cannot be offered for their truth because whether Pettiford actually committed the alleged acts is irrelevant to Murphy's claims.[3] Thus, the only relevance of the allegations to Murphy's claim is how they influenced Pettiford's state of mind when he recommended Murphy's termination.

The existence of a workplace sexual harassment lawsuit against Pettiford in which Murphy's partner was a witness against Pettiford is certainly relevant to Pettiford's motive in recommending Murphy's termination. Accordingly, that evidence—a general description of the Brokenborough case as of 2015—can be introduced by stipulation or otherwise, and the Court will take judicial notice of it.

---

[3] Evidence of past discrimination by Pettiford against others could potentially be relevant because "evidence of an employer's past discriminatory or retaliatory behavior toward other employees may be relevant to whether an employer discriminated or retaliated against a plaintiff." Elion v. Jackson, 544 F. Supp. 2d 1, 8 (D.D.C. 2008). In determining the relevance of such evidence, courts consider "whether such past discriminatory behavior by the employer is close in time to the events at issue in the case, . . . the same decisionmakers were involved, whether the witness and the plaintiff were treated in a similar manner, and whether the witness and the plaintiff were otherwise similarly situated." Id. Because the Brokenborough case is about sexual harassment rather than perceived retaliation, the Brokenborough witnesses and Murphy are not similarly situated, and the allegations in the Brokenborough case are from several years before Murphy's termination, the Court does not find that the allegations are sufficiently similar to be relevant here. And, maybe most importantly, the use of a pleading in a case wherein Pettiford was not found liable is not the proper vehicle for that evidence. If Murphy intends to introduce such evidence, he must not only establish its relevance and admissibility, but he must introduce such evidence through witness testimony (or some other competent evidence) from someone with personal knowledge of the alleged past retaliatory events. Notably, Pettiford was never found liable for the allegations in the complaint, which may further undermine the relevance of the complaint or frustrate Murphy's attempt to find a witness who could testify to the alleged events from personal knowledge.

Furthermore, Federal Rule of Evidence 404(b) prohibits the admission of evidence of prior wrongs or bad acts for the inference "that on a particular occasion the person acted in accordance with the character" demonstrated by the prior bad acts. Accordingly, to the extent Murphy wants to introduce evidence of the allegations of Pettiford's past retaliatory acts to prove that Pettiford retaliated against Murphy in his recommendation to terminate him, such evidence may be inadmissible under 404(b).

The relevance of the specific sexual harassment allegations against Pettiford by the named Brokenborough plaintiffs rather than Sheen (Sheen was not a named plaintiff in the lawsuit but rather just a witness), however, is not apparent to the Court. Murphy claims that Pettiford retaliated against him due to his support of Sheen's participation in the lawsuit, so evidence of the allegations of Pettiford's sexual harassment by those other than Sheen is irrelevant to his claim and are thus inadmissible. Evidence that Sheen was a witness in or supported the lawsuit, on the other hand, is plainly admission.

Sheen's specific allegations of sexual harassment by Pettiford pose a tougher question. On the one hand, Sheen's specific allegations against Pettiford are relevant (to the extent Pettiford had knowledge of them) because the level of seriousness of the allegations—beyond just the fact that Sheen made allegations—could be relevant to the strength of Pettiford's motive to retaliate against Murphy. In other words, the more serious Sheen's allegations, the stronger the inference is that Pettiford was motivated to interfere with the lawsuit by terminating her partner, Murphy.

On the other hand, as the District points out, there is a legitimate danger of unduly prejudicing or misleading the jury by confusing the issues. See Fed. R. Evid. 403. Murphy notes in his opposition that the Brokenborough complaint "elaborated in gory detail Pettiford's sexual harassment and extensive retaliation against the Plaintiffs, including . . . Sheen." Opp'n to Dist. Mot. at 4 (emphasis added). Such "gory detail" about alleged sexual harassment not at the core of this case is likely to make the jury view Pettiford significantly less favorably, which could unfairly prejudice the jury against the District. And the inclusion of such details could also confuse the issues or mislead the jury by causing it to view this case as a trial about Pettiford's alleged sexual harassment, which it is not. Finally, if this evidence were permitted, then the District could present rebuttal evidence, thereby wasting time by effectively litigating the claims in Brokenborough.

The Court concludes that the appropriate balance of these competing considerations is to exclude the Brokenborough complaint itself but to allow the admission of Sheen's affidavit. This solution threads the needle by allowing pertinent evidence of Pettiford's possible motivation without including the irrelevant, unfairly prejudicial, and potentially misleading allegations of the entire Brokenborough complaint. Moreover, the affidavit is not subject to the rule against hearsay because it would not be offered for the truth of the allegations contained therein, but rather for the effect on Pettiford's state of mind. See Fed. R. Evid. 801(c). The Court acknowledges that admitting the affidavit may risk prejudicing the jury against Pettiford or confusing the issues, but concludes that such potential danger does not substantially outweigh the relevance, as Pettiford's state of mind is a necessary element of Murphy's retaliation claim. The Court will also permit Sheen to testify at trial about her creation of the affidavit and the fact that she lodged the allegations in the affidavit against Pettiford and will allow evidence of the general subject matter of the Brokenborough action. The Court will, however, exclude detailed testimony by Sheen about other allegations Sheen has made against Pettiford that are not contained in her affidavit, absent evidence that Pettiford was aware of them in June 2015.

**C. Murphy's Request for Accommodation Other than FMLA Leave**

The District next asks the Court to preclude Murphy from introducing evidence "that he sought any reasonable accommodation under the ADA other than FMLA leave." Dist. Mot. at 6. Specifically, it requests that the Court exclude evidence that Murphy "sought light duty as an accommodation under the ADA." Id. It argues this evidence should be excluded because "the Court has already held that Plaintiff cannot pursue that theory because it was not asserted in his complaint" and it is not relevant to his remaining ADA claim. Id. Murphy disagrees, contending that the evidence is relevant because "it is a violation of ADA to not provide reasonable

15

accommodations to an employee even if not requested by employee but nevertheless the employer knows [of] the physical disability." Opp'n to Dist. Mot. at 6. Thus, he argues, because the District knew about his heart attack, it was obligated to provide a reasonable accommodation, such as a lighter work assignment. See id.

This Court has already foreclosed any ADA failure-to-accommodate claim based on the District's alleged failure to reassign Murphy to another less-demanding position within DOC:

> Murphy's declaration, attached to a supplemental brief opposing summary judgment, marks the first time he has suggested that the District denied him a reasonable accommodation by failing to permanently reassign him to a different duty station. Because Murphy's complaint alleges that the District violated his right to an accommodation under the ADA only by denying his request for time off, Murphy cannot now claim that the District also discriminated against him by effectively denying his request for a different duty station. Hence, to the extent that Murphy intended for his declaration to support a new failure-to-accommodate claim, that intent fails.

Murphy II, 2022 WL 2643554, at *5. Therefore, the introduction of such evidence is barred insofar as its relevance is to support an independent failure-to-accommodate claim under the ADA based on the District's failure to reassign Murphy.

To the extent Murphy wants to introduce this evidence for some other purpose, that purpose is not clear from the face of his opposition brief. Murphy appears to suggest that the evidence is relevant to show that the District was generally on notice about Murphy's disability and, accordingly, his need for accommodation of that disability, whether that accommodation be reassignment of job duties or FMLA leave. See Opp'n to Dist. Mot. at 5–7; see also Murphy II, 2022 WL 2643554, at *4 ("Murphy's supplemental brief references [his alleged request for re-assignment] primarily as evidence bolstering his claim that the District knew that he intended for his FMLA application to double as an ADA accommodation request."). That is a potentially permissible use of the evidence and, under that theory, may be admissible to prove that the District

16

was on notice that Murphy's FMLA request was intended as a request under the ADA as well—an essential element of Murphy's ADA claim. However, this evidence also may prove cumulative based on the other evidence presented on this point, and in that case, its danger of confusing the jury or the issues may render it inadmissible under 403.

Hence, the Court will preclude evidence of Murphy's request for reassignment to lighter job duties for the purpose of supporting an independent ADA failure-to-accommodate claim based on that requested accommodation, but will defer ruling on the relevance of such evidence to his other claims.

### D. Murphy's Witnesses

Finally, the District asks the Court to preclude testimony from Captain Eric Vinyard and Gitana Stewart-Ponder. Dist. Mot. at 7. It claims that "Plaintiff has provided no proffer on what any of these witnesses could say that would be relevant" and that "[i]t does not appear that any of these witnesses has any personal knowledge about any relevant fact." Id.

Murphy claims that Vinyard, Murphy's immediate supervisor at the time of his termination, "is knowledgeable about the Agency's policies, Murphy's performance, disciplinary history, and health status through the date of his termination" as well as "the Department's September 30, 2014 designation of Murphy as an essential and emergency employee." Opp'n to Dist. Mot. at 10. The District argues that the testimony should be excluded because "Vinyard . . . played no role in the determination to terminate Plaintiff" and "Plaintiff does not specify what DOC 'policies' Vinyard would testify about." Dist. Reply at 7.

Based on Murphy's proffer, the Court cannot determine that Murphy's direct supervisor at the time of the relevant events would not yield relevant testimony. Even if the District were correct that Vinyard played no direct role in Murphy's termination decision, that does not mean that

Vinyard does not have personal knowledge of matters relevant to Murphy's claims—in fact, Vinyard likely does possess relevant knowledge as Murphy's direct supervisor. The Court will thus not preclude testimony from Vinyard at this time.

The District also seeks to exclude the live testimony of Gitana Stewart-Ponder, who was designated by the District as its corporate representative witness under Federal Rule of Civil Procedure 30(b)(6) and who was deposed as a corporate designee. Dist. Reply at 6–7; Opp'n to Dist. Mot. at 8–10. Murphy claims Stewart-Ponder has knowledge of "policies and procedures related to employee complaints, discipline, and termination practices in general, and particularly as they related to Plaintiff and the instant matter" and that she testified about the District's sexual harassment and progressive discipline policies in her 30(b)(6) deposition. Opp'n to Dist. Mot. at 8–9. The District represents that Stewart-Ponder, as a corporate designee, testified about matters in her deposition of which she has no personal knowledge as permitted by Federal Rule of Civil Procedure 30(b)(6). Dist. Reply at 6–7. But, the District notes, "other than citing her testimony as a corporate designee, Plaintiff has not identified any area in which she has personal knowledge that is relevant to his claims." Dist. Reply at 7.

The Court agrees with the District that there is no reason why Stewart-Ponder's in-person testimony would be warranted. Murphy cites Stewart-Ponder's 30(b)(6) deposition testimony as relevant—and the deposition transcript is relevant and admissible. Dist. Reply at 6. But he does not offer a reason why her live testimony—particularly given her lack of personal knowledge— would be relevant. The only conceivable reason Murphy would want to put Stewart-Ponder on the stand is to impeach her 30(b)(6) deposition testimony. But that is an impermissible reason to call a witness. See, e.g., United States v. Libby, 475 F. Supp. 2d 73, 83 (D.D.C. 2007) ("[A] witness cannot be called for the primary purpose of impeaching that witness."). Murphy's counsel

18

had a full opportunity to examine Stewart-Ponder at the 30(b)(6) deposition, and could have impeached her testimony then.

Hence, the Court will grant the District's motion to preclude the live testimony of Stewart-Ponder but will allow Murphy (and the District) to introduce relevant portions of her deposition transcript.

\*     \*     \*

For the reasons set forth above, and the entire record herein, it is hereby

**ORDERED** that [61] plaintiff's motion in limine is **DENIED**; and it is further

**ORDERED** that [62] defendant's motion in limine is **GRANTED** in part and **DENIED** in part as follows:

(1) The District's request to exclude evidence that Sheen's declaration was read at Pettiford's deposition is **GRANTED**;

(2) The District's request to exclude evidence of the specific details of Sheen and the Brokenborough plaintiffs' allegations of sexual harassment against Pettiford is **GRANTED** in part and **DENIED** in part;

(3) The District's request to preclude evidence of Murphy's request for reassignment to lighter job duties for the purpose of supporting an independent ADA failure-to-accommodate claim based on that requested accommodation is **GRANTED**, but the Court will **DEFER RULING** on the admissibility of such evidence for another relevant purpose, such as the District's notice that Murphy's FMLA accommodation was also a request under the ADA;

(4) The District's request to exclude the trial testimony of Stewart-Ponder is **GRANTED**; and

(5) The District's request to exclude the trial testimony of Vinyard is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: June 16, 2023

20